# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW HERLIHY and ANTHONY LAURIELLO, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM MCFARLAND, an individual; JEFFREY ATKINS p/k/a JA RULE, an individual; GRANT MARGOLIN, an individual; FYRE MEDIA, INC., a Delaware Corporation; and DOES 1 through 50, inclusive; <br><br> Defendants. | Civil Action No. 1:17-cv-03296 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Matthew Herlihy and Anthony Lauriello ("Plaintiffs"), by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against Defendants Fyre Media, Inc., William McFarland, Jeffrey Atkins p/k/a Ja Rule, and Grant Margolin ("Fyre" or "Defendants").

## NATURE OF THE ACTION

1.     This is a class action for damages relating to the Defendants' false representations, material omissions, and negligence regarding the "Fyre Festival" and their failure to organize, prepare, and provide attendees with the experience that the Defendants marketed as being a luxurious private-island getaway.

2.     Defendants promoted Fyre Festival as a packaged musical festival on two consecutive weekends on the remote island of Exumas, located in the Bahamas. Tickets cost between $1,000 and $12,500, which included gourmet food, luxury accommodations and

amenities, and activities including musical performances. Instead, ticketholders showed up to an unplanned, unorganized, disaster-stricken area that was far from the reality that Defendants promised in their promotional advertising of the event.

3.　Attendees were promised an all-inclusive weekend with "top notch food, luxurious lodging, and hot entertainment in a stunning locale." Promotion for the event started in December 2016, when Defendants posted on their Instagram account close-ups of bikini-clad models, yachts, and exclusive culinary experiences.[1]

4.　In reality, Defendants did not provide adequate food, shelter, basic amenities or medical care to attendees.

5.　As consumers across the country unsuspectingly purchased tickets to the Fyre Festival, they were unable to escape the disaster once they arrived on the island. Defendants urged attendees to load cash on to a wristband, however, basic transportation and other local busses only took cash.[2]

6.　As a result, Plaintiffs were not only misled and defrauded by the Defendants' false representations of the event, but also were stuck on a remote island to fend for themselves.

7.　Defendants were aware that they were in fact ill prepared for the festival, which resulted in the horrid conditions Plaintiffs and class members had to suffer through.

8.　Defendants knowingly lured attendees with false and fraudulent pretenses, in which, the festival could not compare to. The promotional videos and promises they made to the attendees about the luxurious getaway experience were far greater than the festival itself.

---

[1] https://www.bloomberg.com/news/articles/2017-05-02/the-inside-story-of-how-fyre-festival-went-up-in-flames
[2] *Id.*

9. Furthermore, Defendants were aware that Class members were incurring expenses, in addition to ticket costs, and faced dangerous conditions because of their greediness for ticket sales and money.

10. This action seeks redress on a class-wide basis for Defendants' deceptive business practices and negligence in selling tickets to "Fyre Festival" which was on an island that had no adequate infrastructure. Plaintiffs bring claims individually and on behalf of all others similarly situated against Defendants for negligence, fraud, and for violations of consumer protection statutes.

**PARTIES**

11. Plaintiff Matthew Herlihy is a resident and a citizen of Queens, New York.

12. Plaintiff Anthony Lauriello is a resident and a citizen of Brooklyn, New York.

13. Defendant William McFarland is a co-owner of Fyre Media Inc. and is a resident and citizen of New York, New York. Defendant McFarland organized and marketed the Fyre Festival.

14. Defendant Jeffrey Atkins p/k/a Ja Rule, a co-owner of Fyre Media Inc., is a resident and citizen of Saddle River, New Jersey. Defendant Atkins organized and marketed the Fyre Festival.

15. Defendant Grant Margolin is a resident and citizen of New York, New York. Defendant Margolin organized and marketed the Fyre Festival.

16. Defendant Fyre Media Inc. is headquartered in New York, New York and was founded in 2015 by Defendant McFarland and Defendant Atkins. Fyre Media Inc., an entertainment booking company, is a business entity incorporated under the state laws of Delaware.

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because there are more than 100 Class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because at least one Defendant maintains its principal place of business in this District, and a substantial part of the events giving rise to Plaintiffs' claims took place within this judicial district, including Defendants' marketing and sale of the tickets from this District.

## FACTUAL BACKGROUND

19.     Defendants organized Fyre Festival as a luxurious, celebrity endorsed musical festival for the elite. Defendants started promoting the Fyre Festival in December 2016 through social media which created a facade that Fyre would be filled with famous models on yachts on the private island, once owned by Pablo Escobar. Defendants also promised musical performances by A-list performers such as Blink 182 and many others.[3]

20.     Those were just some of the selling points for Fyre Festival, a supposedly opulent music weekend that was scheduled to begin in the Bahamas on Thursday, April 27, 2017, with "first-class culinary experiences and a luxury atmosphere."[4]

21.     Fyre was also promoted by Instagram influencers including model/actress Kendall Jenner, model/actress Bella Hadid and model/actress Emily Ratajkowski, as a never-before-seen V.I.P. event. The gathering, with weekend ticket packages starting at $1,200 and topping off at

---

[3] Fyre Facebook: https://www.facebook.com/fyrefestival/
[4] *Id.*

six-figures with extras, was supposed to compete in an increasingly elaborate landscape of boutique music festivals that have sprung up in the wake of Coachella."[5]

22.     Upon the arrival of guests to the island of Great Exuma for the first weekend, the island was lacking basic amenities, was covered in dirt, and guests had to sleep in tents with wet blankets. There were no communal showers or bathrooms as promised; instead there were porta potties (only about one for every 200 yards) that were knocked down and only three showers although there were hundreds of people arriving. These were not the luxurious accommodations previously promised by Defendants.

23.     On social media, Fyre Festival had been sold as a two-weekend A-list experience with alcohol, fine dining and party-goers. Furthermore, attendees were promised activities such as boats and jet skis for rent, and musical performances by bands such as Blink-182 and Major Lazer. Ticketholders were also told they could "start each day with morning yoga and guided meditation on the beach," while also enjoying "massages, henna tattooing, sound healing, chill-out sessions and a festive Bahamian junkanoo parade kicking off each weekend." Descriptions of the food options pledged "a uniquely authentic island cuisine experience," with "local seafood, Bahamian-style sushi and even a pig roast."[6]

24.     These were all false representations by the Defendants as they knew that the event site did not have the proper infrastructure and would have to be built from the ground up.

25.     In April 2017, The Wall Street Journal reported that "some artists had not yet been paid in accordance with their contracts, while guests, approximately 7,000 people were expected to attend, complained of a concierge service that was slow to make contact." However, Defendants

---

[5] https://www.nytimes.com/2017/04/28/arts/music/fyre-festival-ja-rule-bahamas.html
[6] https://www.nytimes.com/2017/04/28/arts/music/fyre-festival-ja-rule-bahamas.html

continued to promote the luxury Fyre Festival all the way up until the commencement of the festival and the arrival of guests in the Bahamas on April 27, 2017.[7]

26.     More specifically, Defendants represented the following about the Fyre Festival through the company's website, social media, promotional videos, and through the Instagram accounts by each individual Defendant:

a.  The cultural experience of the decade.[8]

b.  Pusha T, Tyga, and Desiigner will be joining Major Lazer, Disclosure, Blink-182, Migos, and Lil Yachty—and the models—Kendall Jenner, Alessandra Ambrosio, Bella Hadid, Hailey Baldwin, Emily Ratajkowski, Elsa Hosk, Lais Ribeiro, and Hannah Ferguson, to name a few…[9]

c.  If you find yourself there with a ticket in hand, you'll also find yourself among some of the most incredible beaches and waters in the world.[10]

d.  Famous models on yachts! Exclusive Island once owned by Pablo Escobar! Blink-182![11]

e.  Tucked away you will find Pirates Cove, a secluded stage powered in partnership with Zero. Each Friday of Fyre Festival, experience a sunrise to sunset lineup of incredible electronic / deep house…[12]

f.  G.O.O.D. Music. Major Lazer. Disclosure (DJ Set). And we are just getting started. Full lineup to be announced soon. Tickets are limited…[13]

---

[7] https://www.wsj.com/articles/dont-believe-the-hype-fyre-festival-flops-1493410480
[8] Fyre Promotional Video: https://www.youtube.com/watch?v=ANYqvbFsodw
[9] http://www.vogue.com/article/supermodels-fyre-festival-exumas-bahamas-guide
[10] *Id.*
[11] Fyre Promotional Video: https://www.youtube.com/watch?v=ANYqvbFsodw
[12] https://www.facebook.com/fyrefestival/photos/pb.1474168822612993.-2207520000.1489716781./1595273133835894/?type=3
[13] *Id.*

g. Two transformative weekends.[14]

h. The best in food, art, music, and adventure.[15]

i. An immersive musical festival.[16]

j. Fyre is an experience and a festival.[17]

k. Limited availability [ticket sales].[18]

l. Plan a stopover at this private island to meet the pet sharks that belong to Compass Cay Marina. You read that right, sharks. There are about 30 of them that have become domesticated over time and the owner invites you to get in to "pet" them. So why not give caution a middle finger and jump in? Everyone else is doing it.[19]

m. You can plan an excursion with a local dive shop or pack your own mask and snorkel, either way, it's an underwater kingdom unlike any other.[20]

n. A brand-new luxury boutique hotel opened its doors, transforming this remote cay that resides just off the tip of Great Exuma. It's small, only 12 rooms, with a commitment to leaving as little of a footprint as possible. There are morning yoga sessions overlooking the private beach, a spa, and two restaurants serving distinctly Bahamian cuisine like conch fritters and freshly caught fish. Hop on a private boat that will shuttle you over, and then enjoy pristine white sand beaches all to yourself.[21]

---

[14] Fyre Promotional Video: https://www.youtube.com/watch?v=ANYqvbFsodw
[15] *Id.*
[16] Fyre Promotional Video: https://www.youtube.com/watch?v=ANYqvbFsodw
[17] *Id.*
[18] Fyre Promotional Video: https://www.youtube.com/watch?v=ANYqvbFsodw
[19] http://www.vogue.com/article/supermodels-fyre-festival-exumas-bahamas-guide
[20] *Id.*
[21] http://www.vogue.com/article/supermodels-fyre-festival-exumas-bahamas-guide

o.  While there are many upsides to owning your own boat, in the Exumas, the ability to anchor down on your own private sandbar has got to be at the top of the list. There are lots of them in these parts, scattered about the pristine turquoise waters. Musha Cay has one of the more popular sandbars, which means you'll have company, and many locals or repeat visitors keep their favorite sandbar on the down low, but do some poking around and you're sure to find a spot worthy of an afternoon and; though these islands are part of the Bahamas, this scattered string of pearls is way more barefoot and bronzed than cruise ships and coconut cocktails.[22]

27.     Defendants' marketed and promoted the Fyre Festival both nationally and internationally to raise ticket sales. Below  are photos from the Fyre's Facebook promotional material:



---

[22] *Id.*





28.     Defendants did in fact sell thousands of ticket packages, with ticket sales ranging from $1,200 to $12,000 per person depending on the type of package.

29.     Upon arriving at the Fyre Festival, Plaintiffs and other ticketholders were surprised to see that the treatment promised by Fyre fell substantially below the advertised expectations as shown in the photos below:











30.     In another string of comments from attendees, numerous complaints were reported

sharing a similar theme of false representations by the Defendants:

    a.  "Not one thing that was promised on the website was delivered," said Shivi
Kumar, 33, who works in technology sales in New York, and came with a
handful of friends expecting the deluxe "lodge" package for which they had
paid $3,500: four king size beds and a chic living room lounge. Instead Ms.
Kumar and her crew were directed to a tent encampment. Some tents had beds,
but some were still unfurnished. Directed by a festival employee to "grab a
tent," attendees started running, she said. "People were stealing beds out of
other tents," she said. "It was just chaos. Nobody ever came in to check us in to
our accommodations, if you can call it that, so they had no idea who was there
and who wasn't." At one point in the evening, Ms. Kumar said, staff members
dumped a bunch of unopened containers — like "Amazon shipment boxes" —
at the site, and instructed concertgoers to rifle through them for anything that
was missing from their tents. "It was everything from, like, bongos to floaties
to sleeping bags," she said.[23]

    b.  Another attendee Trevor DeHass told ABC News that despite the Fyre Festival
being promoted as an all-inclusive upscale weekend, he said that he and his

---
[23] https://www.nytimes.com/2017/04/28/arts/music/fyre-festival-ja-rule-bahamas.html?_r=0

friends were served two slices of bread, a slice of cheese and a small salad for dinner Thursday.[24]

    c.  Hallie Wilson, one attendee who said that she and her friends spent $4,000 to celebrate a friend's bachelorette party, told ABC News that she and more than 100 others landed back in Miami after spending hours trying to get a flight. "It's been the longest 24 hours of our lives," she added.[25]

    d.  "So Fyre Fest is a complete disaster. Mass chaos. No organization. No one knows where to go. There are no villas, just a disaster tent city," said ticket holder William N. Finley IV, who has been documenting it all on Twitter.[26]

    e.  Another guest added: "The "gourmet cuisine" this weekend was included in the ticket cost. We are being fed salads and ham and cheese sandwiches out of this tent.[27]"

    f.  "That awkward moment when you think you're going to a music festival on a private island but it's actually the Hunger Games," added a third.[28]

    g.  "The barrage of complaints left the Caribbean's Fyre Festival trending worldwide, with Twitter users comparing the experience to a "horror movie" plot."[29]

31.    Furthermore, Defendants knew for months that Fyre Festival was not ready for attendees and/or in any state to allow attendees to stay overnight on the island. They had no planned medical services, few showers, no electricity, few porta potties, and none of the activities they had promised.

32.    Defendants did not have any confirmed list of artists to perform at the music festival. In fact, before Plaintiffs and other ticketholders had arrived, Defendants urged artists to not attend due to the dangerous and uninhabitable conditions that were present at the event venue.[30]

---

[24] http://abcnews.go.com/Entertainment/fyre-festival-organizers-attendees-refunded-full/story?id=47103941
[25] *Id.*
[26] http://www.msn.com/en-nz/news/other/its-like-a-horror-movie-bella-hadid-backed-fyre-festival-with-dollar12k-tickets-goes-very-wrong-as-angry-attendees-flood-twitter-with-complaints/ar-BBAuiWL
[27] http://www.msn.com/en-nz/news/other/its-like-a-horror-movie-bella-hadid-backed-fyre-festival-with-dollar12k-tickets-goes-very-wrong-as-angry-attendees-flood-twitter-with-complaints/ar-BBAuiWL
[28] http://www.msn.com/en-nz/news/other/its-like-a-horror-movie-bella-hadid-backed-fyre-festival-with-dollar12k-tickets-goes-very-wrong-as-angry-attendees-flood-twitter-with-complaints/ar-BBAuiWL
[29] http://www.msn.com/en-nz/news/other/its-like-a-horror-movie-bella-hadid-backed-fyre-festival-with-dollar12k-tickets-goes-very-wrong-as-angry-attendees-flood-twitter-with-complaints/ar-BBAuiWL
[30] http://www.businessinsider.com/fyre-festival-organizers-told-celebrities-not-to-attend-2017-5

None of the models who promoted the event, such as Bella Hadid, were on the island. Defendants knowingly and falsely represented to attendees that A-list artists and models were in fact coming to perform at the Fyre Festival. Defendants were obviously more concerned with promoting gloss ads featuring supermodels than securing the essential vendors to execute a food plan for attendees.

33.     Six weeks prior to the start of the festival, Defendants approached Starr Catering Group to execute a food menu for festival. However, even after Starr Catering flew out to the Bahamas and created a 100-plus page plan detailing every meal, they were informed by the Defendants that a six-figure meal plan was out of budget. Defendants terminated their contract with Starr to provide food for the festival, however they never informed attendees about this. Defendants still portrayed to attendees that the festival would be catered by Starr.[31]

34.     On April 29, 2017, Defendants posted a mea culpa on the Fyre Festival website, which stated (emphasis added):

> Yesterday was a very challenging day for all of us. But we would like to fully explain what happened.
>
> Billy McFarland and Ja Rule started a partnership over a mutual interest in technology, the ocean, and rap music. This unique combination of interests led them to the idea that, through their combined passions, they could create a new type of music festival and experience on a remote island.
>
> They simply weren't ready for what happened next, or how big this thing would get. They started by making a website and launching a viral campaign. Ja helped book talent, and they had hundreds of local Bahamians join in the effort. Suddenly, they found themselves transforming a small island and trying to build a festival. Thousands of people wanted to come. They were excited, but then the roadblocks started popping up.
>
> As amazing as the islands are, the infrastructure for a festival of this magnitude needed to be built from the ground up. So, we decided to literally attempt to build a city. We set up water and waste management, brought an ambulance from New York, and chartered 737 planes to shuttle our guests via 12 flights a day from Miami. We thought we were ready, but then everyone arrived.

---

[31] https://www.bloomberg.com/news/articles/2017-05-02/the-inside-story-of-how-fyre-festival-went-up-in-flames

*The team was overwhelmed. The airport was jam packed. The buses couldn't handle the load. And the wind from rough weather took down half of the tents on the morning our guests were scheduled to arrive. This is an unacceptable guest experience and the Fyre team takes full responsibility for the issues that occurred.*

*Everyone was very concerned for our guests. They needed a place to sleep and everyone did their absolute best to rebuild. We took everyone to the beach and built as many tents and beds as fast as possible, but as more guests arrived, we were simply in over our heads. Ultimately, we didn't think security could keep up, so we had to postpone the festival. The response to the postponement was immediate and intense. We had no other options, so we began the process of getting guests quickly and safely back to Miami, which continued through the weekend. Our top priority as a company is to ensure the comfort and safe return home of all of our guests.*

*Then something amazing happened: venues, bands, and people started contacting us and said they'd do anything to make this festival a reality and how they wanted to help. The support from the musical community has been overwhelming and we couldn't be more humbled or inspired by this experience. People were rooting for us after the worst day we've ever had as a company. After speaking with our potential partners, we have decided to add more seasoned event experts to the 2018 Fyre Festival, which will take place at a United States beach venue. All festival goers this year will be refunded in full. We will be working on refunds over the next few days and will be in touch directly with guests with more details. Also, all guests from this year will have free VIP passes to next year's festival.*

*We're grateful for the Bahamian Government and The Bahamas Ministry of Tourism for their assistance during this challenging time—their efforts have been exemplary. We want to thank the people of the Bahamas for their support and for graciously allowing us the privilege of visiting their islands. We apologize for any inconvenience the past 24-hours has caused and we look forward to making a considerable donation to the Bahamas Red Cross Society as part of our initiatives. We need to make this right. And once we make this right, then we will put on the dream festival we sought to have since the inception of Fyre.*

*Thank you for all your continued patience and understanding. We apologize for what all of our guests and staff went through over the last 24 hours and will work tirelessly to make this right. Please check our official social media channels (@fyrefestival) for further important updates.*

35.     Plaintiffs and other Class members sustained damages as a direct and proximate result of Defendants' negligence and wrongful conduct and omissions in connection with the sale of tickets and promotion of the Fyre Festival.

36.     Plaintiffs and other Class members relied on Defendants' misrepresentations and omissions regarding the experience and accommodations.  Plaintiffs, the Class, and the Subclass (as defined below) have been damaged by Defendants' deceptive, negligent, and unfair conduct and wrongful inaction in that they purchased tickets for the Fyre Festival, which they would not have otherwise purchased, had Defendants not misrepresented the experience of attending the Fyre Festival or warned them of the potential harms caused by attending the event.

## PLAINTIFFS' EXPERIENCE

37.     Plaintiff Herlihy bought a ticket package for $1,027 which was supposed to include a ticket to the Fyre Festival, roundtrip airfare to the Bahamas from Miami, Florida, luxury accommodations and food, and access to a number of activities, including musical performances.

38.     When Plaintiff Herlihy arrived at the island, however, he saw total chaos. None of the musical performances or activities were available. There were no communal bathrooms or showers, but instead only three showers and a porta potty every 200 yards, which was woefully insufficient for the large number of festival attendees. The food was unappetizing and there were no on-site medical services. Additionally, there were no other basic amenities like soap, sunscreen and shampoo, and no electricity.

39.     Plaintiff Herlihy arrived on Thursday night and departed the next evening. He had to spend the weekend in Miami where he had to incur additional expenses on food, which were supposed to be covered by the ticket package. He had also deposited $900 onto a wristband that was supposed to be used to pay for activities and beverages on the island during the festival, and he did not have access to such monies after he left the island. Plaintiff Herlihy regrets buying a ticket package to the Fyre Festival.

40.     Plaintiff Lauriello bought a ticket package for $1,027 which was supposed to include a ticket to the Fyre Festival, roundtrip airfare to the Bahamas from Miami, Florida, luxury accommodations and food, and access to a number of activities, including musical performances.

41.     When Plaintiff Lauriello arrived at the island, however, he saw mayhem. None of the musical performances or activities were available. He also found that there were no communal bathrooms or showers, but instead a few porta potties that were filthy, and woefully insufficient for the large number of festival attendees. The food was unappetizing and there were no on-site medical services. Additionally, there were no other basic amenities like soap, sunscreen and shampoo, and no electricity.

42.     Plaintiff Lauriello also arrived on Thursday night and then departed the next evening. He had to spend the weekend in Miami where he had to incur additional expenses on food, which were supposed to be covered by the ticket package. He had also deposited $1,000 onto a wristband that was supposed to be used to pay for activities and beverages on the island during the festival, and he did not have access to such monies after he left the island. Unfortunately for Plaintiff Lauriello, his personal effects were stolen, including headphones, jeans and sneakers because Defendants failed to provide any security. Plaintiff Lauriello regrets buying a ticket package to the Fyre Festival.

43.     Defendants have offered to refund the price paid for ticket packages, but to date have not done so. Additionally, Plaintiffs do not have access to the money they deposited onto their wristbands. Moreover, Defendants have not offered to compensate Plaintiffs and Class members for the cost of airfare to Miami, lost vacation days and wages to travel to the festival, and other expenses necessarily incurred on food and transportation.

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs seek to represent a class initially defined as: **All persons in the United States who purchased tickets to the Fyre Festival.** Excluded from the Class are persons who purchased the tickets for purposes of resale; any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families. Plaintiffs reserve the right to redefine the proposed Class after discovery.

45.     Plaintiffs also seek to represent a subclass defined as all members of the Class who reside in New York (the "New York subclass"). Excluded from the New York subclass are persons who purchased the tickets for purposes of resale; any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families. Plaintiffs reserve the right to redefine the proposed New York subclass after discovery.

46.     Members of the Class and the Subclass are so numerous that their individual joinder herein is impracticable (hereafter, "Class members").  On information and belief, members of the Class number in the thousands.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third party retailers and vendors.

47.     Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class and Subclass members.  Common legal and factual questions include, but are not limited to; (a) whether Defendants' failed to disclose material facts, such as that the island's inadequate infrastructure; (b) whether Defendants misrepresented the musical acts that would perform at the Fyre Festival; (c) whether Defendants failed to disclose material information, such as the lack of preparedness of accommodating ticketholders at the Fyre Festival; and (d) whether Defendants created an unsafe environment for ticketholders.

48.     The claims of the named Plaintiffs are typical of the claims of the Class members Plaintiffs seek to represent in that the named Plaintiffs were exposed to Defendants' misleading and false advertising and material omissions and suffered a loss as a result of that purchase.

49.     Plaintiffs are adequate representatives of the Class members because Plaintiffs' interests do not conflict with the interests of the Class members Plaintiffs seek to represent, Plaintiffs have retained competent counsel experienced in prosecuting class actions, and Plaintiffs intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

50.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer

management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I — NEGLIGENCE

51.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

52.     Fyre owed duties to Plaintiffs and the proposed classes as paying customers of the festival to use reasonable care to provide true, reliable and safe accommodations to attendees.

53.     Fyre breached their duties to Plaintiffs and the proposed classes by failing to provide reasonable accommodations of food, water, shelter, security and medical supervision at the Fyre Festival.

54.     In the course of their business, profession and employment, Defendants and their agents, representatives and employees supplied false information to Plaintiffs, and the proposed classes, and failed to disclose material information.

55.     Plaintiffs and the proposed classes justifiably relied upon the information supplied by Defendants, and, as a result, attended the said event promoted by the Defendants and both lost money and incurred additional costs.

56.     Defendants failed to use reasonable care in properly organizing Fyre Festival with the proper vendors and continued to make false representations about the experience to attendees.

57.      As a direct and proximate result of Defendants' negligence, Plaintiffs and the proposed classes were damaged in an amount to be proven at trial.

## COUNT II — FRAUD AND MISREPRESENTATION

58.     Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

59.     Defendants made material representations that were false, that Defendants knew were false or were reckless as to the veracity and made with the inducement for Plaintiffs and the Class members to act upon. Specifically, and as detailed above, Defendants represented that their music festival would (1) take place on a remote, exotic private island, (2) that attendees would have luxury accommodations, (3) the line of up music guests were filled with celebrity performers, (4) the cuisine would be five-star, and (5) the festival would be filled with yacht rides, models, and private jet skis.

60.     Plaintiffs and the proposed Class members acted in reliance on the false, material representations and omissions made by Defendants, which caused them injury.

61.     Plaintiffs and the proposed Class members would not have deposited money or engaged in any activity promoted on Defendants' websites if they had known that they were not going to be receiving any of the accommodations, amenities, security and access to activities that they were told they were going to experience in the Bahamas.

62.     Defendants were aware that the integrity of the material facts was lacking and were aware that they were inducing Plaintiffs and the proposed Class members to give them money in exchange for advertised services and agreeing to the alleged contract.

63.     As a result of Defendants' fraudulent representations and fraudulent omissions, Plaintiffs and the proposed Class members were induced into a contract that they otherwise would not have made and suffered financial injury, harm and damages as described in this Complaint.

## COUNT III — VIOLATION OF STATE CONSUMER LAWS

64.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs. Plaintiffs bring this claim on their own behalf under the laws of the state in which Plaintiffs purchased Fyre Festival tickets sold by Defendants and on behalf of: (a) all other persons who purchased Fyre Festival tickets by Defendants in the same state as Plaintiffs purchased such ticket packages; and (b) all other persons who purchased such tickets in states having similar consumer protection laws.

65.     Each Plaintiff and member of the Class is a consumer, purchaser or other person entitled to the protection of the consumer protection laws of the state in which he or she purchased the Fyre Festival tickets produced by Defendants. The consumer protection laws of the state in which each Plaintiff and member of the Class purchased tickets for the Fyre Festival declare that unfair or deceptive acts or practices in the conduct or trade or commerce are unlawful.

66.     Each of the fifty states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

67.     These statutes are:

   a.   *Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, et seq.*;
   b.   *Alaska Unfair Trade Practices and Consumer Protection Act, Ak Code §§ 45.50.471, et seq.*;
   c.   *Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, et seq.*;
   d.   *Arkansas Deceptive Trade Practices Act, Ark. Code §§ 4-88-101, et seq.*;
   e.   *California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. and California's Unfair Competition Law, Cal. Bus. & Prof Code §§ 17200, et seq.*;
   f.   *Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, et seq.*;
   g.   *Connecticut Unfair Trade Practices Act, Conn. Gen. Stat §§ 42-110a, et seq.*;
   h.   *Delaware Deceptive Trade Practices Act, 6 Del. Code §§ 2511, et seq.*;

i.   District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, et seq.;

j.   Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann.;

k.   Georgia Fair Business Practices Act, §§ 10-1-390 et seq.;

l.   Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues §§ 480 et seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §§ 481A-1, et seq.;

m.   Idaho Consumer Protection Act, Idaho Code §§ 48-601, et seq.;

n.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §§ 505/1, et seq.;

o.   Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, et seq.;

p.   Iowa Consumer Fraud Act, Iowa Code §§ 714.16, et seq.;

q.   Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, et seq.;

r.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, et seq. and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, et seq.;

s.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, et seq.;

t.   Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. §§ 205A, et seq., and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, §§ 1211, et seq., and Maryland Consumer Protection Act, Md. Com. Law Code §§ 13-101, et seq.;

u.   Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch.93A;

v.   Michigan Consumer Protection Act, §§ 445.901, et seq.;

w.   Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, et seq.; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325D.43, et seq.;

x.   Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, et seq.;

y.   Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, et seq.;

z.   Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §§ 30-14-101, et seq.;

aa.   Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59 1601, et seq., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-301, et seq.;

bb.   Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, et seq.;

cc.   New Hampshire Consumer Protection Act, N.H. Rev. Stat. §§ 358-A:1, et seq.;

dd.   New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, et seq.;

ee.   New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, et seq.;

ff.   New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349,et seq.;

gg.   North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, et seq.;

hh. North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, et seq.;

ii. Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. et seq.;

jj. Oklahoma Consumer Protection Act, Okla. Stat. 15 §§ 751, et seq.;

kk. Oregon Unfair Trade Practices Act, Rev. Stat §§ 646.605, et seq.;

ll. Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. §§ 201-1, et seq.;

mm. Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, et seq.;

nn. South Carolina Unfair Trade Practices Act, S.C. Code Laws §§ 39-5-10, et seq.;

oo. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, et seq.;

pp. Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101,et seq.;

qq. Texas Stat. Ann. §§ 17.41, et seq., Texas Deceptive Trade Practices Act;

rr. Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, et seq.;

ss. Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, §§ 2451, et seq.;

tt. Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, et seq.;

uu. Washington Consumer Fraud Act, Wash. Rev, Code §§ 19.86.010, et seq.;

vv. West Virginia Consumer Credit and Protection Act, West Virginia Code §§ 46A-6-101, et seq.;

ww. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, et seq.; and

yy. Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§ 40-12-101, et seq.

68. The Fyre Festival tickets were marketed and sold by Defendants and constitute products and/or services to which these consumer protection laws apply.

69. Defendants violated the foregoing statutes by making false misrepresentations and failing to make adequate disclosures of material facts, including: (1) failing to disclose that the event site did not have adequate infrastructure and had to be built from the ground up; (2) failing to disclose that the scheduled musical acts would not perform and/or were not paid or confirmed; (3) failing to disclose that the event site presented unsafe conditions and had no medical or security services or personnel; and (4) failing to disclose that there would be inadequate food and water supplies.

70. Plaintiffs, individually and on behalf of the Class members, seek monetary compensation and equitable relief, including declaratory and injunctive relief as appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks a judgment against Defendant, as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass;

B. For an order declaring that Defendants' conduct violates the statutes referenced herein;

C. For an order finding in favor of Plaintiffs and the Class and Subclass on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For an order enjoining Defendants from continuing the unlawful practices detailed herein; and

H. For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated:  May 3, 2017

Respectfully submitted,

**LEVI & KORSINSKY LLP**

By: _s/ Andrea Clisura_
    Andrea Clisura (AC-1313)

Eduard Korsinsky (EK 8989)
Andrea Clisura (AC-1313)
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (866) 367-6510
Email: ekorsinsky@zlk.com
Email: aclisura@zlk.com

Nancy A. Kulesa (pro hac vice application forthcoming)
733 Summer Street, Suite 304
Stamford, CT 06901
Tel.: (212) 363-7500
Fax: (866) 367-5610
Email: nkulesa@zlk.com

Rosemary M. Rivas (pro hac vice application forthcoming)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: 415.291.2420
Facsimile: 415.484.1294
Email: rrivas@zlk.com

_Attorneys for Plaintiffs_