# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
7 WEST 24TH STREET
NEW YORK, NEW YORK 10010
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

July 13, 2018

Honorable P. Kevin Castel, U.S.D.J.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 24B
New York, NY 10007

Re:     In Re Fyre Festival Litigation, 17-cv-3296 (PKC)

Dear Judge Castel:

The undersigned counsel for Plaintiffs submits this letter in response to the July 6, 2018 pre-motion letter from counsel for defendant Jeffrey Atkins a/k/a Ja Rule ("Defendant" or "Ja Rule") in which Ja Rule seeks leave to file a 12(b)(6) motion to dismiss the Second Consolidated Amended Complaint ("SAC") (ECF 56) and to file an oversized brief of no more than forty (40) pages. The next case management conference is scheduled for November 30, 2018.

Plaintiffs' position is that each argument advanced by Ja Rule is devoid of merit and the SAC states valid causes of action against him.[1] Indeed, in response to Ja Rule's June 5, 2018 pre-motion to dismiss letter addressed to the earlier Consolidated Amended Complaint [ECF 49], Plaintiffs detailed in their June 11, 2018 letter [ECF 53]) how the earlier CAC was well-pled against Ja Rule.   Nonetheless, Plaintiffs amended the CAC and, among other things, added numerous additional allegations pertaining to Ja Rule's wrongful actions and inactions to an already well-pled CAC.   Ja Rule's attorney, nonetheless, advances the same arguments in his July letter as he advanced in his June letter.

As alleged in the SAC and disregarded by Ja Rule's attorney in his July 6, 2018 letter, the SAC is replete with detailed allegations of Ja Rule's extensive involvement in the creation,

---

[1] Plaintiffs assert fifteen (15) causes of action as follows: negligence, gross negligence, fraud, negligent misrepresentation, breach of contract (not asserted against Ja Rule), inducement of breach of contract, breach of implied covenant of good faith and fair dealing (not asserted against Ja Rule), unjust enrichment and violation of the following state consumer protection statutes: New York GBL 349, violation of California's False Advertising Law, Cal. Bus. & Prof. Code §17500, et seq., California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, violation of California's Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, et seq., Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, et seq. 523, Illinois Consumer Fraud Act, and Illinois Uniform Deceptive Trade Practices Act.

organization, funding marketing and promotion of the Fyre Festival and the representations made about the Festival. Defendant Ja Rule was a founder, significant shareholder, director and officer of Fyre Media and its subsidiary Fyre Festival LLC, the entities responsible for the marketing of the Fyre Festival, tickets to and merchandise relating to the Fyre Festival, and the dangerous debacle that occurred at the Fyre Festival. Defendant Ja Rule directed the management and policies of Fyre Media and Fyre Festival LLC and controlled these entities. (SAC ¶¶ 31-33).

Defendant Ja Rule conceived, organized, marketed, promoted, advertised and funded the Fyre Festival and was responsible for overall business strategy, guiding creative and facilitating artist relations. (SAC ¶ 32, 33, 49; see the Pitch Book for the Fyre Festival which is attached as Exhibit A to the SAC, Page 36). The Festival was Ja Rule's vision, together with defendant McFarland (who pled guilty to fraud and is likely headed to prison) (SAC ¶ 17-19, 46). Ja Rule, engaged in promotion of the Fyre Festival and hired others, including celebrities, to promote the Festival. Ja Rule falsely lured thousands of consumers to purchase Fyre Festival tickets and merchandise by his actions and involvement with the Fyre Festival, as he is a celebrity and influencer in his own right, being a widely-known rap music performer. He is also an influencer who has a very strong following on Twitter and Instagram with over 200,000 thousands followers on Twitter, and 575,000 followers on Instagram and a large group of recognizable influencer friends. A recent Ja Rule Instagram post states: "REFUSE to DIE until HISTORY records my GREATNESS" FOR BOOKINGS CLICK LINK... (SAC ¶¶32).

It is well spelled out in the SAC that Ja Rule actively and extensively promoted the Fyre Festival as a control person of the Fyre corporate entities and also, as an influencer and marketer in his own right, through false representations through his and other social media, such as his influential Instagram account. Examples of Defendants' marketing and promoting the Fyre Festival are provided throughout the SAC, as well as Ja Rule's personal marketing posts. (SAC ¶¶ 32, 46-67). To the media, the Plaintiffs and the musical world, the Fyre Festival and Ja Rule are synonymous.

Notably, as alleged in the SAC, Ja Rule not only made representations about, and heavily promoted, the Fyre Festival, he was fully aware (while still regularly selling tickets) that he and the other defendants could not and would not deliver that had been represented to thousands of consumers. Ja Rule cavalierly disregarded that the site for the Festival did not have a safe and proper infrastructure, that artists would not appear, and that the attendees would be placed into a dangerous situation on a remote island. Indeed, before the commencement of the Festival, where Ja Rule knew that he was putting consumers in danger as he had been told that the infrastructure and other needed items for the Festival would not materialize, he boldly, recklessly, maliciously and irresponsibly toasted while allowing the Festival to proceed: "To living like movie stars, partying like rock stars, and f****** like porn stars." (SAC ¶90).

Ja Rule even issued two (2) "mea culpas" on his Twitter account, one on April 28, 2017, the day of the failed Festival and one on April 30, 2017. In the April 28, 2017 tweet, Ja Rule stated, among other things: "I truly apologize…I'm deeply sorry to everyone who was inconvenienced by this." In the April 30, 2017 tweet, Ja Rule stated: "Relieved to share that all guest [sic] are safe, and have been sent the form to apply for a refund. Our deepest apologies." Accordingly, Ja Rule's efforts to disassociate himself with his failed debacle of a festival are

without merit. (SAC ¶¶97-99). Defendant Ja Rule also admitted that he engaged in false advertising in connection with the Fyre Festival as he made the following statement relating to the Fyre Festival.   "That's not fraud, that's not fraud, False advertising, maybe — not fraud." (SAC ¶100).

Ja Rule's mea culpas, apologies and statements that he was going to take responsibility for the failed Fyre Festival and offer refunds, together with his control over the corporate entities and his active and direct involvement in marketing and other aspects of the Fyre Festival, evidences that he had a duty to Plaintiffs that he did not fulfill and that he should be responsible for the fraud and the other torts alleged herein that committed against the Plaintiffs.

In sum, a motion to dismiss by Ja Rule would not be well-founded. If, however, the Court allows Ja Rule leave to file a 12(b)(6) motion to dismiss the SAC, the following is an outline of the primary responsive arguments:

- **The Tort Claims Are Properly Asserted** - Ja Rule's argument that the tort claims should be dismissed against him under a theory that such claims cannot be pled simultaneously with a contract claim is without merit, for among the following reasons: a) a breach of contract claim has not been asserted against Ja Rule as he admits, and Plaintiffs do not assert that they entered into a contract with him. For this reason alone, he cannot argue that the tort claims are an improper offshoot of the breach of contract claim asserted against other parties, or that the tort claims are merely a disguised breach of contract claim; b) even if a contract claim had been asserted against Ja Rule, tort claims can be pled alongside contract claims as alternative pleading of claims is allowed in federal court; c) the tort claims are properly alleged against Ja Rule as Plaintiffs have alleged an independent duty owed by Ja Rule, namely that he owed a duty to Plaintiffs to not place them in a dangerous situation on an island without adequate food and housing and a ready way to get off the island (SAC ¶¶122-123, 129-130); thus, the Court of Appeals decision in Clark -Fitzpatrick, Inc. v Long Is. R.R. Co., 70 N.Y.2d 382, 389 (1987), cited by Ja Rule, is supportive of sustaining the tort claims alleged in the SAC, as such decision acknowledges that tort claims based upon duties independent of a contract are viable; d) courts have held that a legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship and that defendants can be held liable in tort for failure to exercise reasonable care, irrespective of their contractual duties. Bullmore v. Banc of America Securities LLC, 485 F. Supp. 2d 464 (S.D.N.Y. 2007); and e) even if both a fraud claim and a breach of contract were asserted against Ja Rule (which is NOT the case here), the law is clear that where, as here, a fraud claim addresses words or actions relayed before a contract came into existence, the claim can stand because it is not redundant of a claim that the contract was breached. Illustratively, in Cohen v. Koenig, 25 F.3d 1168 (2d Cir.1994), the *Second* Circuit held that "a valid fraud claim may be premised on misrepresentations that were made before the formation of the *contract* and that induced the plaintiff to enter the contract." *Id.* at 1173. New York law is also clear that fraud can be based upon a misrepresentation of present fact and that a representation or promise that is made with a preconceived and undisclosed intention to not perform it constitutes a misrepresentation. See Deerfield

Communications Corp. v. Chesebrough–Ponds, Inc., 68 N.Y.2d 954, 956 (1986); 84 Lbr. Co., L.P. v. Barringer, 110 A.D.3d 1224, 1226, 973 N.Y.S.2d 820 (2013).

- **Plaintiffs satisfy any applicable heightened pleading requirements for fraud and as may be applicable to other claims and otherwise state a valid claim for fraud -** Plaintiffs meet the heightened pleading requirements of Rule 9(b) as may be applicable for fraud and any other claims. Here, as set forth above, the SAC contains numerous representations made by Defendants, including Ja Rule, and numerous allegations that Defendants, including Ja Rule, knew of the statements' falsity and intended to defraud consumers. (SAC ¶¶46-67, 78-101). Reliance is adequately alleged by Plaintiffs' purchase of tickets to and/or attending the Fyre Festival and purchasing merchandise. Regarding the fraud claims based upon non-disclosure, Defendants, including Ja Rule, as chief promotor, celebrity and influencer, stood in the very sort of relationship that gives rise to a duty, namely a relationship where Defendants, including Ja Rule, were inducing consumers to travel to a remote island for a luxurious festival in reliance that there would be food, shelter, musical acts and celebrities, only to find themselves with no music, no infrastructure, limited food, FEMA like tents and stranded.

- **Any New York Choice of Law Clause in a Contract does not Stand As a Bar to the Assertion of Consumer Protection Statutes As Against Ja Rule** - Even if a contract contained a New York choice of law clause, a contract claim has not been asserted against Ja Rule and he asserts that he is not a party to such contract. Accordingly, Ja Rule cannot use as a sword or as a shield a contract (and its terms) to which he is not a party. Additionally, there are open questions about the applicability of any choice of law provision that would bar consumers from asserting consumer protection claims from states other than New York. For example, in Doe 1 v. AOL LLC, 552 F.3d 1077, 1085 (9th Cir. 2009), the Ninth Circuit held that Virginia forum selection and choice of law provisions in a contract entered into between plaintiffs and AOL would not be applicable to bar California consumer protection claims, as a matter of public policy. Furthermore, it is generally the case that tort claims are outside the scope of contractual choice of law provisions. See Finance One Public Co. Ltd. v. Lehman Bros. Special Financing, Inc., 414 F. 3d 325, 335 (2d Cir. 2005) ("Under New York law, ... tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract ...."). Indeed, Plaintiffs assert California consumer protection claims on behalf of California Plaintiffs in the SAC, as well as consumer protection claims from other states (in addition to California and New York) and a contractual New York choice of law clause will not bar such claims.

- **An unjust enrichment claim also has been adequate stated** - Contrary to Ja Rule's assertions, an unjust enrichment claim is not barred by the existence of a contract because, as stated above, there is no contract claim asserted against him and he admits that he was not a party to any contract. Furthermore, Triton Partners LLC v. Prudential Sec. Inc., 752 N.Y.S.2d 870 (1st Dept. 2003) and the other cases cited by Ja Rule, dismissing an unjust enrichment claim where the relationship between the Plaintiffs and defendant was too attenuated, are inapposite. The Second Circuit Court of Appeals has held that only a modest connection between the plaintiff and defendant need be alleged to

support an unjust enrichment claim. In <u>Myun-uk Choi v. Tower Research Capital LLC</u>, 890 F. 3d 60 at 69 (2d Cir. May 9, 2018), the Court stated:

> "Contrary to the district court's view, a New York unjust enrichment claim requires no "direct relationship" between plaintiff and defendant. In <u>Cox v. Microsoft Corp.</u>, the Appellate Division sustained an unjust enrichment claim brought against Microsoft by "indirect purchasers of Microsoft's software products," *i.e.*, plaintiffs who had no direct relationship with Microsoft…. The court stated "'[i]t does not matter whether the benefit is directly or indirectly conveyed.' " <u>Id.</u> at 47, 778 N.Y.S.2d 147 (quoting <u>Mfrs. Hanover Tr. Co. v. Chem. Bank</u>, 160 A.D.2d 113, 117–18, 559 N.Y.S.2d 704 (1st Dept. 1990) ); <u>see also</u> <u>Grund v. Del. Charter Guarantee & Tr. Co.</u>, 788 F.Supp.2d 226, 251 (S.D.N.Y. 2011) ("Unjust enrichment does not require a direct relationship between the parties."). Rather, the requirement of a connection between plaintiff and defendant is a modest one."

The relationship between Plaintiffs and Ja Rule is anything but too attenuated as Ja Rule was a celebrity and influencer, the founder, officer and chief artistic leader and front and center promotor, of Fyre Festival. Regarding Ja Rule's argument that he was not personally enriched by the Festival, as a personal guarantor of a loan to finance the Fyre Festival, taken out only days prior to the Festival, not only was Ja Rule not too attenuated to the Festival and the Plaintiffs as he was financing it, but he increased the push to sell tickets and merchandise after signing the guaranty in order to reduce the amount of the loan to try to avoid responsibility on his personal guaranty. (SAC ¶¶ 15, 16, 92, 168 180). Discovery will show that Ja Rule was personally enriched by Fyre Festival ticket and merchandise sales, and that he was trying to reduce his own personal liability by making false representations about the Festival to sell Festival tickets and merchandise. A reduction in the amount of Ja Rule's personal financial liability to a lender, unjustly enriches Ja Rule.

- **Plaintiffs Adequately State a Claim Against Ja Rule for Inducement of Breach of Contract** - Ja Rule's arguments for dismissal are without merit. First, while he argues that Plaintiffs did not allege that he knew of the contracts, he admits that he was a member of Fyre Festival LLC and implies that he was a "significant shareholder." July 6, 2018 letter, page 3. Given his admitted high level involvement, his arguments throughout the letter that he was unaware of the contracts, representations made to Plaintiffs, or otherwise not involved with the Plaintiffs or the Festival are disingenuous at best and downright false, at worse. He was a founder, officer and shareholder, as admitted; Ja Rule was very much aware of the contracts as he and his entities were hawking them to the world through social media or hiring celebrities to hawk the items for them. Also, as stated in <u>White Plains Coat & Apron Co. v. Cintas Corp.</u>, 867 N.E.2d 381, 384 (N.Y. 2007), cited by Ja Rule, there are open questions and certainly factual questions as to an whether economic interest in an entity bars claims of inducement of breach of contract where defendants were significant stockholders in the breaching party's business. Indeed,

courts have found officers and other stakeholders liable for inducing breaches of contract where, as here, the corporate stakeholder commits independent torts or predatory acts.  Ja Rule, "may not seek refuge behind the mantle of immunity." <u>Buckley v. 112 Central Park South</u>, 285 App.Div. 331, 136 N.Y.S.2d 233 (1st Dept. 1954).  Similarly, in <u>Hoag v. Chancellor, Inc.</u>, 246 A.D.2d 224, 229, 667 N.Y.S.2d 531, 534 (1st Dept. 1998), the court sustained a cause of action for tortious interference with contract against corporate officers when the plaintiffs alleged that the "individual defendants sought to oust them and deprive them of benefits, particularly incentive fees with malicious and improper purpose of seizing those benefits for themselves." <u>See also</u> <u>Ackerman v. Vertical Club Corp.</u>, 94 A.D.2d 665, 666, 462 N.Y.S.2d 657, 660 (1st Dept. 1983) (when corporate officers profited personally from alleged fraud and conversion, their status as corporate agents was insufficient to shield them from personal liability).

- **Requested Briefing Schedule** If Ja Rule proceeds with his motion Plaintiffs propose that Ja Rule's moving papers on his 12(b)(6) motion to dismiss be filed pursuant to Local Rule 6.1 (b) Plaintiffs' opposition papers be filed by August 30, 2018, and Ja Rule's reply papers be filed by September 13, 2018.  The proposed briefing schedule addresses professional obligations and scheduling issues of the undersigned over the next sixty (60) or so days.

- **Request to File Oversize Brief**: Plaintiffs do not oppose Ja Rule's request to file an oversized brief of no more than forty (40) pages if Plaintiffs are allowed by the Court to file a similarly oversized opposition brief with the same page forty (40) page limit.

Respectfully,

*/s/ Lori G. Feldman*
Lori G. Feldman   (LGF- 3478)

Lead Counsel for Plaintiffs
Geragos & Geragos APC

Cc:  Ryan Smith, Esq.
     Paul Robert Niehaus, Esq.
     Rosemary Rivas, Esq.
     Fyre Media, Inc.
     Grant Margolin