## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS.................................................................................................. 3

ARGUMENT...................................................................................................................... 5

I.      STANDARD OF REVIEW ....................................................................................... 5

        A.      General Pleading Standard ............................................................................ 5

        B.      Fed. R. Civ. P. 9(b)'s heightened pleading standard applies to eight of the thirteen causes of action alleged against Atkins................................................. 6

II.     TWO WELL-SETTLED DOCTRINES OF NEW YORK LAW BAR PLAINTIFFS' CLAIMS AGAINST ATKINS GENERALLY ...................................... 7

        A.      The SAC's tort claims against Atkins must be dismissed because they are duplicative of Plaintiffs' breach of contract claims, and allege no independent duty........................................................................................... 8

        B.      Atkins's statements constitute non-actionable puffery under New York law, and under each of the state consumer protection statutes at issue. .............. 13

III.    PLAINTIFFS' COMMON-LAW CLAIMS FAIL FOR ADDITIONAL INDEPENDENT REASONS................................................................................... 15

        A.      Plaintiffs fail to state a claim for fraud or negligent misrepresentation............... 15

        B.      Plaintiffs fail to state a claim for negligence or for gross negligence.................. 21

        C.      Plaintiffs fail to state a claim for tortious interference with contract. ................. 25

        D.      Plaintiffs fail to state a claim for Unjust Enrichment. .......................................... 27

IV.    PLAINTIFFS' OUT-OF-STATE CONSUMER PROTECTION STATUTORY CLAIMS ARE PROPERLY REVIEWED UNDER RULE 9(b) AND EACH FAIL TO STATE A CLAIM AGAINST ATKINS ...................................................... 29

        A.      Each of Plaintiffs' out-of-state statutory causes of action fails to meet the pleading standards of Rule 9(b)........................................................................ 29

V.     PLAINTIFFS' CLAIMS UNDER THE STATE CONSUMER PROTECTION STATUTES FAIL FOR ADDITIONAL REASONS. ................................................. 30

        A.      The SAC fails to state a claim for violations of California's False Advertising Law, Unfair Competition Law, or Consumer Legal Remedies Act........................................................................................................... 30

        B.      The SAC fails to state a claim for a violation of Colorado's Consumer Protection Act. .......................................................................................... 33

C.     The SAC fails to state a claim for a violation of either the Illinois
       Consumer Fraud Act or the Illinois Uniform Deceptive Trade Practices
       Act....................................................................................................................35

D.     The SAC fails to state a claim for a violation of New York General
       Business Law §349. ......................................................................................37

CONCLUSION...............................................................................................................39

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abu Dhabi Comm. Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155 (S.D.N.Y. 2009).........18

*Accusystems, Inc. v. Honeywell Info. Sys., Inc.*, 580 F. Supp. 474 (S.D.N.Y. 1984) ..................12

*Acito v. IMCERA Group, Inc.,* 47 F.3d 47 (2d Cir. 1995) ...........................................................18

*Aetna Cas. v. Aniero*, 404 F.3d 566 (2d Cir. 2005) .....................................................................20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 5, 6, 37

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 50 (Ill. 2005)....................................35

*Bader v. Siegel*, 657 N.Y.S.2d 28 (N.Y. App. Div. 1997) .................................................... 13, 37

*Banque Arabe et Internationale D'Investissement v. Maryland National Bank*, 57 F.3d
    146, 153 (2d Cir. 1995) ...................................................................................... 15, 20

*Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910 (Ill. 2007)..........................................14, 35

*Bd. of Managers of 250 Bowery Condo. v. 250 VE LLC*, 2018 NY Slip Op 31168(U), *7
    (N.Y. Sup. Ct., 2018)...............................................................................................13

*Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007)...................................................................6, 37

*Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531 (9th Cir. 2016) ............................31, 32

*Burrowes v. Combs*, 808 N.Y.S.2d 50 (1st Dep't 2006)...............................................................25

*Canpartners Invs. Iv, LLC v. Alliance Gaming Corp.*, 981 F.Supp. 820 (S.D.N.Y. 1997) ..........19

*Chicago's Pizza v. Chicago's Pizza Franch.*, 384 Ill.App.3d 849 (Ill. App., 2008)....................36

*Clark–Fitzpatrick, Inc. v. Long Island R. Co.*, 70 516 N.E.2d 190 (N.Y. 1987) ..........................8

*Cohen v. Koenig*, 25 Ff..3d 1168 (2d Cir. 1994) ........................................................................19

*Compare Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60 (Colo. App.
    2004)...................................................................................................................34

*Crowe v. Tull*, 126 P.3d 196, 201. (Colo. 2006)..................................................................33, 34

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018)................................................7

*Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. 2011) .......................................................32

*Demshick v. Cmty. Hous. Mgmt. Corp.*, 824 N.Y.S.2d 166 (N.Y. App. Div. 2006) ...................11

*Deutsche Bank Nat. Tr. Co. v. Sinclair*, 68 A.D.3d 914, 891 N.Y.S.2d 445 (2009) ...................15

*Dooner v. Keefe, Bruyette & Woods, Inc.*, 157 F.Supp. 2d 265 (S.D.N.Y. 2001) ......................15

*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010) .......................................................31

*DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308 (S.D.N.Y. 2002) .....................................................20

*Edmundson v. Procter & Gamble Co.,* 537 F. App'x 708 (9th Cir. 2013) ...................................13

*Espinal v. Melville Snow Contractors, Inc.*, 773 N.E.2d 485 (N.Y. 2002) ..................................10

*Estate of Ginor v. Landsberg*, 960 F.Supp. 661 (S.D.N.Y. 1996) ................................................16

*Farash v. Cont'l Airlines, Inc.*, 337 F. App'x 7 (2d Cir. 2009) .....................................................21

*Foster v. Churchill*, 665 N.E.2d 153 (N.Y. 1996) ........................................................................25

*Georgia Malone and Company, Inc. v. Rieder,* 19 N.Y.3d 511 (2012) ........................... 26, 27, 28

*Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190 (N.Y. 2002) ........................................................37

*Hamilton v. Beretta U.S.A. Corp.*, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001) .............................24

*Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) .................................20

*In re Adderall XR Antitrust Litig.*, 754 F.3d 128 (2d Cir. 2014), *as corrected* (June 19, 2014).............................................................................................................................................5

*In re Sept. 11 Litig.*, 280 F. Supp. 2d 279 (S.D.N.Y. 2003).........................................................24

*Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69 (2d Cir. 1995)................................................6

*Kallman v. Pinecrest Modular Homes, Inc.*, 916 N.Y.S.2d 221 (N.Y. App. Div. 2011) ..............8

*Kaufman v. Sirius Xm Radio Inc.,* 751 F.Supp.2d 681 (S.D.N.Y. 2010) ....................................37

*Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine*, Ltd., 909 N.E.2d 848 (2009)...................................................................................................................................36

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322, 326 (Cal. 2011)....................................31

*Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007) .......................................................................................................... 31, 32

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006)..............................................................6

*Lewis v Don King Productions, Inc.*, 94 F.Supp.2d 430 (S.D.N.Y. 2000) ...................................19

*Lia v. Saporito*, 909 F. Supp. 2d 149, 171 (E.D.N.Y. 2012), *aff'd*, 541 F. App'x 71 (2d Cir. 2013)...............................................................................................................................12

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A*, 244 F.R.D. 204 (S.D.N.Y. 2007)....................................................................................................................................7

*Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282 (2002) ..................31

*Nat'l Union Fire Ins. Co. v. Red Apple Group, Inc.*, 273 A.D.2d. 140 (1st Dep't 2000)..............16

*Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC*, No. 15 CIV. 5607 (NRB), 2017 WL 2984023, at *6 (S.D.N.Y. July 6, 2017), *aff'd*, No. 17-2400-CV, 2018 WL 3133943 (2d Cir. June 26, 2018)................................................................................27, 29

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S 529 (N.Y. 1995) ..................................................................................................................37

*Park Rise Homeowners Ass'n v. Res. Con. Co.*, 155 P.3d 427 (Colo. App. 2006)......................14

*Pertile v. General Motors, LLC*, No. 15-cv-0518-WJM-NYW, 16 (D. Colo. 2017) ....................7

*Phillips v. Cox*, 261 Ill. App.3d 78 (Il. App. 1994) ...................................................................36

*Physicians Mut. Ins. Co. v. Greystone Servicing Corp.*, No. 07 CIV. 10490 (NRB), 2009 WL 855648, at *5 (S.D.N.Y. Mar. 25, 2009) ...................................................................8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436 (7th Cir 2011)..................................................................................................................7

*Price v. L'Oreal USA, Inc.*, 2017 U.S. Dist. LEXIS 165931, at *9 (S.D.N.Y. Oct. 5, 2017)....................................................................................................................................32

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478 (2d Cir.1995) ........18

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142 (Colo. 2003)........35

*RHINO LININGS USA, Inc. v. Rocky Mountain Rhino Lining*, Inc., 62 P.3d 142 (Colo., 2003)....................................................................................................................................34

*Schweitzer v. Mindlin*, 162 N.E. 524 (N.Y. 1928)....................................................................21

*Scola v. Boivin*, 2016 NY Slip Op 30116(U), *8 (N.Y. Sup. Ct. 2016) .....................................13

*Sharp v. Kosmalski*, 386 N.Y.S.2d 72 (N.Y. 1976)..................................................................26

*SmartStream Techs., Inc. v. Chambadal*, No. 17-CV-2459 (VSB), 2018 WL 1870488, at *7 (S.D.N.Y. Apr. 16, 2018)................................................................................................28

*Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606 (Ill. App. Ct. 1995) ................14

*Solomon v. Bell Atlantic Corp.*, 9 A.D.3d 49 (2004) ...................................................................38

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997)..................................13

*Sterling Nat'l Bank v. Federated Dep't Stores,* Inc., 612 F.Supp. 144 (S.D.N.Y. 1985)..............15

*Stutman v. Chem. Bank*, 95 NY.2d 24 (2nd Dept. 2002) ..............................................................37

*Sullivan v. Mers, Inc.,* 30 N.Y.S.3d 112 (N.Y. App. Div. 2016)...................................................28

*Tellabs Inc. v. Makor* Issues & Rights, Ltd., 551 U.S. 308 (2007) ...............................................18

*Time Warner Cable, Inc. v. Directv, Inc.,* 497 F.3d 144 (2nd Cir. 2007)......................................13

*Uitz v. Lustigman Firm, P.C.*, No. 13 CIV. 6040 RMB, 2014 WL 3767056, at *2–3
   (S.D.N.Y. July 28, 2014) ..........................................................................................................8

*UPS Store, Inc. v. Hagan*, 99 F. Supp. 3d 426 (S.D.N.Y. 2015) (quoting *Kwikset Corp.*,
   51 Cal. 4th at 326) ...................................................................................................................32

*Verizon Directories Corp. v. Yellow Book Usa, Inc.,* 309 F.Supp.2d 401 (E.D.N.Y. 2004) ........13

*Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877 (C.D. Cal. 2013) ...................................13

*Vitale v. Steinberg*, 307 A.D.2d 107, 764 N.Y.S.2d 236 (2003)............................................27, 28

*Wang v. Feinberg*, No. 17 CIV. 1452 (DAB), 2018 WL 1089293, at *5 (S.D.N.Y. Feb. 6,
   2018).......................................................................................................................................15

*White Plains Coat & Apron Co., Inc. v. Cintas Corp,* 8 N.Y.3d 422 (2007)...............................25

*Woods v. Maytag Co.*, 2010 WL 4314313, at *5 (E.D.N.Y. Nov. 2 2010) ............................7, 16

**Statutes**

815 Ill. Comp. Stat. §§ 505, *et seq*................................................................................................6

815 Ill. Comp. Stat. §§ 510/2, *et seq*.............................................................................................6

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ......................................................................................6

Cal. Bus. & Prof. Code §17500, *et seq.* .........................................................................................6

Cal. Civil Code §§ 1750, *et seq*.....................................................................................................6

Colo. Rev. Stat. §§ 6-1-101, *et seq.* ...............................................................................................6

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................................5

Fed. R. Civ. P. 9(b) ..............................................................................................1, 6, 7

## PRELIMINARY STATEMENT

Defendant Jeffrey Atkins ("Atkins") respectfully submits this memorandum of law in support of his motion to dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint (the "SAC") in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

The origin of this case is the cancellation of a music event called the Fyre Festival (the "Festival"). It was scheduled to be held on two separate weekends on the Bahamian island of Grand Exuma in April 2017, but was cancelled on its first day. While Fyre Festival, LLC (the "LLC") was the entity responsible for organizing the Festival, Plaintiffs have sued only the LLC's parent entity, Fyre Media, Inc. ("Media", together with the LLC "Fyre"). Plaintiffs admit that they each entered into a contract exclusively with Fyre for (1) air travel from Miami to the island, (2) food, (3) lodging, and (4) entertainment related to the Festival. Plaintiffs do not claim that Atkins was a party to their contracts or allege any facts showing that Atkins owed them a duty independent or extraneous to the contracts. In short, all of Plaintiffs' claims derive from Fyre's failing to meet its obligations under the contracts.

Nevertheless, in an effort to conjure up new causes of action and widen the net, Plaintiffs have sued Atkins—a famous rap artist performing under the stage name "Ja Rule"—and two other individuals under thirteen different causes of action including common law fraud, negligence, and other torts, as well as state consumer protection statutes from California, Colorado, Illinois, and New York. All of the SAC's causes of action are laid in boilerplate language against undifferentiated "Defendants" and lack factual development. This "group pleading" not only improperly attributes the actions of others to Atkins, it is insufficient as a matter of law for the eight claims in the SAC that are governed by Fed. R. Civ. P. 9(b).

In fact, the SAC's allegations about Atkins are comprised in their entirety of four social media posts, one unparticularized post-Festival statement, a drink toast made at a private

1

corporate dinner, and his corporate biography from documents given only to potential corporate investors. Of these factual claims, only two of Atkins's internet posts were publicly available before the Festival, and therefore are the only two statements to which Plaintiffs could have been exposed. Tellingly, not a single Plaintiff claims to have seen, have been aware of, or have been influenced by Atkins's statements. You cannot rely on what you do not know and therefore, even if each of the SAC's alleged facts are true, Plaintiffs could not have reasonably relied on the statements because they were unaware of them. Furthermore, as detailed below, these statements are non-actionable puffery.

Put simply, Plaintiffs are directly trying to evade the contracts they entered into with Fyre because Atkins appears to be the only solvent defendant. This they cannot do because their claims fail for well-establish principles of law:

- The tort claims fail because (1) they are derivative of the breach of a contract to which Atkins was not a party, and (2) Atkins owed no fiduciary duty to Plaintiffs;

-  the fraud claims fail to meet Rule 9(b)'s specificity requirements, and also fail to show a fiduciary relationship or reasonable reliance; and

- the remaining claims fail because they rely on non-actionable puffery or threadbare conclusory allegations.

The Complaint's deficiencies have already been presented to the Court on three separate occasions and, on Plaintiffs' request, the Court has granted extensions of time for Plaintiffs to amend and cure the Complaint's defects. Despite this extended schedule and leave to amend, Plaintiffs still fail to plead any cause of action against Atkins. At its core, the SAC alleges Atkins is guilty by association, but this claim has no legal basis. Atkins therefore respectfully requests that the SAC be dismissed against him in its entirety, with prejudice.

## STATEMENT OF FACTS[1]

*Generalized Allegations*

The Fyre Festival was intended to be a musical event held in the Bahamas on two separate weekends in 2017, featuring "top notch food, luxurious lodging, and hot entertainment in a stunning locale." SAC ¶ 1. Plaintiffs contracted with Fyre "to provide a luxury festival experience in exchange for money," which included festival tickets, musical entertainment, food, lodging, and airplane travel from Miami to the Festival site.  SAC ¶¶ 103, SAC. Ex. B. Atkins was not a party to these contracts.

Unfortunately, the Festival was cancelled on its first day, and Plaintiffs allege that the facilities and food provided did not satisfy Fyre's contractual obligations. SAC ¶ 2. Plaintiffs bring a breach of contract action "against Fyre Media only." SAC at 51. New York-based Media is the corporate parent of LLC (the entity that organized the Festival). SAC ¶¶ 157-62. The SAC alleges that Media breached the contract "by, among other things, failing to provide a luxury experience and providing substandard tents [,] scarce food, no musical acts and ultimately a cancelled event." SAC ¶ 160. Plaintiffs have also sued three individuals, including Atkins, over the event's cancellation and the conditions at the Festival, but not on breach of contract grounds. *See* SAC generally.

The SAC consistently utilizes boilerplate pleadings that fail to differentiate among the parties and offer nothing but conclusory assertions devoid of factual support. Paragraph 199 is illustrative:

> Defendants, including Atkins, Margolin and McFarland, made material omissions that are unlawful under the FAL by concealing, suppressing and omitting material facts, such as the island's inadequate infrastructure, the lack of preparedness of accommodations and activities at the Fyre Festival, and that Defendants had created an unsafe environment at

---

[1] The Statement of Facts is derived from the allegations in the SAC, and from the documents and news stories cited therein.

the Fyre Festival.

SAC ¶ 199. Likewise, every cause of action against Atkins that has an omissions element uses a strikingly similar version of this cut and paste form. *See* SAC ¶¶ 133, 142, 156, 189, 199, 209, 222, 237, 253, 267.

*Allegations Against Atkins*

The SAC alleges that Atkins was a "chief promotor, celebrity and influencer, owner, founder, director and officer, and financial backer" of the Festival. SAC ¶ 143. Atkins had a high-level, non-operational role. *See* SAC Ex. A, 37 (stating that he was "responsible for overall business strategy, guiding creative and facilitating artist relations."). Atkins did not have an executive C-level title, and was not listed as a "Fyre Starter" (influencer). *Id.* at 37–38, 22–25. The Festival contracted with at least six external businesses, including one specifically for production (i.e., execution) of the Festival. *See id.* at 41.

The SAC alleges that the entirety of Atkins's purported role as a "chief promoter" consisted of a single visit to the Festival's site "at least a month" before its start date, and two Festival-related social media posts. SAC¶¶ 87, 62, 64. In fact, Atkins was performing in Chicago at the time leading up to and including the Festival's start date. SAC at 15, n.5 (a PDF print-out of the article linked to in n.5 is attached hereto as Exhibit 1); Ex. 1, 5.

The SAC alleges no details of what Atkins saw during the site visit, and simply alleges that he was there with at least McFarland and Margolin. SAC ¶ 87. During the site visit at a private dinner, Atkins toasted to the Festival's success with McFarland, Margolin, and numerous cheering Fyre Festival employees:

> *Atkins:* "Make this thing come together and be amazing, rock-star sh*t, I tell you! And this is me and Billy's favorite toast and it goes to all of us in the room. Here's to living like movie stars, partying like rock-stars… Billy…"
> *Defendant McFarland:* "F***ing like porn-stars!"

4

*Atkins:* "To the Festival, baby!" SAC ¶¶ 87, 90 (hereinafter "the toast").

The toast became public only after the Festival's cancellation.[2] Finally, prior to the Festival, Atkins made the following posts on social media:

- December 13, 2016: "Fyre Festival looks set to be the biggest FOMO[3]-inducing event of 2017. The Debrief: Think Coachella x 1,000 and you're still not even close." Image after SAC ¶ 62 (emphasis added) (hereinafter the "FOMO" post).

- April 26, 2017 at 9:48PM while in Chicago, IL Atkins posted: "The stage is set!!! In less than 24 hours the first annual fyrefestival begins #festivallife." Image after SAC ¶ 64 (hereinafter the "stage is set" post).

Combined, both posts contain only 39 words. Every other statement attributed to Atkins in the SAC was not made until after the Festival, or only became publicly available after the Festival. Because the facts alleged against Atkins cannot support any claim against him, he should be dismissed from this action.

## ARGUMENT

### I.   STANDARD OF REVIEW

#### A.   General Pleading Standard

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a pleading requires more than accusations that "the-defendant-unlawfully-harmed me." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint must allege sufficient facts which, taken as true, state a plausible claim for relief." *Id.* at 663. Courts should "accept all factual allegations as true and draw every reasonable inference from those facts in the plaintiff's favor." *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 133 (2d Cir. 2014), *as corrected* (June 19, 2014). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal* at 678.

---

[2] The full toast can be viewed at these URLs: https://www.youtube.com/watch?v=Ze89nx7Yppw or https://www.youtube.com/watch?v=wFoLdL6G5UY.
[3] "FOMO" means "fear of missing out."

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). Applying the *Twombly*/*Iqbal* plausibility standard is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal* at 663-64. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal* at 678. If plaintiffs do not "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly* at 570.

Finally, although the court is limited to the facts as stated in the complaint, it may consider exhibits or documents incorporated by reference without converting the motion into one for summary judgment. *See Int'l Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995).

**B.**     **Fed. R. Civ. P. 9(b)'s heightened pleading standard applies to eight of the thirteen causes of action alleged against Atkins.**

Fed. R. Civ. P. 9(b)'s standard applies to eight of the thirteen causes of action Plaintiffs allege against Atkins, including the common-law claims for fraud and negligent misrepresentation, and the six consumer protection statutory claims from Colorado, Illinois, and California.[4]

"Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Further, pleading fraud under New York law requires "all

---

[4] The state statutory causes of action are:
- **California** (causes of action ten through twelve): False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §17500, *et seq.*, the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, and the Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*;
- **Colorado** (cause of action thirteen): Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-101, *et seq.*; and
- **Illinois** (causes of action fourteen and fifteen): Consumer Fraud Act ("CFA"), 815 Ill. Comp. Stat. §§ 505, *et seq.* 659 and Uniform Deceptive Trade Practices Act ("UDTPA"), 815 Ill. Comp. Stat. §§ 510/2, *et seq.*

averments of fraud," including each element thereof, to be "stated with particularity." Fed. R. Civ. P. 9(b); *see also Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007). Fraud by misrepresentation or concealment "require[s] that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Woods v. Maytag Co.*, 2010 WL 4314313, at *5 (E.D.N.Y. Nov. 2 2010). If the plaintiff cannot specify the time and place because no act occurred, "the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *Manhattan Motorcars* at 213.

This circuit applies Rule 9(b) to common-law fraud and negligent misrepresentation claims because they are "[cases in] which state law controls the elements of the fraud claim". *Id.*

Likewise, the federal courts that embrace California, Colorado, and Illinois apply Rule 9(b) to their respective state statutory causes of action. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (applying Rule 9(b) to California's CLRA, FAL, and UCL); *Pertile v. General Motors, LLC*, No. 15-cv-0518-WJM-NYW, 16 (D. Colo. 2017) (applying Rule 9(b) to Colorado's CCPA); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446-47 (7th Cir 2011). (applying Rule 9(b) to Illinois's CFA and UDTPA).

## II.    TWO WELL-SETTLED DOCTRINES OF NEW YORK LAW BAR PLAINTIFFS' CLAIMS AGAINST ATKINS GENERALLY

Virtually all of the SAC's claims against Atkins are barred under two well-settled principles of New York law. First, torts cannot be derived from a contractual breach without an additional violation of an independent duty. Second, most of the SAC's claims also fail because they are

based on mere promotional statements by Atkins on social media which are non-actionable puffery.

A.   **The SAC's tort claims against Atkins must be dismissed because they are duplicative of Plaintiffs' breach of contract claims, and allege no independent duty.**

"A simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark–Fitzpatrick, Inc. v. Long Island R. Co.*, 70 516 N.E.2d 190, 193 (N.Y. 1987). "As a general rule the breach of a contract is not actionable in tort in the absence of special additional allegations which amount to a breach of a duty distinct from, or in addition to, the breach of a contract." *Uitz v. Lustigman Firm, P.C.*, No. 13 CIV. 6040 RMB, 2014 WL 3767056, at *2–3 (S.D.N.Y. July 28, 2014).

New York state and federal courts routinely dismiss tort claims against individual defendants who are principals of defendant corporate entities, even when the contract was only between the plaintiff and the corporate entity. *See, e.g.*, *Uitz* at *3 (dismissing tortious interference with contract and unjust enrichment claims against individual shareholders of a law firm because the claims relied on the same factual premise as the claim for breach of contract to which only the law firm was a party); *Physicians Mut. Ins. Co. v. Greystone Servicing Corp.*, No. 07 CIV. 10490 (NRB), 2009 WL 855648, at *5 (S.D.N.Y. Mar. 25, 2009) (dismissing fraud claim against president/CEO/owner and co-COOs of defendant corporation because the individual defendants owed no duty beyond the corporation's contractual obligations); *Kallman v. Pinecrest Modular Homes, Inc.*, 916 N.Y.S.2d 221, 222 (N.Y. App. Div. 2011) (upholding dismissal of negligence claims against President and sole shareholder of corporate entity, where contract was with corporate entity only).

In the case at hand, Plaintiffs' tort claims (negligence, gross negligence, fraud, negligent misrepresentation, and tortious interference with contract) rely on the same factual premise as

8

their breach of contract claim against Fyre, *i.e.* failure to provide housing, food, and other amenities when Plaintiffs arrived on the island. And Plaintiffs fail to identify a legal duty independent of the contract that would have obligated Atkins to provide any of these things. Plaintiffs have thus failed to allege a breach of a duty "distinct from, or in addition to" the alleged breach of contract, and their tort claims must be dismissed.

  **1.**  **Plaintiffs' tort claims against Atkins arise from—and are duplicative of—their contract-based claims against Fyre, and are thus barred.**

  Plaintiffs correctly bring a breach of contract action "against Fyre Media only." SAC at 51. Plaintiffs allege that they each entered into a contract pursuant to which they would be provided "a luxury festival experience in exchange for money." SAC ¶ 159. They allege that Media breached the contract "by, among other things, failing to provide a luxury experience and providing substandard tents [,] scarce food, no musical acts and ultimately a cancelled event." SAC ¶ 160. Plaintiffs also repackage their breach of contract as various torts, alleging that "Defendants" failed to provide shelter, food, water, security, and a ready way to get off the island. SAC ¶¶ 122, 129, 143. But Plaintiffs' allegations that they were simultaneously entitled to (1) "luxury" shelter and food under the contract with Fyre and (2) "basic" shelter and food from the individual defendants is flatly incongruous. Plaintiffs had contracts with Fyre to be transported, fed, and entertained on the island. Their claims arise solely from this contract.

  Plaintiffs' tort claims against Atkins fail as a matter of law because they arise exclusively from the contract they entered with Fyre—a contract to which Atkins was not a party. There is no independent basis for liability against Atkins individually because he owed no independent legal duty to Plaintiffs.

2.      **The SAC alleges no cognizable independent legal duty that Atkins, individually, owed to Plaintiffs.**

a.      **On their face, the SAC's alleged "independent legal duties" stem from the contracts Plaintiffs entered with Fyre.**

The SAC contains four causes of action that arise out of purported independent duties owed by Atkins: negligence, gross negligence, fraud by omission, and negligent misrepresentation. Yet even in their allegations specific to these causes of action, Plaintiffs cannot articulate any purported duty without basing it on their status as parties to a contract with Fyre.

For the negligence and gross negligence claims, the SAC alleges that "Defendants, including Atkins . . . owed duties to Plaintiffs . . . <u>as paying customers and attendees of the Fyre Festival</u>." SAC ¶¶ 122, 129 (emphasis added). Similarly, in the fraud cause of action, they allege that "Defendants, including Atkins . . . had a <u>duty to ticketholders and attendees</u> to disclose" certain facts to them. SAC ¶ 142 (emphasis added). Again, Atkins was not a party to the contract that Plaintiffs clearly rely on as the source of these alleged duties. Therefore, he owed no duties to Plaintiffs as "paying customers" or "ticketholders" for the Festival.

b.      **None of Plaintiffs' alleged duties have any basis in New York law.**

i.      **Negligence and Gross Negligence "Duties"**

It is well established that the existence and scope of a duty is a question of law for the courts. *Espinal v. Melville Snow Contractors, Inc.*, 773 N.E.2d 485, 487 (N.Y. 2002). Thus, the SAC's allegations that Atkins owed Plaintiffs various duties are mere legal conclusions that are not entitled to the assumption of truth or inferences drawn in Plaintiffs' favor.

In an effort to conjure up a duty "independent of and extraneous to" the contract between Plaintiffs and Fyre, Plaintiffs state that the undifferentiated "Defendants" owed them duties "to provide true, reliable, and safe accommodations of food, water, shelter, security and medical

supervision at the Fyre Festival. These duties existed because Plaintiffs . . . were the foreseeable and probable victims of the inadequate and unsafe environment that Defendants created." SAC ¶¶ 122, 129 (emphasis added). This supposed basis for a duty is not supported by New York law.

Under New York law, foreseeability is not relevant to the existence of a duty. *Demshick v. Cmty. Hous. Mgmt. Corp.*, 824 N.Y.S.2d 166 (N.Y. App. Div. 2006). Rather, foreseeability "merely determines the scope of the duty once a duty is found to exist." *Id.* Plaintiffs cannot bootstrap a duty into existence by alleging a condition (foreseeability) that is legally relevant only if a duty has separately been found to exist. Thus, this purported "duty" is not cognizable under New York law, and Atkins cannot be liable for any claims supposedly derived from it.

> ii. **Atkins had no fiduciary-type relationship with Plaintiffs that would support a fraud by omission or negligent misrepresentation claim.**

The SAC also alleges that "Defendants including, Atkins, Margolin and McFarland" had a duty to disclose certain material facts to Plaintiffs, "including … the island's inadequate infrastructure, the lack of preparedness of accommodations and activities at the Fyre Festival, and that Defendants had created an unsafe environment at the Fyre Festival." SAC ¶ 142. *See also* SAC ¶¶ 122, 129 (alleging a similar duty that allegedly "arose from Defendants' position of having unique and superior knowledge about the environment at the Fyre Festival"). It also states that Atkins was a "chief promotor, celebrity and influencer, owner, founder, director and officer, and financial backer" which put him and Plaintiffs in a "close or fiduciary or fiduciary like relationship where Defendants, including Atkins, were inducing consumers to travel to a remote island for a luxurious festival in reliance that there would be food, shelter, musical acts and celebrities." SAC ¶ 143.

In short, Plaintiffs argue that "fiduciary" relationships exist between:

(1) a celebrity or influencer who promotes an event, and individuals who ultimately attend the event; or

(2) a principal (owner, founder, director, officer, or financial backer) of a corporate entity, and that corporate entity's one-time customers.

Neither of these "relationships" has ever been recognized as fiduciary under New York law, and Plaintiffs have not alleged facts that would support imbuing either of them with such status. To the contrary, a conventional business relationship, such as between a buyer and a seller dealing at arm's length, does not create a fiduciary relationship. *See Accusystems, Inc. v. Honeywell Info. Sys., Inc.*, 580 F. Supp. 474, 481 (S.D.N.Y. 1984).

There are four elements "essential to the establishment of a fiduciary relationship: (1) the vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself." *Lia v. Saporito*, 909 F. Supp. 2d 149, 171 (E.D.N.Y. 2012), *aff'd*, 541 F. App'x 71 (2d Cir. 2013).

As an initial matter, there is no factual basis for any kind of "relationship" at all between Plaintiffs and Atkins. The SAC does not allege that Atkins sold Plaintiffs their tickets or communicated with Plaintiffs directly through any means. The only two statements that Plaintiffs allege Atkins made personally (the "FOMO" and "stage is set" posts) were not targeted at anyone in particular.

It is implausible to suppose that such statements could result in Plaintiffs' vulnerability or Atkin's empowerment—much less Atkin's solicitation or acceptance of such empowerment—as required by *Lia*. Because Plaintiffs have failed to allege a relationship that would have created a duty to disclose, their claims for fraud by omission and negligent misrepresentation must be dismissed.

12

**B.      Atkins's statements constitute non-actionable puffery under New York law, and under each of the state consumer protection statutes at issue.**

Puffery is not actionable under New York law or any of the state consumer protection statutes at issue. As Atkins's statements are puffery, they cannot support these causes of action.

In New York, puffery is "an exaggeration or overstatement expressed in broad, vague, and commendatory language . . . which is to be discounted as such by the buyer . . ." *Time Warner Cable, Inc. v. Directv, Inc.,* 497 F.3d 144, 159 (2nd Cir. 2007). The nature of opinion or puffery is that it is "incapable of being proved true or false." *Bader v. Sieigel*, 657 N.Y.S.2d 28, 28 (N.Y. App. Div. 1997). Promises contained in brochures and advertisements, that a project would be a "luxury building," "of premier caliber," with "highest quality materials," are "little more than mere puffery, opinions of value or future expectations that do not constitute actionable fraud." *Bd. of Managers of 250 Bowery Condo. v. 250 VE LLC*, 2018 NY Slip Op 31168(U), *7 (N.Y. Sup. Ct., 2018). Puffery is not actionable under Plaintiffs' third, fourth, and ninth causes of action: common law fraud and negligent misrepresentation, and New York General Business Law § 349, respectively. *See Id.*; *Scola v. Boivin*, 2016 NY Slip Op 30116(U), *8 (N.Y. Sup. Ct. 2016); *Verizon Directories Corp. v. Yellow Book Usa*, *Inc.,* 309 F.Supp.2d 401, 405 (E.D.N.Y. 2004).

In California, puffing is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely" *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1145 (9th Cir. 1997). Examples include "unsurpassed picture quality," and "premium quality." *Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877, 895 (C.D. Cal. 2013). Puffery is not actionable under Plaintiffs' FAL, UCL, or CLRA causes of action. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir., 1997); *Edmundson v. Procter & Gamble Co.,* 537 F. App'x 708, 709 (9th Cir. 2013); *Id.*

In Colorado, puffery is the "expression of an exaggerated opinion—as opposed to factual representations—with the intent to sell a good or service." *Park Rise Homeowners Ass'n v. Res. Con. Co.*, 155 P.3d 427, 435 (Colo. App. 2006). Examples include "filled to the brim with torque," and "outstanding value." *Id.* at 435-36. "The CCPA does not, as a matter of law, make actionable a statement which would otherwise be mere puffery." *Id*. at 435.

In Illinois, puffery includes "meaningless superlatives that no reasonable person would take seriously." *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007). Examples include "custom quality," "magnificent," "picture perfect," and "best." *Id.* Puffery is not actionable under the Illinois CFA and UDTPA. *Id.; Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 620 (Ill. App. Ct. 1995).

Here, the entire "FOMO" post[5] is non-actionable puffery. It is composed entirely of forward-looking, exaggerated sales language, which a potential reader acting reasonably would so recognize, and then discount accordingly because inherently subjective statements or opinions, such as this one, cannot be proved true or false. What is "FOMO-inducing" or "Coachella x 1000" to one person, may not be so to another. The very imprecision of this statement's wording is squarely like non-actionable puffery such as "filled to the brim with torque" or "highest quality materials." Because no party could reasonably rely on non-actionable puffery like the "FOMO" post, the foregoing causes of action must be dismissed.

---

[5] Unlike the "FOMO" post, the "stage is set" post is subject to two potential interpretations: a literal interpretation and a figurative interpretation. Applying the latter interpretation, the "stage is set" post constitutes puffery for the same reasons as the "FOMO" post. While if taken literally, the "stage is set" post is objectively verifiable and was, in fact, true when made. Therefore, under either interpretation, the "stage is set" post also cannot be used to support any causes of action against Atkins.

III.   **PLAINTIFFS' COMMON-LAW CLAIMS FAIL FOR ADDITIONAL INDEPENDENT REASONS.**

In addition to failing under the preceding general principles of New York law, each of Plaintiffs' common law claims fails for many independent reasons.

A.   <u>**Plaintiffs fail to state a claim for fraud or negligent misrepresentation.**</u>

1.   **The SAC does not plead the necessary elements of a fraud claim.**

As discussed in Section, I.B., *supra*, fraud claims are subject to a heightened pleading standard, which the SAC does not meet. The fraud claims against Atkins are no more than vague assertions, precisely the type of indiscriminate mud-slinging from which Rule 9(b) was meant to serve as a shield.[6]

To establish fraud under New York law, a plaintiff must plead a (1) material false representation of an existing fact, (2) made with knowledge of its falsity, (3) with intent to defraud, (4) reasonable reliance, and (5) damages. *Dooner v. Keefe, Bruyette & Woods, Inc.*, 157 F.Supp. 2d 265 (S.D.N.Y. 2001). "[A] fraud claim must be based upon a misrepresentation of an existing fact rather than upon an expression of future expectations." *Deutsche Bank Nat. Tr. Co. v. Sinclair*, 68 A.D.3d 914, 916, 891 N.Y.S.2d 445, 447 (2009); *Wang v. Feinberg*, No. 17 CIV. 1452 (DAB), 2018 WL 1089293, at *5 (S.D.N.Y. Feb. 6, 2018) (same).

For actionable fraud by concealment, a complaint must also contain allegations that the defendant had a duty to disclose material information and failed to do so. *Banque Arabe et Internationale D'Investissement v. Maryland National Bank*, 57 F.3d 146, 153 (2d Cir. 1995). Thus, "[a]bsent a confidential or fiduciary relationship, failure to disclose cannot be the basis of

---

[6] "The particularity requirement of Rule 9(b) serves three purposes: first, to inhibit the filing of a Complaint as a pretext for discovery for unknown wrongs; second, to protect potential defendants from the harm that comes to their reputation when charged with a crime involving moral turpitude; and third, to ensure that allegations of fraud are sufficiently concrete and particularized so that the defendant has notice of what conduct is complained of, thus enabling the defendant to prepare a defense." *Sterling Nat'l Bank v. Federated Dep't Stores,* Inc., 612 F.Supp. 144, 147-48 (S.D.N.Y. 1985).

a fraud claim." *Nat'l Union Fire Ins. Co. v. Red Apple Group, Inc.*, 273 A.D.2d. 140, 141 (1st Dep't 2000) (dismissing fraud claim). *See also Estate of Ginor v. Landsberg*, 960 F.Supp. 661, 667 (S.D.N.Y. 1996) (where no affirmative misrepresentation is made, a fraud claim cannot lie absent a fiduciary or confidential relationship).

Because the SAC does not offer a plausible (much less particular) explanation of reliance or show the existence of a fiduciary relationship as required for non-disclosure-based fraud claims, this cause of action must be dismissed.

### a.   The SAC fails to plead fraud against Atkins with the particularity required by Rule 9(b).

Fraud claims are reviewed under Rule 9(b)'s heightened pleading standard, as discussed in Section, I.B., *supra*. The "FOMO" and "stage is set" posts represent the entirety of Atkins's statements made before the Festival.

Tellingly, Plaintiffs do not allege that <u>they</u> saw either of these pair of posts, they do not allege dates or times of <u>when</u> they saw them, or that seeing them <u>induced</u> their reliance, or that they <u>actually</u> relied on them. Fraud allegations must be spelled out with particularity and failure to do so supports dismissal. *See Woods* at *6 ("Here, it is clear that the vague allegations relating to the misrepresentations and omissions clearly fall short of meeting Rule 9(b)'s particularity requirements. The allegations in the Complaint fail to specify the actual location of the advertisements or literature where the Plaintiff purportedly viewed the alleged statements, the content of the statements and when the statements were made.")

Additionally, the misrepresentation and omission claims are generically laid against "Defendants," "Defendants including Atkins, Margolin and McFarland," and "Defendants including Atkins in particular" SAC ¶¶ 136-46. This undifferentiated labeling improperly imputes all of the SAC's generalized allegations and all of the allegations applicable only to

16

McFarland and Margolin to Atkins. Because the SAC plainly fails to plead fraud with any sort of particularity, this cause of action must be dismissed.

> **b.     The SAC fails to plead that Atkins made a materially false representation of an existing fact made with knowledge of its falsity.**

Plaintiffs assert that "Defendants including Atkins, Margolin, and McFarland" made numerous false representations of an existing fact made with knowledge of its falsity. SAC ¶¶ 137, 139. Yet the SAC provides no basis for imputing any detailed knowledge of the Festival's preparations to Atkins. Beyond alleging Atkins's corporate biography and status as a financial backer, the SAC pleads no facts showing that he had a day-to-day role in planning the Festival. For example, Plaintiffs admit that Atkins's last visit to the Festival's site was at least a month before it began, and in the days leading up to and on the day of the Festival's cancellation, he was on tour in Chicago.

With such sparse facts, it is unsurprising that Plaintiffs do not claim that Atkins had any cause to be concerned by what he saw during this site visit, instead alleging only that "he shared whatever he saw (or didn't see) with the other Defendants." SAC ¶ 87.[7] Atkins's encouragement that Festival employees make the Festival "come together and be amazing" contradicts Plaintiffs' fraud by omission claims. Because the facts in the SAC contradict a fraud claim, this cause of action must be dismissed.

---

[7] Curiously, SAC ¶ 90, contradictorily states that "Defendants Atkins and McFarland and, upon information and belief, Defendant Margolin, even toasted in or about March 2017" thus alleging that they were together during the site visit.

**c.      The SAC fails to plausibly plead intent to defraud.**

The SAC also fails to adequately allege scienter as required for fraud claims in this

Circuit. Plaintiffs must allege either (1) "motive and opportunity to commit fraud" or (2) "strong

circumstantial evidence of conscious misbehavior or recklessness." *Abu Dhabi Comm. Bank v.*

*Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 171 (S.D.N.Y. 2009). Where motive and

opportunity are alleged, the facts pleaded must support a strong inference of scienter that is

"cogent and <u>at least as compelling</u> as any opposing inference of nonfraudulent intent." *Tellabs*

*Inc. v. Makor* Issues & Rights, Ltd., 551 U.S. 308, 314 (2007) (emphasis added).

Here, the SAC does not adequately allege "conscious misbehavior or recklessness" by

Atkins, or adequately plead facts supporting a "strong inference" of scienter based on motive and

opportunity to commit fraud. As discussed in the previous section, Plaintiffs do not plausibly

allege that Atkins had an active role in Fyre. Thus the SAC plainly fails to support any

plausible—much less "cogent" or "compelling"—inference of scienter. Moreover, the SAC's

facts actually support the opposite inference: Plaintiffs' and Atkins's interests in making the

Festival a success were fully aligned. Plaintiffs have simply offered no reason why Atkins would

back a large loan "mere days" before the Festival, and then attempt to "fleece" Plaintiffs with the

goal of "reducing the amount of the loan." SAC ¶¶ 13, 180.

Finally, allegations made "upon information and belief" cannot establish a strong

inference of fraudulent intent. *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir. 1995). As

for Atkins's "stage is set" post, the SAC claims, "upon information and belief . . . he certainly

knew that the 'stage was not set' or going to be 'set' to deliver the Festival as represented." SAC

¶ 90. As a matter of law, this fails to establish a strong inference of fraudulent intent.

#### d.       The SAC fails to plead reliance.

Plaintiffs' fraud claim must also be dismissed because the SAC fails to offer a plausible explanation of reasonable reliance. "Plaintiff's reliance in this context must be 'reasonable.'" *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir.1995). "The failure to fulfill a promise to perform future acts is not grounds for a fraud action unless there existed an intent not to perform at the time the promise was made." *Cohen v. Koenig*, 25 Ff..3d 1168, 1172 (2d Cir. 1994). "Similarly, statements will not form the basis of a fraud claim when they are 'puffery' or are opinions as to future events." *Id.*

Specifically, Atkins's statements are not of a species that induce reliance because they do not promise anything about the Festival's quality. The amount of "FOMO" the Festival was projected to or actually did induce, and the fact that the stage was in fact set up the night before it was set to begin, are not promises of the Festival's quality, and are unrelated to the injuries that Plaintiffs assert, namely expenditures on the Festival. Further, as discussed in Section, II.B., *supra* the Atkins's two social media posts are non-actionable puffery. For these reasons, the SAC fails to plead reasonable, and this claim must be dismissed. *See Lewis v Don King Productions, Inc.*, 94 F.Supp.2d 430 (S.D.N.Y. 2000) (dismissing fraud claim where the facts allegedly concealed were not plausibly relied upon by plaintiffs when entering into an agreement.)

#### e.       The SAC fails to plead the existence of a fiduciary relationship.

The SAC does not plead the existence of a fiduciary or confidential relationship between Atkins and Plaintiffs. As discussed in section II.A.2, *supra*, Atkins had no special or fiduciary relationship with Plaintiffs. It is well established that in order for a fraud claim premised on concealment (as is the case here) to survive a motion to dismiss, the complaint must allege the existence of a fiduciary or confidential relationship which implies a duty to disclose. *See Canpartners Invs. Iv, LLC v. Alliance Gaming Corp.*, 981 F.Supp. 820, 825-26 (S.D.N.Y. 1997)

19

(dismissing fraud claim based on concealment where no fiduciary relationship existed among the parties). Because Plaintiffs have failed to allege the existence of any such relationship, the fraud claim must be dismissed.

### 2.     The SAC fails to state a claim for negligent misrepresentation.

Plaintiffs' negligent misrepresentation claim is inadequately pleaded and must be dismissed. Establishing this claim requires showing that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment. *Hydro Inv'rs, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

#### a.     The SAC does not plead this claim with particularity as required by Rule 9(b).

Negligent misrepresentation claims must be pleaded in accordance with the specificity criteria of Rule 9(b). *Aetna Cas. v. Aniero*, 404 F.3d 566, 583 (2d Cir. 2005). For reasons set forth in Section, III.A.1.a., *supra,* the SAC's allegations are not presented with sufficient specificity to establish a claim for purposes of Rule 9(b), and must be dismissed.

#### b.     The SAC fails to plead that Atkins owed a duty as a result of a special relationship, that he made any representations he should have known were incorrect, or that Plaintiffs' reliance was reasonable.

Negligent misrepresentation requires "a special relationship of trust or confidence between the parties" *Banque* at 158. For reasons set forth in Section II.A.2.b.ii., *supra*, the negligent misrepresentation claim is fatally flawed because Plaintiffs' allegations of a "special relationship" are entirely without merit. In addition, as discussed above in connection with the purported fraud claim, Plaintiffs do not adequately allege that Atkins knew or should have

20

known any representations he made were false, or that Plaintiffs reasonably relied on his alleged representations. *See DynCorp v. GTE Corp.,* 215 F. Supp. 2d 308, 328 (S.D.N.Y. 2002) (reasonable reliance standard for negligent misrepresentation is same as for fraud claims).

**B.      Plaintiffs fail to state a claim for negligence or for gross negligence.**

A plaintiff cannot recover for negligence unless (1) the defendant owed the plaintiff a cognizable duty of care, (2) the defendant breached or failed to exercise that duty, and (3) the plaintiff suffered injury as a proximate result of that failure. *Farash v. Cont'l Airlines, Inc.*, 337 F. App'x 7, 9 (2d Cir. 2009). Bare allegations that the defendant was negligent do not suffice to support a cause of action for negligence. *Schweitzer v. Mindlin*, 162 N.E. 524, 524 (N.Y. 1928). Stating a claim for gross negligence requires an additional fourth element, namely conduct by defendant "that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Farash* at 368. A plaintiff who fails to make out a claim of ordinary negligence, necessarily fails at stating a claim for gross negligence. *Id.*

**1.      Plaintiffs have not alleged a cognizable duty of care that Atkins owed them.**

As discussed in Section II.A.2.b.i., *supra*, the purported duties alleged in the Negligence and Gross Negligence claims do not exist under New York law. Because Atkins owed Plaintiffs no cognizable duty of care, there can be no breach, and the negligence claims should be dismissed.

**a.      Even assuming that the duties Plaintiffs articulate were cognizable, plaintiffs Jung, Mainero, Herlihy, Jutla, and Pittas fail to allege any breach of duty, or any injury proximately caused by a breach of that duty.**

In an effort to cook up a duty owed by Atkins "independent of and extraneous to" the contract between Plaintiffs and Fyre, Plaintiffs state the following duty in their Negligence and Gross Negligence causes of action: "[T]o provide true, reliable and safe accommodations of

food, water, shelter, security and medical supervision at the Fyre Festival." SAC ¶¶ 122, 129. But five of the Plaintiffs fail to allege either a breach of these duties purportedly owed to them, or to allege any injury that would have been proximately caused by a breach of these duties, or both.

The SAC repeatedly states that Festival attendees were given food including "bread and cheese sandwiches, side-salads, and pasta" and "food [that] was not gourmet food, but cheese sandwiches." SAC ¶¶ 82, 113. None of the Plaintiffs allege that they themselves received no food, or allege any injury that would be caused by failure to receive food. The food provided may not have been the gourmet food that Plaintiffs were expecting, but that complaint should be addressed through a breach of contract claim against the parties to the contract, not as a tort claim against Atkins.

The SAC also repeatedly states that attendees were provided shelter–namely, tents: "Plaintiff Wilson and her friends found hundreds of tents lined up" and "attendees were provided with only tents to sleep in." SAC ¶¶ 105, 113 (emphasis added). And although the complaint alleges that "[t]here were not enough tents for all of the attendees," SAC ¶ 113, none of the Plaintiffs allege that they themselves were unable to secure a tent. As a result, they fail to allege that the duty was breached as to them specifically. There are also no allegations of injury that was proximately caused by failure to provide sufficient shelter. As with the food, Plaintiffs complain that the tents provided were not the "luxury villas" they expected. In any event, the tents provided shelter. Any discontent about the austerity of the tents is, again, properly addressed in a breach of contract claim against the parties to the contract—not a tort claim against Atkins.

Next, while the SAC alleges that no medical team was present on the island, none of the Plaintiffs claim that they needed, and did not receive, medical care while they were there. Plaintiffs have thus failed to allege any injury that was proximately caused by the breach of the supposed "duty to provide medical supervision." SAC ¶¶ 122, 129.

Finally, while the SAC contains general allegations of inadequate water and security, Jung, Mainero, Herlihy, Jutla, and Pittas fail to allege that they were not provided water or security—therefore, they have not alleged a breach of the duties they claim. These five plaintiffs have also failed to allege any injuries that could have been proximately caused by inadequate provision of water or security. Because they fail to claim either breach, proximately caused injury, or both, for each of the duties they purport Atkins owed them, these Plaintiffs fail to state a claim for negligence or gross negligence, and their claims must be dismissed.

> **b.** **While Plaintiff Wilson includes additional allegations related to breach of the purported duty to provide water, her claims still fail because she has alleged no injury proximately caused by that breach.**

Like her co-plaintiffs, Wilson fails to state a claim arising out of the purported duties to provide food, shelter, security, and medical supervision. Wilson makes two allegations in the SAC touching on an alleged failure to provide water. First, when listing how the accommodations were not as advertised, she includes an allegation that "[t]here was no water station." SAC ¶ 113. Wilson does not claim that there was no water at all, or that she herself was unable to procure water when she needed it, and therefore no breach is sufficiently alleged.

Wilson goes on to state that she waited at the airport and on a plane for "several hours," and that during that time she was "without food or water." *Id.* This is still not enough to allege an actual breach of the general "duty to provide water" to Festival attendees. Wilson still does not allege that there was no water anywhere on the island; instead, she alleges there was no water at

the airport and on the plane when she was there. Regardless, Wilson fails to allege any injury proximately caused by her being without water while she waited at the airport and on a plane.

Because Wilson has failed to allege either breach, proximately caused injury, or both, for each of the duties she purports Atkins owed her, including the duty to provide water, she fails to state a claim for negligence or gross negligence.

### c.      Atkins had no duty to protect Plaintiff Lauriello's personal effects from the acts of third persons.

Like his co-plaintiffs, Lauriello fails to state a claim arising out of the purported duties to provide food, water, shelter, and medical supervision. He does allege, however, that "his personal effects were stolen, including headphones, jeans and sneakers because Defendants failed to provide any security." SAC ¶ 111.

Even if the allegations are taken as true, Atkins had no duty to protect Lauriello from acts of third persons. "New York courts have been cautious in extending liability to defendants for their failure to control the conduct of others, 'even where as a practical matter [the] defendant can exercise such control.'" *In re Sept. 11 Litig.*, 280 F. Supp. 2d 279, 290 (S.D.N.Y. 2003). Courts have sometimes imposed a duty when the relationship between the defendant and plaintiff requires the defendant to protect the plaintiff from the conduct of others. *Hamilton v. Beretta U.S.A. Corp.*, 727 N.Y.S.2d 7, 750 N.E.2d 1055, 1061 (2001). But even then, "[t]he class of potential plaintiffs to whom the duty is owed is circumscribed by the relationship." *Id.*

As detailed in Section II.A. *supra*, there was no relationship between Atkins and Lauriello whatsoever—the only relationship was a contract between Lauriello and Fyre. If, as alleged, a third party stole Lauriello's personal effects, Atkins had no duty to protect him from that third party's actions.

C.    **Plaintiffs fail to state a claim for tortious interference with contract.**

To establish tortious interference with contract, a plaintiff must "show the existence of its valid contract with a third party, defendant's knowledge of that contract, defendant's intentional and improper procuring of a breach, and damages." *White Plains Coat & Apron Co., Inc. v. Cintas Corp*, 8 N.Y.3d 422, 426 (2007). In response to such a claim, "a defendant may raise the economic interest defense." *Id.* "Th[is] defense has been applied where defendants were significant stockholders in the breaching party's business." *Id*. When the defendant has an economic interest in an allegedly-breached contract, a tortious interference claim fails unless the sole, exclusive, motive for the claimed interfering conduct was malice, or the conduct was fraudulent or illegal. *See Foster v. Churchill*, 665 N.E.2d 153, 156 (N.Y. 1996). Finally, "a plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct." *Burrowes v. Combs*, 808 N.Y.S.2d 50, 53 (1st Dep't 2006).

1.    **The economic interest defense bars this claim.**

The economic interest defense bars this claim because Atkins is a "significant" stockholder "in the breaching party's business," with a direct economic interest in the contracts. SAC ¶ 33. In addition to his stockholder interest, the SAC alleges an additional economic interest: the business loan that Atkins guaranteed for Fyre. SAC ¶ 168. With at least two alleged interests, neither one can be the sole, exclusive motive for any of Atkins's actions. Finally, the malice/fraud carve-out does not preserve Plaintiffs' claim, because the SAC alleges throughout that "Defendants'" bad conduct was directed at inducing the Plaintiffs to enter their contracts with Media, not at procuring Media's breach of the contracts. For these reasons, this claim must be dismissed.

### 2. The SAC fails to allege that Atkins had knowledge of the contracts.

For the second element, Plaintiffs must establish Atkins's "knowledge of that contract." Here, "that" is each individual contract Plaintiffs entered into. The SAC nakedly states that Atkins "was very much aware of the contracts as he and his entities were hawking them to the world through social media or hiring celebrities to hawk the items for them." SAC ¶ 166. The phrase "his entities" improperly imputes to Atkins the alleged knowledge of Fyre's 14 employees, 65 external promotional spokespeople (*e.g.* Kendall Jenner), and 6 external business contractors. SAC Ex. A at 22-25, 37-51.

Even if a Fyre employee or booking agent sold a ticket (the contract) to a Plaintiff, it is absurd to imply that Atkins would automatically have knowledge of the Plaintiff's new contract. There are no allegations that Atkins engaged in ticket sales directly, or how he otherwise could have acquired knowledge of each ticket sold to each Plaintiff. Atkins's "FOMO" and "stage is set" posts certainly do not warrant the conclusion that he knew about the contracts. For these reasons, Plaintiffs' claims must be dismissed.

### 3. Plaintiffs fail to allege that Atkins intentionally procured the breach.

Plaintiffs state that Atkins "induced Fyre Media to breach its contract" because it was "the easiest way" to repay the Festival's loan. SAC ¶ 168. This fully unsubstantiated claim is no more than threadbare speculation dressed up as conclusion, and therefore is not entitled to the assumption of truth. Beyond repeating variations of this claim several times, the SAC offers no supporting facts of <u>what</u> actions Atkins supposedly took to procure the contractual breach. Its many pages of conclusory allegations do not plausibly allege that Atkins intentionally procured a breach that would not have occurred "but for" his interference, and this claim must be dismissed.

**D.** **Plaintiffs fail to state a claim for Unjust Enrichment.**

To establish unjust enrichment, the plaintiff must allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone and Company, Inc. v. Rieder,* 19 N.Y.3d 511, 516 (2012). "A conclusion that one has been unjustly enriched is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties." *Sharp v. Kosmalski*, 386 N.Y.S.2d 72, 76 (N.Y. 1976). Also, a "plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party… that is not 'too attenuated'" *Malone* at 516. A relationship is "too attenuated" where the claims are no more than "arms-length business interactions" and the parties "simply had no dealings with each other." *Malone* at 517-18. "[T]he existence of . . . an express contract governing the subject matter of plaintiff's claims[] also bars the unjust enrichment cause of action" even if the defendants "were not signatories to that agreement." *Vitale v. Steinberg*, 307 A.D.2d 107, 111, 764 N.Y.S.2d 236, 239 (2003); *Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC*, No. 15 CIV. 5607 (NRB), 2017 WL 2984023, at *6 (S.D.N.Y. July 6, 2017), *aff'd,* No. 17-2400-CV, 2018 WL 3133943 (2d Cir. June 26, 2018) ("[W]here there is an express contract that clearly controls, the unjust enrichment claim should be dismissed.").

**1.** **The SAC does not plausibly allege that Atkins was enriched.**

Plaintiffs tepidly speculate that "to reduce the amount of" the loan Atkins guaranteed "may have been motivation for Defendants" to increase the push to sell tickets and merchandise. SAC ¶¶ 15-6, 180 (emphasis added). The SAC does not claim a "transfer of property" (*i.e.* money) to Atkins. Instead, it vaguely asserts that the LLC received ticket proceeds, which were presumably transferred to Media, and then "may" have been used to reduce Atkins's potential

liability as a guarantor on a business loan. Also, Plaintiffs' claims that Atkins received

"remuneration based … on ticket sales" are not otherwise supported by additional facts. SAC ¶

180. Because the SAC does not state this claim plausibly, it must be dismissed.

 2. **The SAC fails to allege a sufficiently close relationship between Plaintiffs and Atkins.**

The entirety of the SAC's relationship claim is that "McFarland and Atkins interacted

with consumers about the Fyre Festival" SAC ¶180. This threadbare assertion does not allege a

relationship between any Plaintiff and Atkins. There are no claims of phone calls, e-mails,

meetings, or any other actions indicating a relationship. When a plaintiff alleges no relationship

between himself and the defendant, an unjust enrichment claim should be dismissed. *See*

*Sullivan v. Mers, Inc.,* 30 N.Y.S.3d 112, 113 (N.Y. App. Div. 2016) (upholding dismissal for

failure to state a claim on these grounds). Presumably, Plaintiffs' unjust enrichment claim is

based on incorporated references to Atkins's "FOMO" and "stage is set" posts. Interactions are

"too attenuated" to be considered a relationship where they are no more than "arms-length

business interactions" and the parties "simply had no dealings with each other." *Malone* at 517-

18. Atkins's posts fit this standard. First, the "FOMO post and "stage is set posts are one-way

communications not directed at any particular Plaintiff. Further, no Plaintiff alleges to actually

have seen them. Because the SAC fails to allege any sort of interaction that can be a relationship,

this claim must be dismissed.

 3. **The existence of an express contract between Plaintiffs and Fyre bars Plaintiffs' unjust enrichment claim.**

The SAC alleges that Atkins was unjustly enriched by compensation based on "ticket and

merchandise sales." SAC ¶ 180. Likewise, Plaintiffs' breach of contract claim is based on

alleged failures to provide a luxury festival in exchange for Plaintiffs' purchase of

tickets.  *See* SAC ¶¶ 159-61. Consequently, Plaintiffs' seek the same relief about the same

subject matter in their unjust enrichment and breach of contract claims. But New York law prohibits such duplicative claims. *SmartStream Techs., Inc. v. Chambadal*, No. 17-CV-2459 (VSB), 2018 WL 1870488, at *7 (S.D.N.Y. Apr. 16, 2018) ("It is well settled that the existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter."). It makes no difference that Atkins was not a party to the contracts. *Vitale*, 307 A.D.2d at 111, 764 N.Y.S.2d at 239. Because Plaintiffs do not contest the validity of the express contracts governing the facts at issue, their unjust enrichment claim is therefore barred. *See Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC*, No. 15 CIV. 5607 (NRB), 2017 WL 2984023, at *6 (S.D.N.Y. July 6, 2017), *aff'd*, No. 17-2400-CV, 2018 WL 3133943 (2d Cir. June 26, 2018).

Finally, this claim neither differentiates the defendants, nor attributes any factual allegation to Atkins specifically. For these reasons, Plaintiffs' unjust enrichment claim fails to raise their right to relief above a speculative level and must be dismissed.

## IV. PLAINTIFFS' OUT-OF-STATE CONSUMER PROTECTION STATUTORY CLAIMS ARE PROPERLY REVIEWED UNDER RULE 9(B) AND EACH FAIL TO STATE A CLAIM AGAINST ATKINS

### A. Each of Plaintiffs' out-of-state statutory causes of action fails to meet the pleading standard of Rule 9(b).

As discussed in Section, I.B., *supra*, causes of action ten through fifteen are properly reviewed under Rule 9(b)'s heightened pleading standard. Here, the allegations for each cause of action are pleaded with the same conclusory, sweeping generalizations that "Defendants" or "Defendants including Atkins, Margolin and McFarland" made "false and misleading statements" and "material omissions." SAC ¶¶ 198–99; 208–09; 221–22; 236–37; 252–53; 265–66. This undifferentiated labeling improperly imputes all of the SAC's generalized allegations, and all of the allegations applicable only to McFarland and Margolin, to Atkins.

Likewise, the SAC's boilerplate reliance allegations are insufficient because they do not plead facts. They allege only that Plaintiffs "relied on Defendants' misrepresentations and omissions regarding the experience and accommodations." SAC ¶ 102. Further, each of these claims formulaically alleges that each Plaintiff was injured "[a]s a direct and proximate result of these acts and omissions." *See* SAC ¶¶ 202, 213, 228, 244, 259, 269. Atkins's "FOMO" and "stage is set" posts, the only allegations involving Atkins, do not relate to Plaintiffs' alleged injuries: expenditures on the Festival. Plaintiffs' blanket statements offer legal conclusions rather than pleading facts.

Likewise, Plaintiffs' omission claims for causes of action ten through fifteen are utterly missing any factual development or specificity. Paragraph 199 of the SAC is representative of the cut-and-paste nature of these pleadings:

> Defendants, including Atkins, Margolin and McFarland, made material omissions that are unlawful under the FAL by concealing, suppressing and omitting material facts, such as the island's inadequate infrastructure, the lack of preparedness of accommodations and activities at the Fyre Festival, and that Defendants had created an unsafe environment at the Fyre Festival.

*Compare* SAC ¶ 199 *with* SAC ¶¶ 209, 222, 237, 253, 267.

Causes of action ten through fifteen plead conclusions, not facts related to time, place, and circumstances as Rule 9(b) requires, and therefore, must be dismissed.

## V. PLAINTIFFS' CLAIMS UNDER THE STATE CONSUMER PROTECTION STATUTES FAIL FOR ADDITIONAL REASONS.

The California, Colorado, and Illinois consumer protection statutory causes of action each fail on a variety of additional independent grounds.

### A. The SAC fails to state a claim for violations of California's False Advertising Law, Unfair Competition Law, or Consumer Legal Remedies Act.

Jung's allegations under the FAL, UCL, and CLRA (together, the "Statutes") are insufficient to show causation. Jung thus lacks standing. Additionally, since actual reliance is an

element of the Statutes, Jung again fails to state a claim because he has not asserted that he actually relied on any statement Atkins made personally. For these reasons each claim under the Statutes must be dismissed.

> **1.      Plaintiff Jung did not allege that Atkins caused his injury, and causation is a statutory requirement to assert standing under the Statutes.**

Standing to assert a claim under the Statutes requires causation. The FAL and UCL confer standing to "any person who has suffered injury in fact and [] lost money or property <u>as a result of</u>" a statutory violation. 2004 Cal. Legis. Serv. Prop. 64 (Proposition 64) (West); Cal. Bus. & Prof. Code §§ 17204, 17535 (emphasis added). "'As a result of' in its plain and ordinary sense means 'caused' by and requires a showing of a causal connection" under both FAL and UCL claims. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322, 326 (Cal. 2011). The CLRA imposes the same causation requirement for standing. *See Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292 (2002).

The Statutes' causation requirement is illustrated by *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005), *aff'd*, 252 F. App'x 777 (9th Cir. 2007). There, plaintiffs failed to plead causation under the FAL and UCL because "none of the named plaintiffs allege[d] that they saw, read, or in any way relied on the advertisements" involved in the lawsuit. *Id.* at 1184–85. Therefore, they "lack[ed] standing," and the claims were dismissed. *Id.*

Further, a plaintiff's knowledge of statements on the one hand, and the timing of a purchase on the other goes to the heart of a causation claim. Where a plaintiff "did not see the allegedly offending statements <u>before</u> he purchased the [product,]" the statements "cannot be said to have influenced his purchase, and he cannot state a claim." *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (emphasis added); *see also Durell v. Sharp*

31

*Healthcare*, 183 Cal. App. 4th 1350, 1362–63 (2010) (applying this requirement to "unlawful" conduct claims under the UCL when those claims are based on misrepresentation or deception)).

Here, Jung lacks standing because he did not plead facts to show that Atkins's statements caused his injury. Atkins's statements are distinct from those of the three other Defendants, which Plaintiff seeks to attribute to Atkins. According to the SAC, the only public statements Atkins made prior to the Festival are the "FOMO" and the "stage is set" posts. All of the other alleged statements were not made public until <u>after</u> the Festival.

Like *Laster*, Jung did not allege that he knew of, read, saw, or heard any of the statements directly attributed to Atkins. And like *Brazil*, there is no allegation that Atkins's statements affected, impacted, or influenced Jung before he purchased his Festival ticket. Since there are no pleaded facts demonstrating a causal relationship between Atkins's statements and Jung's actions, Jung lacks standing to sue Atkins, and this action must fail.

### 2. Plaintiff Jung does not plead actual reliance, a necessary element of the FAL, UCL, and CLRA.

Because actual reliance, which Jung fails to plead, is a necessary element under of each of the Statutes, his claims must be dismissed.

 "Actual reliance is an element of [both] California UCL and FAL claims." *Price v. L'Oreal USA, Inc.*, 2017 U.S. Dist. LEXIS 165931, at *9 (S.D.N.Y. Oct. 5, 2017). The CLRA also "imposes an actual reliance requirement". *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 586 (C.D. Cal. 2011). Therefore, "[t]o state a claim . . . based on misrepresentation, the plaintiff must allege 'actual reliance on the allegedly deceptive or misleading statements.'" *UPS Store, Inc. v. Hagan*, 99 F. Supp. 3d 426, 439 (S.D.N.Y. 2015) (quoting *Kwikset Corp.*, 51 Cal. 4th at 326).

Here, Jung's claims fail as a matter of law because he does not allege that he actually relied on Atkins's statements before making his purchase. First, Jung does not plead facts to

support the inference that he purchased his ticket in response to, or even after, seeing Atkins's statements. Second, Atkins's posts are not the type of statement on which Jung could rely.

The SAC lacks assertions that Jung bought his Festival ticket package because of, or relying on, Atkins's "FOMO" or "stage is set" posts. Because there is no allegation that Jung ever saw Atkins's statements, this necessarily precludes the requisite reliance. There is also no allegation regarding when Jung purchased his ticket package or when his injury occurred. Actual reliance cannot, therefore, be inferred.

Next, as discussed in the previous paragraph, only two statements are attributed to Atkins, and neither statement could plausibly induce reliance. Whether or not the Festival induced FOMO, and the fact that the stage was in fact set up the day before the Festival's start are not promises of the Festival's quality. These statements are thus unrelated to the injury that Jung asserts here: his approximately $2000 expenditure. SAC ¶ 103.

For these reasons, Jung fails to state a claim under the Statues and each claim must be dismissed.

### B.     The SAC fails to state a claim for a violation of Colorado's Consumer Protection Act.

To plead an action under the CCPA, a plaintiff must show that (1) the defendant engaged in an unfair or deceptive trade practice, (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation, (3) it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property, (4) the plaintiff suffered injury in fact to a legally protected interest, and (5) the challenged practice caused the plaintiff's injury. *Crowe v. Tull*, 126 P.3d 196, 201. (Colo. 2006). "A CCPA claim will only lie if the Plaintiff can show that the defendant knowingly engaged in a deceptive trade practice." *Id.* at 204. "The CCPA 'provides an absolute defense' to a misrepresentation caused by negligence or

an honest mistake." *Id.* "The crux of a CCPA claim is a deceptive trade practice, which, by definition must be intentionally inflicted on the consumer public." *Id.*

1.     **The SAC fails to allege that Atkins intentionally engaged in a deceptive trade practice.**

Atkins last visited the Festival's site at least a month before the Festival was scheduled to begin. Plaintiffs make no claim that Atkins had any cause to be concerned by what he saw, only that he shared whatever he saw (or did not see) with the other Defendants.[8] Plaintiffs make no direct claim about what Atkins saw or did not see. But his stated hopes that the Festival would "come together and be amazing" belie any alleged intent to engage in a deceptive trade practice or had reason to be concerned about the Festival's outcome. Because "the crux of a CCPA claim is a deceptive trade practice, which, by definition must be intentionally inflicted on the consumer public," this cause of action fails.

2.     **The SAC fails to allege that the claimed deceptive trade practice had a significant impact on the public.**

A further requirement is that the defendant's challenged practice "significantly impacts the public as actual or potential consumers" *Crowe* at 201. To determine the existence of a significant impact, courts must consider "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *RHINO LININGS USA, Inc. v. Rocky Mountain Rhino Lining*, Inc., 62 P.3d 142, 149 (Colo., 2003).

---

[8]SAC ¶ 90 contradictorily states that during the visit, Atkins was with the other individual Defendants: "Defendants Atkins and McFarland and, upon information and belief, Defendant Margolin, even toasted in or about March 2017…".

The number of consumers required for a public impact must be large. *Compare Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60 (Colo. App. 2004) (public impact requirement was met with approximately 950 consumer complaints) *with Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142 (Colo. 2003) (public impact requirement was not met where 3 out of 550 contracts were affected). Here, Plaintiffs' only allegation of a significant public impact is that "thousands of tickets were sold, including to many Coloradans." SAC ¶ 245. "Thousands" and "many" are facially vague. "Thousands" could mean 2,000 or 900,0000, while "many" could mean 2 or 200. As for the second element, Plaintiffs are sophisticated "successful millennials" and not parties in a weak bargaining position—they could spend their disposable income however they saw fit. SAC ¶ 15. Finally, Plaintiffs allege no previous or future potential impact on other consumers. For these reasons, the CCPA claim must be dismissed.

## C.     The SAC fails to state a claim for a violation of either the Illinois Consumer Fraud Act or the Illinois Uniform Deceptive Trade Practices Act.

### 1.     The SAC fails to state a claim under the CFA.

To plead an action under the CFA, a plaintiff must allege (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff, (5) proximately caused by the deception. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 50 (Ill. 2005). "To establish proximate causation, a plaintiff must allege actual deception of the named plaintiffs." *Barbara's Sales, Inc. v. Intel Corp.,* 879 N.E.2d 910, 914 (Ill. 2007). Finally, "plaintiffs must prove that each and every consumer who seeks redress actually saw and was deceived by the statements in question." *Id.* at 927.

a.   **Because Plaintiff Wilson does not allege that she was deceived by or even saw Atkins's statements, Atkins could not have proximately caused her damages.**

To establish proximate causation "a plaintiff must allege actual deception of the named plaintiffs." *Id*. at 914. The SAC alleges only that "Defendants intended to mislead Plaintiff Wilson," that the alleged acts "caused substantial injury," and that "as a direct and proximate result of Defendants' act and practices," Plaintiff and the Illinois Subclass members were injured. SAC ¶¶ 255-59. The SAC does not allege, however, that the undifferentiated "Defendants" actually deceived Wilson. Further, "Plaintiffs must prove that each and every consumer who seeks redress actually saw and was deceived by the statements in question." Because the SAC does not allege Wilson saw Atkins's statements or was deceived by them, this claim must be dismissed.

2.   **The SAC fails to state a claim under the UDTPA.**

Illinois courts have long held that the purpose of the Illinois UDTPA is to prohibit unfair competition, and that the Act is primarily directed toward acts that unreasonably interfere with another's conduct of his or her business. *Phillips v. Cox,* 261 Ill. App.3d 78, 81, (Il. App. 1994). "In fact, plaintiffs cannot seek damages under the Deceptive Trade Practices Act." *Chicago's Pizza v. Chicago's Pizza Franch.*, 384 Ill.App.3d 849, 853 (Ill. App., 2008). Rather, a "person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable." 815 ILCS 510/3 (West 2004). Finally, "to be eligible for injunctive relief under the Deceptive Practices Act, a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future." *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine*, Ltd., 909 N.E.2d 848, 857 (2009).

36

> **a.     The UDTPA does not apply to Plaintiff Wilson because she fails to plausibly allege that she is likely to suffer harm in the future.**

Wilson alleges that she "could not find" her luggage, but does not allege that she never recovered it. SAC ¶ 113. Also, notably, she does not claim <u>what</u> was in the luggage, or what future harm could possibly be caused by the loss. *Id.* For example, losing clothing and toiletries would not be sufficient for future harm.

Wilson generically claims that she "will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Information." SAC ¶ 269 (emphasis added). But the SAC neither supports these formulaic allegations of future harm with particularized claims nor supporting facts. These allegations are too vague to state a claim and must be dismissed.

> **D.     The SAC fails to state a claim for a violation of New York General Business Law §349.**

Under General Business Law §349 ("§349") a prima facie case requires a showing that (1) the challenged act or practice was consumer-oriented, (2) it was misleading in a material way, and (3) the plaintiff suffered injury as a result of the deceptive act. *Stutman v. Chem. Bank*, 95 NY.2d 24, 29 (2nd Dept. 2002). To be materially misleading, a "deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances'" *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 623 N.Y.S 529, 533 (N.Y. 1995). Further, §349 actions must satisfy Rule 8(a)'s *Twombly/Iqbal* pleading requirements. *Kaufman v. Sirius Xm Radio Inc.,* 751 F.Supp.2d 681, 684 (S.D.N.Y. 2010). Accordingly,

puffery or opinion cannot be materially misleading, and is not actionable. *Bader v. Siegel*, 657 N.Y.S.2d 28 (N.Y. App. Div. 1997).

In addition, the alleged deception must occur <u>in</u> the state of New York (emphasis added). *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002). Merely "hatching a scheme" or "originating a marketing campaign" in New York in and of itself does not constitute an actionable deceptive act or practice." *Id.* Applying §349 to "out-of-state transactions … would lead to an unwarranted expansive reading of the statute." *Id.* at 1196. These rules hold even when defendants "have extensive ties to New York and conduct business in the state." *Id.* at 1193.

### 1. Plaintiffs allege neither a deceptive practice by Atkins nor that each potential class member suffered injury as a result of acts by Atkins.

The SAC fails to plausibly allege that Atkins engaged in a misleading act or deceptive trade practice. As discussed in Section II.B, *supra*, the "FOMO", and "stage is set" posts (depending upon one's interpretation of the latter) are non-actionable puffery and as a matter of law cannot be materially misleading. Moreover, the SAC only makes threadbare allegations that the undifferentiated "Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the characteristics and quality of the Fyre Festival." SAC ¶ 267. Whether or not the Festival induced FOMO or the stage was in fact set up the night before the start date are not promises of the Festival's quality, and are unrelated to the injuries Festival-related costs Plaintiffs allege. Accordingly, Atkins's posts are not "likely to mislead a reasonable consumer acting reasonably under the circumstances."

Finally, §349 pleadings in a class action context require allegations that "each plaintiff was reasonably deceived by the defendant's misrepresentations or omissions and was injured by reason thereof." *Solomon v. Bell Atlantic Corp.*, 9 A.D.3d 49, 54 (2004). Thus, a "class certification is not appropriate where the plaintiffs do not point to any specific advertisement or

public pronouncement by the [defendants] which was undoubtedly seen by all class members."
*Id*. Here, Plaintiffs fail to allege any "specific advertisement or public pronouncement" by Atkins
or that "each plaintiff" was deceived by Atkins's posts. For these reasons, this cause of action
must be dismissed.

2.   **Plaintiffs have failed to allege that any deceptive acts occurred in New York.**

While the SAC generally alleges violations of §349 in New York, and that "Defendants"
had New York ties (SAC ¶¶ 29, 34, 35, 185-94), this is not enough to state a claim. As in
*Goshen*, having New York ties—or even originating a marketing campaign in New York—
without more, does not constitute an actionable deceptive act or practice. And imputing the
conduct of all possible "Defendants" to Atkins is a bridge too far. Atkins is a resident of New
Jersey (SAC ¶ 31) and his presence is New York cannot be assumed. The SAC does not allege
that he was ever in New York on Fyre's business. Because the SAC does not plausibly set forth
that the transactions as they relate to Atkins occurred in New York, applying §349 to these out-
of-state transactions "would lead to an unwarranted expansive reading of the statute" this cause
of action must be dismissed.

## CONCLUSION

For the forgoing reasons, Atkins respectfully requests that the Court dismiss all claims
against him, with prejudice.

Dated: August 28, 2018                              Respectfully Submitted,
                                                    By: s/ Ryan Smith
                                                    Ryan Smith
                                                    SMITH LAW
                                                    *Attorneys for Jeffrey Atkins*