UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE: FYRE FESTIVAL LITIGATION

                                          17-cv-3296 (PKC)

                                          OPINION AND
                                          ORDER


-----------------------------------------------------------x

CASTEL, U.S.D.J.

      The Fyre Festival was promoted as a luxury music event to take place in the Bahamas on two consecutive weekends in April 2017.  The event was cancelled on the morning of the first day, leaving some guests stranded without transportation or suitable accommodations. This Opinion and Order does not address whether Fyre Media, Inc. ("Fyre Media") breached its contractual commitments to guests or whether it perpetrated a fraud on anyone.  The issue on the pending motions is whether plaintiffs have stated claims for relief against two individuals affiliated with Fyre Media and the Fyre Festival, defendants Jeffrey Atkins, known as Ja-Rule, and Grant Margolin.

      Plaintiffs Daniel Jung, Lauren Mainero, Matthew Herlihy, Anthony Lauriello, Ritu Jutla, Hallie Wilson, and Zenovia Pittas bring this diversity action alleging theories of fraud, negligent misrepresentation, negligence, breach of contract, unjust enrichment, and related claims, as well as state statutory claims under the laws of New York, N.Y. Gen. Bus. Law § 349, California, Cal. Bus. & Prof. Code §§ 17200 et seq., 17500 et seq., Cal. Civil Code § 1750 et seq., Colorado, Col. Rev. Stat. § 6-1-102(6) et seq., and Illinois, Ill. Comp. Stat. §§ 505 et seq., 510/2 et seq.  They seek to pursue their claims on behalf of a class of similarly situated persons.

Defendants Margolin and Atkins now separately move to dismiss all claims asserted against them in the Second Consolidated Amended Complaint ("SCAC") pursuant to Rule 12(b)(6), Fed. R. Civ. P.  For reasons to be explained, the motions will be granted.

BACKGROUND

The following facts are taken from the plaintiffs' SCAC and exhibits attached to the SCAC and are construed in the light most favorable to the plaintiffs.  Sung Cho v. City of New York, 910 F.3d 639, 642 n.1 (2d Cir. 2018).

A.  The Parties

Plaintiffs are ticket buyers or attendees of the Fyre Festival who are domiciled in California, Colorado, New York, Illinois, and the United Kingdom.  (SCAC ¶¶21−28.)  They seek to represent a world-wide class of ticketholders and attendees.  (Id. ¶116.)[1]

Plaintiffs allege that Atkins was founder, owner, director and a corporate officer of Fyre Media, directed the policies of Fyre Media, and was responsible for overall business strategy.  (Id. ¶¶33, 35, 58.)  Because of his status as a social media influencer with hundreds of thousands of followers, they allege that the public viewed representations about the Fyre Festival as representations coming directly from Atkins.  (Id. ¶¶59, 61.)

They allege that Margolin was chief marketing officer for the Fyre Festival and an employee and officer of Fyre Media who organized, marketed, promoted and advertised the

---

[1] Plaintiffs originally filed separate complaints in this district and others.  (See Doc 21 at 2 (listing related class actions).)  Two plaintiffs filed a motion before the Judicial Panel on Multidistrict Litigation to have all actions consolidated and transferred to this district, which was denied.  (Id.)  Some of the actions were voluntarily transferred to this district (See Docket Sheets 18 cv 449, 18 cv 146, 17 cv 3461, 17 cv 3541 (S.D.N.Y.)) and were consolidated under a single docket number on March 13, 2018.  (Doc 35.)  Lead counsel filed amended complaints substituting certain new plaintiffs for some plaintiffs from the originally consolidated cases and represented that the original plaintiffs not included in the amended complaints had filed or would soon file voluntary stipulations of dismissal of their claims (Doc 38.)

festival.  (Id. ¶34.)  William McFarland, a non-moving defendant, was founder, owner, director, and CEO of Fyre Media, the other non-moving defendant.  (Id. ¶30.)

B.  Defendants Advertise the Fyre Festival

Defendants began promoting the Fyre Festival in December 2016 as a luxury musical festival to take place on a private island in the Bahamas and feature "top notch" food, lodging, and entertainment.  (Id. ¶¶1, 46−47.)  Defendants touted the event as featuring, among other things, musical performances by well-known bands, boating, jet-skiing, morning yoga, guided meditation, massages, "sound healing," "chill-out sessions," a Bahamanian parade, a pig roast, "[f]amous models on yachts," a stopover on a private island "to meet [] pet sharks," "incredible beaches," private sandbars, and scuba diving.  (Id. ¶¶51, 67.)  Defendants gained social media attention for the event by having influential personalities post an orange tile to their social media accounts to announce the Fyre Festival.  (Id. ¶¶49−50.)  They partnered with Kendall Jenner, an online influencer, to promote the Festival.  (Id. ¶¶48, 52.)  Her social media post announcing the event featured models walking along a white sand beach.  (Id. ¶52.)  Defendants further promoted the event with photographs of models and information describing luxury amenities in the FAQ portion of the Festival's website and in promotional videos on YouTube.  (Id. ¶¶55−57.)

Atkins promoted the event on his Instagram account.  He posted a photograph of women in bikinis with the caption "Fyre Festival looks set to be the biggest FOMO-inducing event of 2017"[2] and a line below that read: "The Debrief: Think Coachella x1000[3] and You're Still Not Even Close."  (Id. ¶62.)[4]  On or about April 10, 2017, Atkins personally guaranteed a three-million-

_____

[2] FOMO is an acronym for "fear of missing out."  SCAC ¶62.

[3] The Court takes judicial notice that Coachella is a large annual music and arts festival in the United States.  United States v. Bari, 599 F.3d 176, 179−80 (2d Cir. 2010); Fed. R. Evid. 201.

[4] The SCAC does not allege the date this statement was posted.  In his Memorandum of Law in Support of his motion to dismiss, Atkins states that he posted the statement on December 13, 2016.  (Atkins' Mem. at 5; Doc 72).

dollar loan for funding of the Festival from EHL Funding LLC.  (Id. ¶92.)  Thereafter, he encouraged consumers to load more money on cashless wristbands and "more vigorously" marketed the event.  (Id. ¶93.)  On the eve of the Festival, he posted on his Twitter account "The stage is set!!! In less than 24 hours, the first annual Fyre Festival begins.  #festivallife."  (Id. ¶64.)

C.  Defendants' Knowledge of Their Allegedly False Advertisements

Plaintiffs make the following allegations with respect to all defendants' knowledge:

- Defendants "had been aware for months that their festival was dangerously under-equipped" because they knew there was no electricity, housing, or sanitation.  (Id. ¶¶79−80.)  Instead, the promised amenities "were being replaced by tents," "porta potties," and the island "was covered in dirt." (Id. ¶81).

- Celebrity chefs had notified defendants they would not attend.  (Id. ¶82.) Specifically, defendants asked Starr Catering Group six weeks prior to the start of the festival to provide food for the festival but in early April 2017 defendants "terminated their contract with Starr." (Id. ¶83.)[5]

- "Bands had notified the Defendants" they would not be appearing. (Id. ¶84.)  Defendants "urged artists to not attend due to the dangerous and uninhabitable conditions that were present at the event venue." (Id. ¶86.)[6]

- Defendants "knowingly and falsely represented to attendees that A-list artists and models were in fact coming to perform," but "[n]one of the models who promoted the event" attended it.  (Id. ¶85.)

---

[5] Plaintiffs cite to a Bloomberg News article from May 2, 2017 (SCAC ¶83 n.28.)  The article states that Starr terminated its contract with Fyre Media.

[6] Plaintiffs cite to a Business Insider article from May 1, 2017. (SCAC ¶86 n.29.)  Circularly, the article quotes an earlier version of plaintiffs' Complaint filed in California that makes the same representation.

- Marketers "repeatedly" told defendants that the event "would not be up to the standard they had advertised."  In March 2017, the marketing team told defendants to roll attendees' tickets over to the following year.  Defendants "rejected or ignored the warning" and "the marketing team or McFarland, Atkins or Margolin stated, 'Let's just do it and be legends, man.'" (Id. ¶89.)

Plaintiffs further allege that Atkins had knowledge of the falsity of his statements because he was part of a site visit in March 2017 (along with Margolin) where "most of his time was spent on a yacht near the supposed Festival site." (Id. ¶87.)  On the boat, Atkins and Margolin toasted "To living like movie stars, partying like rock stars, and f****** like porn stars," despite alleged knowledge that the Festival "would not be up to par."  (Id. ¶90.)  Plaintiffs allege that Atkins knew at the time of his April 27, 2017 Twitter post that it was a false statement because performers had been told by defendants, including Atkins, not to attend or had cancelled their attendance.  (Id.)  They also allege that Atkins knew "months before" the Festival that there was no infrastructure for the site and that it was unsuitable and unsafe for the event because he was "directly involved in working with the Bahamanian government to obtain a site for the Fyre Festival."  (Id. ¶66.)  Finally, Atkins deleted several posts about the Festival after its cancellation (id. ¶65), posted on his Twitter account twice apologizing for the event's cancellation (id. ¶¶97−98), and made a statement stating that the promotion of Fyre Festival was "False advertising, maybe."  (Id. ¶100.)

As for Margolin's knowledge, plaintiffs allege that

it has been reported that [he] was particularly eager to keep pushing ticket sales, while knowing that the Festival could not proceed as represented and having visited the site, and that he stated at meetings that he was a marketing genius and a prodigy, that the concerns about the Festival did not matter, and that they should continue to sell tickets.

(<u>Id</u>. ¶8.)

              D.  <u>The Festival Is Cancelled</u>

          Plaintiffs' experience at the Fyre Festival was not as-advertised.  The event offered disaster-relief tents as sleeping accommodations (<u>id</u>. ¶70), unsecured lockers to store belongings (<u>id</u>. ¶71), and bread and slices of cheese with salad instead of the luxury dining experience advertised (<u>id</u>. ¶72.)  None of the promoted musical acts performed.  (<u>Id</u>. ¶107.)  According to the SCAC, when the sun set, "[a]ttendees were screaming and crying out of fear."  (<u>Id</u>. ¶105.)  The event was cancelled the morning of its first day leaving attendees stranded and scrambling to make travel arrangements back to the United States.  (<u>Id</u>. ¶¶75, 94, 113.)

              E.  <u>Plaintiffs' Alleged Damages</u>

          Plaintiffs purchased tickets for the event at prices ranging from $400 to $1,000. (<u>Id</u>. ¶¶103−14.)  The event was promoted as cashless, and plaintiffs collectively uploaded thousands of dollars to a Fyre-related site linked to their electronic wristbands, known as "FyreBands;" the intention was that the wristband would then be used for payment in lieu of cash. (<u>Id</u>. ¶¶104−10.)  They had additional costs associated with transportation to and accommodation in Miami, from where planes hired by the Festival were supposed to shuttle attendees to the Bahamas.  (<u>Id</u>. ¶¶10, 11, 103−14.)  At the event, plaintiffs were sunburned from not having access to luggage containing sunscreen.  (<u>Id</u>. ¶105.)  Some had their passports stolen.  (<u>Id</u>. ¶¶105, 111.) Some were confined to an airport waiting room in the Bahamas with no food or water.  (<u>Id</u>. ¶113.) Some allege pain and suffering from the traumatic experience and damages from monitoring for identity theft.  (<u>Id</u>. ¶¶105, 126, 134, 269.)

DISCUSSION

    I.    <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A court must disregard legal conclusions, which are not entitled to the presumption of truth and instead examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." <u>Id</u>. at 679.  The Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in the plaintiffs' favor. <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir. 2007).  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff[s'] claims are barred as a matter of law.'" <u>Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE</u>, 763 F.3d 198, 208−09 (2d Cir. 2014) (quoting <u>Conopco, Inc. v. Roll Int'l</u>, 231 F.3d 82, 86 (2d Cir. 2000)).

    II.    Plaintiffs Have Not Alleged Plausible Fraud Claims Against Atkins and Margolin

    A.  <u>The Fraud Claims Are Not Duplicative of the Breach of Contract Claims</u>

Defendants argue that plaintiffs' fraud claims should be dismissed as duplicative of the breach of contract claim.  "Where a plaintiff alleges both a breach of contract and a fraud claim arising from the same series of events, New York courts have been cautious in sustaining an independent fraud claim." <u>TVT Records v. Island Def Jam Music Grp.</u>, 244 F. Supp. 2d 263, 275 (S.D.N.Y. 2003); <u>see</u> <u>Telecom Int'l Am., Ltd. v. AT&T Corp.</u>, 280 F.3d 175, 196 (2d Cir. 2001).  But "a fraud claim may be dismissed <u>as duplicative</u> only as against a defendant against whom the related contract is viable." <u>Sun Prods. Corp. v. Bruch</u>, 507 F. App'x 46, 48 (2d Cir. 2013)

(summary order) (emphasis in original) (quoting <u>Richbell Info. Servs. v. Jupiter Partners, L.P.</u>, 765 N.Y.S.2d 575, 589 (1st Dep't 2003)); <u>see</u> <u>Wild Bunch, SA v. Vendian Entm't, LLC</u>, 256 F. Supp. 3d 497, 503 (S.D.N.Y. 2017).

The breach of contract claim is pleaded against Fyre Media (SCAC ¶¶157−62.) Because neither Margolin nor Atkins were party to the contract at issue, the fraud claims against them are not duplicative of the breach of contract claim.  Even if defendants were parties to the contract, the fraud claims would not be duplicative because they allege misrepresentations and omissions that are "other fraudulent conduct besides entering the contract with no intention to perform."  <u>Grappo v. Alitalia Linee Aeree Italiane</u>, S.p.A., 56 F.3d 427, 434 (2d Cir. 1995); <u>see</u> <u>Merrill Lynch & Co. v. Allegheny Energy, Inc.</u>, 500 F.3d 171, 183−84 (2d Cir. 2007).

## B.  Plaintiffs Do Not Plausibly Allege Fraud

Under New York law,[7] fraud requires proof of "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages."  <u>Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC</u>, 797 F.3d 160, 170 (2d Cir. 2015); <u>see</u> <u>Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.</u>, 98 F.3d 13, 19 (2d Cir. 1996); <u>Pasternack v. Lab. Corp. of Am. Holdings</u>, 27 N.Y.3d 817, 827 (2016).  Claims sounding in fraud must be plead with particularity.  Rule 9(b), Fed. R. Civ. P.  The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks omitted).  For scienter, plaintiffs must provide facts giving

---

[7] The parties agree that New York law controls and their agreement satisfies the choice of law inquiry.  <u>Fed. Ins. Co. v. Am. Home Assurance Co.</u>, 639 F.3d 557, 566 (2d Cir. 2011); <u>see</u> Atkins' Mem. at 6; Doc 72; Margolin's Mem. at 1; Doc 74 (incorporating by reference Atkins' brief); Pls.' Mem. at 18, 29, 31; Doc 75.

rise to a "strong inference of fraudulent intent," Loreley Fin., 797 F.3d at 176, which may be established by (1) "alleging facts to show that defendants had both motive and opportunity to commit fraud, or by [(2)] alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness," Lerner, 459 F.3d at 290−91 (quotation marks and citation omitted).

Plaintiffs' Complaint contains the following: statements attributed to defendants generally, and two individual statements made by Atkins on social media in December 2016 and April 27, 2017, respectively.

### 1. Statements Made by Fyre Media

Generally, "[s]weeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b)." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 579−80 (2d Cir. 2005) (quotations omitted); see PetEdge, Inc. v. Garg, 234 F. Supp. 3d 477, 493 (S.D.N.Y. 2017) (collecting cases). Group pleading, or attributing corporate statements to individual defendants, has been endorsed by the Second Circuit only for securities fraud where "defendants are insiders or affiliates participating in the offer of the securities in question." Luce v. Edelstein, 802 F.2d 49, 57 (2d Cir. 1986); see Loreley Fin., 797 F.3d at 173 (affirming group pleading for "official materials produced in connection with the sale of securities"); DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987) (similar).

Margolin argues that the group pleading doctrine does not apply beyond the securities context or beyond formal investment-based documents like offering memoranda, prospectuses, and public filings. (Reply Br. at 5; Doc 77.) But even if the Court attributes corporate statements to Atkins and Margolin, these statements fail to meet the heightened pleading standard for a fraud claim.

The SCAC alleges false representations made by all defendants regarding the Fyre Festival's accommodations, luxury offerings, band performances, amenities, cuisine, and site description.  (See, e.g., SCAC ¶¶47, 48, 51, 57, 67.)  Certain allegations reference statements made by online influencers who are not defendants, or statements made in non-public documents such as the "Pitch Deck" given to investors. (See SCAC ¶¶48, 50, 52.)  These statements cannot form the basis of a fraud claim because they are either not attributable to defendants or cannot form a basis for reliance and damages given their non-public nature.

The Complaint alleges Atkins and Margolin, through Fyre Media, represented the Festival as "the cultural experience of the decade, featuring A-list entertainers . . . first-class culinary experiences and a luxury atmosphere."  (SCAC ¶47.)  It alleges the corporation represented the Festival would offer "yoga," "massages, henna tattooing, sound healing, chill-out sessions and a festive Bahamanian junkanoo parade," (SCAC ¶51; see SCAC ¶¶57, 67), and that accommodations on the island would be "luxury eco-friendly domes and villas that will feel just like a hotel with the comforts of home" (SCAC ¶56.)

There is no assertion of when any of these statements advertising the Festival were made, either in the Complaint or in the hyperlinks cited by the Complaint that remain active.[8]  (See SCAC ¶47 (citing to a now-defunct Facebook page for attribution of certain representations), ¶51 (quoting a New York Times article that also lacks dates for statements), ¶¶55−56 (citing the website's FAQ page (Exhibit B), with no date included), ¶¶57, 67 (citing one YouTube video uploaded to YouTube after the event's cancellation (April 29, 2017), one inactive YouTube link,

---

[8] The cited webpages are partially quoted in the Complaint.  The Court will consider them as integral to the Complaint.  San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., 7 F.3d 801, 808−09 (2d Cir. 1996); see Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (reviewing when documents may be considered integral to a complaint).  Defendants have not objected to the relevance, authenticity, or general consideration of these materials in their moving papers.

and a defunct hyperlink to a Vogue article).)  The lack of an allegation of when the statements were made dooms the pleading's particularity under Rule 9(b).  Luce, 802 F.2d at 54 ("[A]llegations[] which fail to specify the time . . . lack the 'particulars' required by Rule 9(b).")

Because the SCAC does not allege when statements were made, it similarly cannot plausibly allege misrepresentation of "present fact."  Murray v. Xerox Corp., 811 F.2d 118, 124 (2d Cir. 1987).  Promissory statements regarding future conduct are non-actionable unless they are made without intent to perform.  Capital Mgmt. Select Fund Ltd. v. Bennett, 680 F.3d 214, 226 (2d Cir. 2012); see Icahn Sch. of Med. At Mount Sinai v. Health Care Serv. Corp., 234 F. Supp. 3d 580, 585 (S.D.N.Y. 2017) ("[R]epresentations concerning future events are actionable if the speaker knows the representation to be false or has no reasonable basis in fact for making the representation.").

Atkins and Margolin were participants in organizing or promoting a large-scale event.  There is no assertion that the Festival when first conceived or introduced to the public was intended not to go forward or that defendants intended not to perform by organizing the advertised amenities and accommodation.  The Complaint states that defendants were aware for "months" that there were no showers, electricity, bathrooms, medical services, or activities on the island. (SCAC ¶¶66, 79.)  This, without more, does not plausibly allege that defendants months before the event intended not to hire or contract for such services.  Many of the statements alleged in the Complaint, such as those from the Fyre Festival advertising video and the Festival's FAQ page (SCAC ¶¶56, 57, 67), arise from promotional materials likely released early-on in the lifespan of an event.  Even if the date of these statements were alleged, the plaintiffs have not plausibly alleged that the statements were made with a fraudulent intent.  The statements are promissory statements regarding future conduct that without more do not give rise to a claim in fraud.

- 11 -

2.   There Are No Statements Attributed Specifically to Margolin

The SCAC does not allege statements made specifically by Margolin.  Plaintiffs have submitted a declaration with exhibits attached to their Memorandum in Opposition of Margolin's Motion to Dismiss that alleges Margolin worked with a social media company called "F*ck Jerry" to identify negative comments on Facebook, such as those using the terms "fake," "fraud," and "scam," and hide them from the public's view.  (Doc 76 & Exs. 1−2.)  These allegations are not plead in the SCAC and there is no basis to assume that any plaintiff was injured by them.  Faulkner, 463 F.3d at 134 n.1 ("[I]t would have been error for the district court to have dismissed the amended complaint on the basis of" declarations and affidavits submitted along with an opposition to a motion to dismiss where documents were not "integral to the complaint and relied on by the plaintiff in drafting the complaint" (internal quotation marks and citation omitted)); see Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 122−23 (S.D.N.Y. 2010).

3.   Atkins' Statements Do Not Demonstrate Misrepresentation or Reliance

a.   *The December 2016 Instagram Post*

The SCAC contains two statements attributable to Atkins.  First, Atkins stated in an Instagram post that "Fyre Festival looks set to be the biggest FOMO-inducing event of 2017 . . . think Coachella x1000 and you're still not even close."  (SCAC ¶62; see Atkins' Mem. at 5; Doc 72.)  The SCAC does not assert a date for this statement, and thus fails to satisfy the particularity requirement of Rule 9(b).  Luce, 802 F.2d at 54.  Atkins in his brief dates the post to December 2016.  (Atkins' Mem. at 5; Doc 72.)  Taking this as true, plaintiffs have not alleged any facts giving rise to an inference that this statement was false at the time it was made or was made

with intent not to perform.  Capital Mgmt. Select Fund, 680 F.3d at 226; see Icahn, 234 F. Supp. 3d at 585.

Atkins also argues this statement is non-actionable puffery, or "an exaggeration or overstatement expressed in broad, vague, and commendatory language."  Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 159 (2d Cir. 2007).  The Court agrees that the subjective qualifiers of "FOMO-inducing" and "Coachella x1000" (SCAC ¶62) are too "exaggerated, blustering, and boasting" for a reasonable consumer to rely on.  Id. at 160.

b.  *The April 27, 2017 Tweet*

i.    Plaintiffs Plead a Material Misrepresentation with Knowledge of Its Falsity

On April 27, 2017, one day before the opening date of the Fyre Festival, Atkins posted on Twitter that "The stage is set!!! In less than 24 hours, the first annual Fyre Festival begins. #festivallife."  (SCAC ¶64.)  The statement, reasonably construed, was a specific representation that all was well and that the Festival, including amenities, performances, and accommodations, would start in less than twenty-four hours.  Unlike the December 2016 post, this statement is not non-actionable puffery because it notifies the ticketholders and attendees that the Festival will be going forward in a matter of hours, which is a tangible promise on which they could rely in making final preparations to arrive at the Festival.  Cf. Time Warner Cable, 497 F.3d at 160 (discussing puffery in the false advertising context).  Plaintiffs' allegations satisfy the "who, what, when, where, and how" requirements of Rule 9(b) for the first element of a fraudulent misrepresentation claim.  Bridgestone, 98 F.3d at 19.  They allege that Atkins knew at the time of the post that the representation was false because performers had been told by defendants,

including Atkins, not to attend or had cancelled by that time, and other amenities were not in place and could not be in place by the start of the Festival.  (SCAC ¶¶64, 69−73, 84.)

ii.    Plaintiffs Plead Scienter

Plaintiffs have adequately alleged scienter. They allege that Atkins was motivated in making the false statement by a need and desire to pay down the April 10, 2017 loan with EHL Funding that he had personally guaranteed.  (Id. ¶¶92, 168.)  Even if Atkins had not been obligated on a multi-million-dollar loan guarantee, his reassurance to guests encouraging them to travel to a remote island for the Festival without knowledge of the truth or falsity of his statement was reckless, giving rise to an inference of fraudulent intent.  Scienter may be inferred where a defendant has "knowledge of facts or access to information contradicting their public statements." Loreley Fin., 797 F.3d at 177 (quoting Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000)); see In re PXRE Grp., Ltd., Sec. Litig., 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009).

Atkins asserts that plaintiffs' allegations "upon information and belief" cannot establish a strong inference of fraudulent intent.  Intent, as a matter "peculiarly within the opposing party's knowledge," may be plead upon information and belief, so long as it is accompanied by a statement of facts upon which the belief is founded.  Luce, 802 F.2d at 54 n.1; see Opternative, Inc. v. JAND, Inc., 17 cv 6936 (JFK), 2019 WL 624853, at *4 (S.D.N.Y. Feb. 13, 2019).

iii.    Plaintiffs Fail to Plead Reliance

But to state an actionable claim of fraud, plaintiffs must plausibly plead reasonable reliance upon the false statement.  Atkins asserts that plaintiffs have not plead reliance because "[p]laintiffs do not allege that they saw" this post, "when they saw" it, "that seeing [it] induced

- 14 -

their reliance, or that they <u>actually</u> relied on [it].”  (Atkins' Mem. of Law at 24; Doc 72; <u>see</u> <u>id</u>. at 27.)

Rule 9(b), Fed. R. Civ. P., states that “[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.”  The Second Circuit has not determined whether Rule 9(b) applies to allegations of reliance in connection with common law fraud claims.  <u>SRM Glob. Master Fund Ltd. P'ship v. Bear Sterns Cos.</u>, 829 F.3d 173, 177 n.4 (2d Cir. 2016).  Several district courts in this district and at least one circuit, the Fourth Circuit, have held that a complaint “must allege with particularity that [plaintiffs] actually relied upon the defendant's supposed misstatements.”  <u>Ramiro Aviles v. S&P Glob., Inc.</u>, 17 cv 2987 (JPO), 2019 WL 1407473, at * 39 (S.D.N.Y. Mar. 28, 2019); <u>see</u> <u>Xia Bi v. McAuliffe</u>, ___ F.3d ___, 2019 WL 2440489, at *5−6 (4th Cir. June 12, 2019); <u>DoubleLine Capital LP v. Odebrecht Fin., Ltd.</u>, 323 F. Supp. 3d 393, 463−64 (S.D.N.Y. 2018); <u>In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.</u>, 995 F. Supp. 2d 291, 313 (S.D.N.Y. 2014), <u>aff'd</u> <u>sub</u> <u>nom</u>. <u>SRM Glob</u>. <u>Master Fund Ltd.</u>, 829 F.3d 173.

This Court need not decide whether Rule 9(b) applies to the reliance element of a common law fraud claim.  Even under Rule 8(a), Fed. R. Civ. P., the Complaint is insufficient.  Plaintiffs' statement of reliance is conclusory and generalized to all alleged misstatements and omissions.  (<u>E.g.</u>, SCAC ¶102 (“Plaintiffs and other Class members relied on Defendants' misrepresentations and omissions . . . ”; SCAC ¶144 (“Plaintiffs and the members of the Class and Subclasses acted in reliance on the false, material representations and omissions made by Defendants . . . .”))  Because there is no assertion that any plaintiff saw, read, or otherwise noticed Atkins' April 27, 2017 Tweet, there is no allegation that “there was ‘actual reliance' at all.”  <u>Am. Fin. Int'l Grp.-Asia, L.L.C. v. Bennett</u>, 05 cv 8988 (GLE), 2007 WL 1732427, at *9 (S.D.N.Y.

- 15 -

June 14, 2007) (quoting <u>Golden Budha Corp. v. Canadian Land Co. of Am., N.V.</u>, 931 F.2d 196, 202 (2d Cir. 1991)); <u>see</u> <u>Sec. Inv. Prot. Corp. v. BDO Seidman, LLP</u>, 222 F.3d 63, 72 (2d Cir. 2000) (rejecting fraud claim because plaintiffs "never received" the alleged misrepresentation).

Because plaintiffs have not alleged that they knew of Atkins' Tweet, the Court cannot infer that any of their actions, including further expenditure of funds, were made in reliance on Atkins' Tweet, as opposed to earlier statements that have been determined to be non-actionable or were made by others.  No plaintiff has alleged that they purchased tickets to either weekend of the Festival or that they placed money on their cashless wristbands within twenty-four hours of the start.  The generality of the allegations does not permit the Court to draw any such inference.

These allegations fail to provide Atkins notice of when and how an individual plaintiff relied upon the statement of April 27.  <u>DoubleLine Capital</u>, 323 F. Supp. 3d at 463−64 (collecting cases granting a motion to dismiss for failing to plead reliance).  Broad assertions of reliance on multiple misstatements covering at least a four-month period of time are insufficient.

Plaintiffs argue that "[i]n a class action alleging fraud, there may be a presumption of reliance."  (Pls.' Resp. Br. to Atkins' Mot. at 14; Doc 76.)  True, a "fraud on the market" theory is available for federal securities fraud claims under Rule 10b-5 in an efficient market.  But "courts in this Circuit have consistently held that" a rebuttable presumption of reliance "is still not available to those alleging common law fraud."  <u>Hunt v. Enzo Biochem, Inc.</u>, 530 F. Supp. 2d 580, 598 (S.D.N.Y. 2008); <u>see</u> <u>Sumitomo Copper Litig. V. Credit Lyonnais Rouse, Ltd.</u>, 262 F.3d 134, 142 (2d Cir. 2001) (noting that whether a presumption of reliance can be used in a common law securities fraud claim under New York law "appears to present an open question").

The Court dismisses the fraud claim as to the April 27 Tweet.

4.  Plaintiffs Do Not Otherwise Plead Fraud by Omission/Concealment

The SCAC alleges that Atkins and Margolin "concealed, suppressed and omitted materials facts" about the Fyre Festival related to inadequate infrastructure, lack of preparedness, and the unsafe environment which induced plaintiffs into purchasing tickets and merchandise associated with the festival.  (SCAC ¶¶142−44.)  "Concealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations of fact."  Nasaba Corp. v. Harford Realty Corp., 287 N.Y. 290, 295 (1942).  In "business negotiations" a duty to disclose arises, inter alia, "where the parties stand in a fiduciary . . . relationship," or "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge."  Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)); see Restatements (Second) of Torts § 551 (1977).

Plaintiffs allege a duty based on a fiduciary relationship.  (SCAC ¶143.)  But they have alleged no facts giving rise to any inference that Atkins or Margolin had a fiduciary relationship with any named plaintiff.  Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 441 (S.D.N.Y. 2006) (stating extraordinary circumstances are required to give rise to a fiduciary relationship in an arm's length commercial transaction); see Brass, 987 F.2d at 150−51 ("There is no reason to expand the class of informal fiduciary relationships to include" a prospective buyer and "a heretofore unknown corporate officer.").

Plaintiffs alternatively allege that Atkins and Margolin had unique and superior knowledge about the Festival not readily available to plaintiffs.  (SCAC ¶¶122, 129.)  As to knowledge, the pleadings are thin and do not allege "the context of the omissions" with particularity.  In re Platinum-Beechwood Litig., 18 cv 6658 (JSR), ___ F. Supp. 3d ___, 2019 WL

1759925, at *4 (S.D.N.Y. Apr. 22, 2019).  For example, the SCAC alleges that Atkins conducted a site visit a month before the event was scheduled to begin, but it concedes that "most of his time was spent on a yacht" and does not allege he learned of any information that would be considered a material omission if not disclosed.  (SCAC ¶87; see id. ¶90 (alleging "upon information and belief" that Margolin was also on the yacht)).  Starr Catering Group canceled its contract with "defendants" a few weeks prior to the opening date of the Festival.  (SCAC ¶83.)  There are no allegations that Margolin or Atkins knew of this cancellation, or that this fact would be material and mislead plaintiffs if not disclosed.  Marketers for the event made Atkins and Margolin aware that the event would not be up to the standard as advertised in March 2017 and advised defendants to roll tickets over to 2018.  (Id. ¶89.)  Plaintiffs do not allege what, if anything, would not be up to standard, who informed defendants of this information, or on what information this opinion was based.

    Even if the Court accepted that Margolin and Atkins had knowledge at some point that the Festival would not have the advertised amenities, plaintiffs have not plausibly alleged that either defendant had a duty to disclose.  The duty to disclose superior knowledge normally "arises in the context of business negotiations where parties are entering a contract."  Lerner, 459 F.3d at 292; see Campaign v. Esterhay, 85 N.Y.S.3d 687, 692 n.1 (Sup. Ct. N.Y. 2018) (collecting cases in New York state courts).  Margolin made no statements on which plaintiffs could have relied that needed correction.  It is not alleged that he was involved personally in any of the transactions that led to individual plaintiffs purchasing tickets or merchandise or uploading money onto "FyreBands."  He was part of no "business negotiations" that gave a false or misleading impression of the Festival to any plaintiffs, individually or collectively.  Brass, 987 F.2d at 150; see Meeker v. McLaughlin, 17 cv 5673 (SN), 2018 WL 3410014, at *8 (S.D.N.Y. July 13, 2018) (dismissing

fraudulent concealment claim where plaintiffs had not established "a business transaction" with the president of the board of a company); Garcia v. Chrysler Grp. LLC, 127 F. Supp. 3d 212, 237 (S.D.N.Y. 2015) (concealment claims dismissed where defendant had no "direct transaction" with plaintiffs).

At most, plaintiffs allege that Margolin was chief marketing officer responsible for overseeing "marketing and brand strategy." (SCAC ¶34; see SCAC ¶¶9, 91.) His personal involvement in the alleged fraud has not been pleaded with requisite particularity. See In re LIBOR-Based Fin. Instruments Antitrust Litig., 11 MDL 2262 (NRB), 2015 WL 6243526, at *58 (S.D.N.Y. Oct. 20, 2015) ("[A] wrong committed against the public does not become fraud simply because the wrongdoer keeps silent."); Ningbo Prods. Imp. & Exp. Co. v. Eliau, 11 cv 650 (PKC), 2011 WL 5142756, at *5 (S.D.N.Y. Oct. 31, 2011) (dismissing on Rule 9(b) where plaintiffs failed to demonstrate that individual defendants "actively concealed" false information); Polonetsky v. Better Homes Depot, Inc, 97 N.Y.2d 46, 55 (2001) (inferring an individual corporate officer's knowledge of or participation in fraud based in part on "the degree of his personal activities").

The pleadings are similarly insufficient with respect to Atkins. Atkins was a founder of the company who "directed the management and policies of Fyre Media" and "was responsible for overall business strategy, guiding creative and facilitating artist relations." (SCAC ¶33.) The public "viewed the Fyre Festival and Atkins as synonymous and referred to the Festival as Ja Rule's Festival." (Id. ¶61.) But he is not alleged to have participated in any negotiations with plaintiffs. He is not alleged to have known of individual ticket or merchandise sales. In December 2016 he posted on his personal Twitter account that the Festival would be "FOMO-

inducing" and one thousand times better than Coachella.  (Id. ¶62.)  These statements have been found to be no more than puffery.  Plaintiffs' allegations are insufficient under Rule 9(b).

### III.   The Negligent Misrepresentation Claims Are Dismissed

To state a claim for negligent misrepresentation, a plaintiff must allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."  Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014). Negligent misrepresentation sounding in fraud must be pled with specificity under Rule 9(b). Aetna, 404 F.3d at 583; see In re Ultrafem Inc. Securities Litig., 91 F. Supp. 2d 678, 691 (S.D.N.Y. 2000).  Plaintiffs do not dispute that their negligent misrepresentation claims incorporate by reference all allegations of fraud.  (Pl.'s Opp. Mem. to Atkins at 34; Doc 75; see SCAC ¶147.)  For the reasons discussed above, see supra Discussion Section II.B, any misrepresentations aside from the April 27 Tweet are non-actionable, not attributable to Margolin or Atkins, or not pleaded with the requisite particularity under Rule 9(b).  The April 27 Tweet does not plausibly allege reliance.

Moreover, under a negligence standard, the Complaint fails to plead a special or privity-like relationship between either defendant and plaintiffs.  "Under New York law, there is no cause of action for negligent misrepresentation absent a special relationship of trust or confidence between the parties."  DynCorp v. GTE Corp., 215 F. Supp. 2d 308, 329 (S.D.N.Y. 2002) (internal quotation marks and citation omitted); see Crawford, 758 F.3d at 490 ("[A]n arm's length [commercial] relationship . . . does not support a cause of action for negligent misrepresentation." (internal quotation marks and citation omitted)).  To plead a special relationship, plaintiffs must show that they were a "known party," Sykes v. RFD Third Ave. 1 Assoc., LLC, 15 N.Y.3d 370, 373 (2010); being "one of a class of potential" recipients of a

statement will not suffice, <u>Westpac Banking Corp. v. Deschamps</u>, 66 N.Y.2d 16, 19 (1985); <u>see</u> <u>BDO Seidman</u>, 222 F.3d at 74−75 (requiring known party to be "part of an identifiable, particularized group rather than a faceless or unresolved class of persons" (internal quotation marks omitted)).   Contrary to plaintiffs' response, (Pls.' Opp. Br. at 34; Doc 75), superior knowledge about a party's own business "is insufficient to sustain a negligent misrepresentation claim," <u>U.S. Bank Nat'l Assoc. v. BFPRU I, LLC</u>, 230 F. Supp. 3d 253, 270 (S.D.N.Y. 2017); <u>see</u> <u>Paraco Gas Corp. v. Travelers Cas. and Sur. Co.</u>, 51 F. Supp. 3d 379, 398−99 (S.D.N.Y. 2014).

The Complaint does not allege that Atkins or Margolin knew or had any dealings or interactions with any plaintiffs to bring them into the realm of known parties.   It thus does not "provide[] the necessary link between them."   <u>Westpac Banking Corp.</u>, 66 N.Y. 2d at 19; <u>see</u> <u>Anschutz Corp. v. Merrill Lynch & Co</u>, 690 F.3d 98, 115 (2d Cir. 2012) (affirming dismissal of negligent misrepresentation claim where "there are no allegations of any direct contact" between plaintiffs and defendants); <u>Tyman v. Pfizer, Inc.</u>, 16 cv 6941 (LTD)(BCM), 2017 WL 6988936, at *14−15, <u>report and recommendation adopted</u>, 2018 WL 481890 (S.D.N.Y. Jan. 18, 2018). Plaintiffs' negligent misrepresentation claims will be dismissed.

IV.   <u>The Negligence and Gross Negligence Claims Are Dismissed</u>

Plaintiffs have alleged separate claims for negligence and gross negligence. Negligence under New York law requires a showing that "(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach."   <u>Curley v. AMR Corp.</u>, 153 F.3d 5, 13 (2d Cir. 1998).   Gross negligence is conduct that "evinces a reckless disregard for the rights of others

or smacks of intentional wrongdoing." <u>Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC</u>, 692 F.3d 42, 61 (2d Cir. 2012) (internal quotation marks and citation omitted).

"The existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the court." <u>In re MF Glob. Holdings Ltd. Inv. Litig.</u>, 998 F. Supp. 2d 157, 185 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).  In the SCAC, plaintiffs allege that defendants owed them a duty of care to provide true, reliable and safe accommodations of food, water, shelter, security and medical supervision at the festival, or, stated otherwise, to not place them in a dangerous situation on an island without adequate food, housing, or means of departure.  (SCAC ¶122.)

Under New York law, "[t]o bring a tort action along side a contract claim, the alleged breach of duty must be distinct from, or in addition to, the breach of contract." <u>Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Publ'g Co</u>., 580 F. Supp. 2d 285, 293 (S.D.N.Y. 2008).  The alleged duty to provide services and safety is based on the contractual requirements of the ticketing agreement.  <u>See</u> SCAC ¶122 (discussing duties to "paying customers and attendees of the Fyre Festival").

Plaintiffs allege Margolin and Atkins had duties separate from the contract because (1) plaintiffs were the foreseeable and probable victims of the unsafe environment created by defendants or (2) defendants had "unique and superior knowledge" about the environment at the festival.  (SCAC ¶122.)  Foreseeability "merely determines the scope of the duty once the duty is determined to exist." <u>Maheshwari v. City of New York</u>, 2 N.Y.3d 288, 294 (2004); <u>see</u> <u>Gonzalez v. Caballero</u>, 572 F. Supp. 2d 463, 469 n.4 (S.D.N.Y. 2008).  Unique and superior knowledge,

while possibly triggering a duty to disclose in a fraudulent concealment claim, see, e.g., Aetna, 404 F.3d at 583−84, does not create an affirmative duty to provide services.

In their opposition papers, plaintiffs argue that Atkins and Margolin owed a duty to plaintiffs because they "create[d] the impression that [they] act[ed] with authority."  (Doc 75 at 34; Doc 76 at 21.)  Plaintiffs cite to Breitkopf v. Gentile, 41 F. Supp. 3d 220 (E.D.N.Y. 2014) for this theory.  Breitkopf is inapposite.  There, a bystander to an altercation interfered with a police arrest that led to the suspect's death.  The Court concluded that the bystander owed the decedent a duty of care because the bystander "consciously chose to remain involved at the scene" such that "he undertook a duty to avoid taking action that unreasonably could endanger the safety of those at scene."  Breitkopf, 41 F. Supp. 3d at 272.  The theory that one who acts with the authority of a police officer owes a duty of care was not adopted by that court.  Id. at 271−72.  Even if it had, a duty of care imposed on someone impersonating a police officer is not applicable here.

Fundamentally, the negligence alleged here with respect to Atkins and Margolin is premised upon the same underlying conduct that forms the basis for the negligent misrepresentation claim.  Thus, the negligence claims "may be collapsed into plaintiffs' negligence-based misrepresentation" claim, which has been dismissed for the reasons stated above. Hughes v. BCI Int'l Holdings, Inc., 452 F. Supp. 2d 290, 303 n.16 (S.D.N.Y. 2006).

V.       Plaintiffs Do Not State a Claim for Tortious Interference with a Contract

Under New York law, tortious interference with a contract requires "(i) the existence of a contract; (ii) defendants' knowledge of that contract; (iii) defendants' intentional inducement of a breach of that contract; (iv) a breach; (v) but for the defendants' actions, that contract would not have been breached; and (vi) damages."  Conte v. Emmons, 895 F.3d 168, 172 (2d Cir. 2018).  Where the third party has an "economic interest" in the contract, such as a corporate

officer, plaintiff must make a higher showing and demonstrate that the third party's interference "was either malicious or involved conduct rising to the level of criminality or fraud." Vinas v. Chubb Corp., 499 F. Supp. 2d 427, 431 (S.D.N.Y. 2007) (internal quotation marks and citation omitted); see Foster v. Churchill, 87 N.Y.2d 744, 750−51 (1996).

Plaintiffs allege that Atkins and Margolin were aware of plaintiffs' contracts with Fyre Media and that Atkins and Margolin "induced Fyre Media to breach its contracts . . . by acting for their own interests." (SCAC ¶168.) Plaintiffs allege that Atkins needed to ensure that the $3 million loan would be repaid and his loan guarantee would not be called and that he, therefore, enticed customers to contract with Fyre Media knowing that the customers would not receive that for which they had contracted. (Id.)

The SCAC offers only conclusory assertions about causation. Knowledge that Fyre Media could not perform is not the equivalent of inducing or causing it not to perform. For acts "to result in liability for interference with contractual relations, there must be a cause and effect relationship between such acts and [Fyre Media's] failure to perform its duties" under the contracts. G.D. Searle & Co. v. Mediocre Commc'ns, Inc., 843 F. Supp. 895, 911 (S.D.N.Y. 1994); see RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 410 (S.D.N.Y. 2009), aff'd, 387 F. App'x 72 (2010) (dismissing tortious interference claim where complaint contained only conclusory allegations of but for causation). The SCAC states "[a]s a direct and proximate result of Defendants' McFarland, Atkins and Margolin's inducement of breach of contract, Plaintiffs . . . were damaged . . . ." (SCAC ¶169.) These conclusory allegations on causation,

which do not speak to Atkins or Margolin's but for causation of Fyre Media's breach, are insufficient to state a cause of action for tortious interference.  RSM Prod., 643 F. Supp. 2d at 410.

VI. The Unjust Enrichment Claims Are Duplicative

To state a claim for unjust enrichment under New York law, a plaintiff must allege facts establishing "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of N.J., Inc., 448 F.3d 573, 579 (2d Cir. 2006) (internal quotation marks and citation omitted).  Plaintiffs allege that they paid for tickets and merchandise for the Fyre Festival, that some of these funds went directly to Atkins and Margolin in the form of compensation, remuneration, and, for Atkins, reduced liability in the outstanding loan from EHL Funding, and that equity requires restitution.  (SCAC ¶¶180–82.)

While these allegations may be sufficient to plead a claim for unjust enrichment, the existence of an express contract and plaintiffs' assertion of tort claims arising from the same conduct bar the unjust enrichment claim.  Under New York law, an unjust enrichment claim "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff[,]" as in cases "in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled."  Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012).  In others words, "unjust enrichment is not a catchall cause of action to be used when others fail."  Id.

"Although New York law on this issue is not entirely settled,  . . . decisions both in New York state courts and in this district have consistently held that claims for unjust enrichment may be precluded by the existence of a contract governing the subject matter of the dispute even

if one of the parties to the lawsuit is not a party to the contract." Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 202 (S.D.N.Y. 2011) (internal quotation marks and citations omitted) (collecting cases); see, e.g., Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005); In re Platinum-Beechwood, 2019 WL 1759925, at *9; Law Debenture v. Maverick Tube Corp., 06 cv 14320 (RJS), 2008 WL 4615896, at *12−13 (S.D.N.Y. Oct. 15, 2008).

Plaintiffs cannot state a claim for unjust enrichment based on the payment of contractually-owed ticket fees because "there is an express contract that clearly controls" for those fees. Ortho-Clinical Diagnostics Bermuda Co. v. FCM, LLC, 15 cv 5607 (NRB), 2017 WL 2984023, at *6 (S.D.N.Y. July 6, 2017). For unjust enrichment based on payments for merchandise or other expenditures, plaintiffs have offered no distinction for how the unjust enrichment claim differs from their tort claims. (Compare SCAC ¶154 (claiming for negligent misrepresentation that "[p]laintiffs . . . acted in reliance on the false, material representations made by Defendants, by buying tickets and merchandise . . . ."), with id. ¶¶180−81 (claiming for unjust enrichment that Atkins and Margolin received proceeds from "ticket and merchandise sales").) "To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects." Corsello, 18 N.Y.3d at 791; see Ramiro Aviles, 2019 WL 1407473, at *51 (dismissing unjust enrichment claims as duplicative of tort and breach of contract claims). Atkins and Margolin's motions to dismiss claims for unjust enrichment are granted.

VII.    State Statutory Claims

A.  Plaintiffs Lack Standing Under the New York General Business Law

Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the state of New York.  N.Y. Gen. Bus. Law § 349(a).  Section 349 provides a private right of action to "any person who has been injured by reason of any violation of [section 394]."  Id. § 349(h).  The purpose of the statute is "to secure an honest market place where trust, and not deception, prevails."  Goshen v. Mut. Life Ins. Co., 774 N.E.2d 1190, 1195 (N.Y. 2002) (internal quotation marks and citations omitted).  To bring a claim under section 349, "a plaintiff must show: (1) that the defendant's conduct is consumer-oriented; (2) that the defendant is engaged in a deceptive act or practice; and (3) that the plaintiff was injured by this practice."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 64 (2d Cir. 2010) (quotation marks and citation omitted).  Claims under section 349 are not subject to the particularity requirements of Rule 9(b).  Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005); see Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 348 (1999) ("A practice may carry the capacity to mislead or deceive a reasonable person but not be fraudulent.  That distinction separates plaintiffs' fraud claims from their section 349 claims.").

As the New York Court of Appeals held in Goshen, 774 N.E.2d 1190, there is "a territorial test . . . embedded in GBL [section] 349: to state a claim under the statute, the deception of a consumer must occur in New York."  Ward v. TheLadders.com, Inc., 3 F. Supp. 3d 151, 167 (S.D.N.Y. 2014) (internal quotation marks and citation omitted); see id. (discussing Goshen and its progeny).  The Second Circuit recognized a split of authority following Goshen as to whether

the test asked where the plaintiff was deceived, or where the transaction following the deceptive act occurred.  Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 122 (2d Cir. 2013).

The SCAC states that "the deceptive practices . . . occurred in and emanated from New York, where Fyre Media and Fyre Festival were headquartered, and where the individual defendants resided, conducted business and/or had extensive ties."  (SCAC ¶185.)  For out-of-state residents, this assertion of ties to New York is insufficient.  Goshen, 774 N.E.2d at 1193, 1196 (rejecting section 349 claim by non-New York plaintiffs based on allegations that deception was "contrived and implemented" in New York by defendants that "have extensive ties to New York and conduct business in the state"); see Kaufman v. Sirius XM Radio, Inc., 751 F. Supp. 2d 681, 687−88 (S.D.N.Y. 2010), aff'd, 474 F. App'x 5 (2d Cir. 2012) (similar).

For New York plaintiffs, the allegations are also insufficient to state a claim under either of the "two divergent lines of decision [that] have developed since Goshen."  Cruz, 720 F.3d at 123.  Evaluating the SCAC under the place of deception test, it contains no allegations that any plaintiff saw statements by Atkins or Margolin while in New York.  Cf. Pls.' Resp. Mem. at 47; Doc 75 (arguing that Atkins' fraudulent statements "were foreseeably available to, and accessed by New York residents" (emphasis added)).  Under the transaction-based test, the SCAC contains no allegations where plaintiffs purchased tickets or merchandise, where Fyre Media's bank accounts are to collect proceeds from ticket and merchandise sales, whether any contracts with Fyre Media contain provisions implicating New York law, or where customer communications with the company were sent.  (See SCAC ¶¶103−14 (discussing plaintiffs' purchases), 157−62 (discussing ticketing contracts).)  The SCAC does not sufficiently allege ties to New York to support a claim under section 349.  See Cruz, 720 F.3d at 123 (discussing requirements of the transaction-based test).

B.  The California, Colorado, and Illinois State Statutory Claims

Plaintiffs also bring claims under the following state statutes:  California, Cal. Bus. & Prof. Code §§ 17200 et seq., 17500 et seq., Cal. Civil Code § 1750 et seq., Colorado, Col. Rev. Stat. § 6-1-102(6) et seq., and Illinois, Ill. Comp. Stat. §§ 505 et seq., 510/2 et seq.  The claims are based on the same acts as those alleged to show fraudulent misrepresentation.  (SCAC ¶¶195, 204, 215, 231, 247, 261.)  Unlike for New York's General Business Law, to plead claims under these statutes, plaintiffs must meet the heightened requirements of Rule 9(b), Fed. R. Civ. P.  See Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 964 (9th Cir. 2018) (evaluating claims brought under California's False Advertising Law, Unfair Competition Law, and Consumer Legal Remedies Act); Pirelli Armstrong Tire Corp. Retire Med. Benefits Trust v. Walgreen Co., 631 F.3d 436, 441 (7th Cir. 2011) (evaluating claims brought under the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill. Comp. Stat. §§ 510/2 et seq.); HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc., 805 F. Supp. 2d 1115, 1120−21 (D. Colo. 2011) (evaluating claims brought under the Colorado Consumer Protection Act).  The Court has determined plaintiffs have not plausibly alleged the bulk of their fraud claims with particularity against Atkins and Margolin or have otherwise failed to plausibly allege their claims.  See supra Discussion Section II.B.

LIMITED LEAVE TO REPLEAD IS GRANTED

Plaintiffs Herlihy and Lauriello filed their initial Complaint in this case on May 3, 2017 (Doc 1.)  Pursuant to this Court's order consolidating related cases, plaintiffs were directed to file a Consolidated Amended Complaint, which they did on May 31, 2018 (Doc 47.)  With the Court's permission, plaintiffs filed a Second Amended Complaint on June 25, 2018, after the action was pending for over a year (Doc 56.)

This Court then issued a Scheduling Order limiting the time for plaintiffs to further amend the Complaint as of right or move to amend to the later of the date to amend as of right under Rule 15, Fed. R. Civ. P., or 21 days "from the filing of the motions to dismiss."  (Doc 59.)  The Court extended the deadline for plaintiffs to respond to any defendant's motion to dismiss in a separate memo endorsement following Margolin's pre-motion letter (Doc 67.)  Atkins filed his motion to dismiss on September 7, 2018, and Margolin filed his motion to dismiss on September 11, 2018 (Docs 71, 73.)  Plaintiffs' time to move to amend expired on October 2, 2018.

Rule 16(b)(3)(A), Fed. R. Civ. P., provides that "[t]he scheduling order must limit the time to join other parties, [and] amend the pleadings . . . ."  Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent."  See Parker v. Columbia Picture Indus., 204 F.3d 326, 340 (2d Cir. 2000) (courts may deny leave to amend "after the deadline set in the scheduling order where the moving party has failed to establish good cause").  Diligence of the moving party and possible prejudice to the non-moving party are important considerations in determining whether a party has demonstrated good cause.  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).

Plaintiffs did not move to amend within the time allowed by the Scheduling Order.  Instead, they asked the Court in a single sentence in the Conclusion section of each of their Opposition Briefs for the Court to grant plaintiffs leave to amend should the Court grant either of defendants' motions to dismiss.  (Doc 75 at 48; Doc 76 at 36.)

Limiting the time to file further motions to amend in the Scheduling Order is not a meaningless technicality.  One of its main purposes is to avoid the Court needlessly working on a lengthy motion to dismiss.  Plaintiffs' placeholder statements asking for leave to amend should the Court grant either motion to dismiss undermines the very purpose of the Scheduling Order.

Having in hand both the pre-motion letters and the actual motions to dismiss, plaintiffs failed to address how they would amend their pleadings.

Plaintiffs have not demonstrated good cause for further leave to amend. For the request to add allegations related to Atkins, plaintiffs made a minimal and conclusory request that gave no indication how they would amend the complaint to address any deficiencies. (Doc 75 at 48 ("In the alternative, the Court should grant Plaintiffs leave to amend the Complaint.").) This is insufficient to demonstrate good cause.

In Plaintiffs' Opposition Brief to Margolin's Motion to Dismiss, plaintiffs have also requested leave to amend to add the social media firm "F*ck Jerry" as a defendant and add allegations that Margolin filtered out negative comments on social media. (Pls.' Opp. Br. to Margolin's Mot. at 36; Doc 76.) Plaintiffs have made no showing as to how a third-party social media company could be held liable for fraudulent acts based on removing comments made by members of the public on social media and, for the reasons explained in this opinion, they have not demonstrated a plausible claim as to Margolin. They provide no explanation of how their proposed additional allegations would correct the deficiencies in the SCAC including failure to allege misrepresentations attributable to Margolin. They have appended screen shots of conversations between Margolin and "F*ck Jerry" in their Opposition Brief that are from February 2017 (Doc 76-2 Exs. C, D.) They offer no explanation for why these screen shots were not available when they filed any of their previous Complaints or from where the screen shots came. Margolin is proceeding pro se and would be prejudiced by further delay in this action and additional briefing. This is particularly true considering that the new allegations do not appear to add anything that would correct the deficiencies leading to dismissal of claims against Margolin

in the present version of the Complaint.  Plaintiffs' request to amend to add "F*ck Jerry" and allegations regarding Margolin filtering comments is denied.

However, the claims regarding Atkins' April 27 Tweet stand on a different footing. The only lacking elements are a plausible allegation that a particular plaintiff knew of the Tweet and took some concrete action in reliance thereon.  Plaintiffs may amend their fraud claim and remaining state law claims against Atkins as to the April 27 Tweet.  The remaining claims are dismissed with prejudice.

CONCLUSION

Defendant Atkins and Margolin's motions to dismiss are GRANTED.  Within 21 days of this Order, plaintiffs may move to amend to set forth in a proposed pleading allegations of reasonable reliance and causation as to each plaintiff.  The Clerk is directed to terminate the motions (Docs 71, 73).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       July 10, 2019