**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re FYRE FESTIVAL LITIGATION                    1:17-CV-03296 (PKC)

---

# MOTION FOR RECONSIDERATION

**GERAGOS & GERAGOS, APC**
TINA GLANDIAN (TG-3014)

256 5th Avenue
New York, NY 10001
Telephone: (213) 625-3900
Facsimile: (213) 232-3255
tina@geragos.com

*Lead counsel for Plaintiffs*

# TABLE OF CONTENTS

I.      INTRODUCTION.............................................................................................................1

II.     PROCEDURAL HISTORY..............................................................................................1

III.    FACTUAL BACKGROUND............................................................................................2

        A.      Margolin's Pro Se Status................................................................................2

        B.      The Deception of New York Plaintiffs Occurred in New York.......................3

        C.      Fyre Fraud Documentary Showed that Margolin Knew that Fyre Festival
                was a Fraud, and that he Purposely and Actively Deleted Information
                From Public View.............................................................................................4

        D.      Plaintiffs Relied Upon The Fyre Festival Website for
                Up-To-Date Information....................................................................................5

IV.     STANDARD FOR RECONSIDERATION....................................................................7

V.      ARGUMENT....................................................................................................................8

        A.      The Newly Discovered Evidence Shows that Plaintiffs Were
                Deceived While in New York............................................................................8

        B.      The Newly Discovered Evidence Shows that Margolin Knew the
                Festival Was a Fraud from the Beginning, and Still Made Fraudulent
                Statements.........................................................................................................9

        C.      The Newly Discovered Evidence in Light of Plaintiffs' Past Pleadings
                Shows that Margolin Has Fraudulently Represented Himself as
                "Pro Se" to this Court.....................................................................................14

        D.      The Court Should Allow Plaintiffs to Amend Their Pleading with This
                New Information to Prevent Manifest Injustice..............................................15

V.      CONCLUSION…………….............................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Analytical Surveys, Inc. v. Tonga Partners, L.P.,*
 684 F.3d 36 (2d Cir. 2012)..........................................................................................7

*Block v. First Blood Assocs.,*
 988 F.2d 344 (2d Cir. 1993).........................................................................................7

*Catskill Dev., L.L.C. v. Park Place Entm't Corp.,*
 154 F.Supp.2d 696 (S.D.N.Y.2001)............................................................................7

*Cruz v. FXDirectDealer, LLC,*
 720 F.3d 115 (2d Cir. 2013).........................................................................................9

*Ellis v. Maine,*
 448 F.2d 1325, 1328 (1st Cir.1971)...........................................................................14

*Haddock v. Nationwide Fin. Servs. Inc.,*
 514 F. Supp. 2d 267 (D. Conn. 2007)........................................................................16

*In re Beacon Associates Litig.,*
 818 F. Supp. 2d 697 (S.D.N.Y. 2011)..........................................................................7

*Johnson v. Board of County Com'rs for County of Fremont,*
 868 F.Supp. 1226 (D. Col. 1994)...............................................................................14

*Klein v. H.N. Whitney, Goadby & Co.,*
 341 F.Supp. 699, 702–03 (S.D.N.Y.1971).................................................................15

*Lucente v. Int'l Bus. Machs. Corp.,*
 310 F.3d 243, 258 (2d Cir. 2002)...............................................................................16

*Pelman ex rel. Pelman v. McDonald's Corp.,*
 396 F.3d 508 (2d Cir. 2005).........................................................................................9

*Ruotolo v. City of New York,*
 514 F.3d 184 (2d Cir. 2008).......................................................................................16

*Shrader v. CSX Transp., Inc.,*
 70 F.3d 255 (2d Cir.1995).............................................................................................8

*Sumitomo Elec. Research Triangle, Inc. v. Corning Glass Works,*
 109 F.R.D. 627 (S.D.N.Y. 1986)................................................................................16

*Wilson v. Nw. Mut. Ins. Co.,*
    625 F.3d 54 (2d Cir. 2010)................................................................................................9

*Ward v. TheLadders.com, Inc.,*
    3 F. Supp. 3d 151 (S.D.N.Y. 2014)..................................................................................9

RULES

Fed. R. Civ. P. 59........................................................................................................................1

Fed. R. Civ. P. 60........................................................................................................................1

## I.   <u>INTRODUCTION</u>

New facts have recently come to light showing the following: fraudulent statements attributable to Defendant Grant Margolin ("Margolin"), which were relied upon by Plaintiffs; Margolin was never a pro se litigant, but rather was represented by counsel all along; and that Plaintiffs were in New York when they were deceived by these fraudulent statements and bought their tickets in reliance.

Plaintiffs, by and through their counsel, respectfully submit this motion for reconsideration of the Court's Order and Memorandum Opinion of July 10, 2019, which granted Defendants' motions to dismiss. Plaintiffs specifically ask this Court to reconsider its decision to grant Margolin's motion to dismiss and to deny Plaintiffs leave to amend their complaint with new allegations against Margolin. Plaintiffs bring this motion pursuant to Fed. R. Civ. P. 59(e); and 60(b)(2), (b)(3), and (b)(6) on the basis of newly-discovered evidence that was not previously available to Plaintiffs, which dramatically alters the contours of this case, and on the basis of false representations by Margolin, who claimed to be pro se when in fact a law firm that never made an appearance has been representing him. These new facts were not previously available, and this Court's decision to grant Margolin's motion to dismiss should be reconsidered to prevent a manifest injustice, and permit Plaintiffs to file an amended pleading that includes new allegations against him.

## I.   <u>PROCEDURAL HISTORY</u>

This action was consolidated in this Court on March 13, 2018. (Doc. 35.)  Plaintiffs filed the Consolidated  Amended Class Action Complaint on May 29, 2018 (Doc. 44), and filed the Second Consolidated Amended Class Action Complaint on June 25, 2018. (Doc. 56.)  On September 7, 2018, Defendant Atkins filed his Motion to Dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint (Doc. 72), and on September 11, 2018, Defendant Margolin

filed his Motion to Dismiss the Second Amended Complaint. (Doc. 73.) On July 10, 2019, this Court issued its Opinion and Order on Defendants' motions. (Doc. 90). In its order, this Court granted Defendants' motions, but granted Plaintiffs leave to move to "amend their fraud claim and remaining state law clams against Atkins" with "allegations of reasonable reliance and causation as to each plaintiff." The Court's Order specified that Plaintiffs' Motion to Amend should address only "Atkins' April 27 Tweet," and how "a particular plaintiff knew of the Tweet and took some concrete action in reliance thereon." (Doc. 90 at 32.) However, the Court held that as to Defendant Grant Margolin ("Margolin"), Plaintiffs has not pled statements that were attributed specifically to Margolin, and that there was "no basis to assume that any plaintiff was injured by" Margolin's efforts to "identify negative comments on Facebook, such as those using the terms 'fake,' 'fraud,' and 'scam,' and hide them from the public's view."

The July 10 Order further stated that this Court denied Plaintiffs further leave to amend partially because "Margolin is **proceeding pro se** and would be prejudiced by further delay in this action and additional briefing. This is particularly true considering that the new allegations do not appear to add anything that would correct the deficiencies leading to dismissal of claims against Margolin . ." (Doc. 90 at 31) (emphasis added.)

In its Order, the Court further held that, as to Section 349 of the New York General Business Law, and as to "the New York plaintiffs" in this matter, they had not alleged that "any plaintiff saw statements by Atkins or Margolin while in New York….[and] no allegations where plaintiffs purchased tickets or merchandise." The Court also reasoned that claims under section 349 "are not subject to the particularity requirements of Rule 9(b)." (Doc. 90 at 27–28.)

///

///

## II.   **FACTUAL BACKGROUND**

New facts show fraudulent statements specifically attributable to Margolin, which

Plaintiffs specifically relied upon to their detriment. In addition, Margolin was indeed

represented by counsel all along, contrary to his own statements to this Court.

### A.  **Margolin's "Pro Se" Status**

Since Plaintiffs filed their Second Amended Complaint, completed briefing on Defendants'

motions to dismiss, and motion for leave to amend, additional facts have come to light. On

Thursday, August 1, 2019, Jacqueline Veit, counsel for Margolin, reached out to counsel for

Plaintiffs to "express[] [her] belief that the proposed amended complaint efiled with Plaintiff's

motion to amend yesterday fails to comply with the Court's Order dismissing the case as to Grant

Margolin. The proposed amended complaint continues to identify him as a defendant, and includes

many allegations against him." Ms. Veit stated that she "requested that plaintiff correct the

proposed pleading and substitute it in the efile in place and instead of the existing document." The

next day, Ms. Veit further emailed "Are you revising the proposed third amended complaint per

my email below, or does my client have to approach the Court to get you to comply with its Order,

and seek whatever other relief may be appropriate in this situation?" (*See* Declaration of Ben

Meiselas, filed concurrently herewith, ¶ 3, Ex. 1. ("Meiselas Decl.")) Further, Ms. Veit had been

aggressively involved on behalf of "her client" since the earlier stages of this case (*See* Meiselas

Decl ¶ 3, Ex. 1), and these recent communications reveal that she never stopped acting as

Margolin's counsel.

Ms. Veit's communications and thinly veiled threats to move for sanctions show that any

representations by Margolin that he was proceeding "pro se" were without merit all along. Mr.

Margolin has perpetrated a fraud on this Court, just as he did upon thousands of Fyre Festival

attendees, especially because Margolin's "pro se" status appears to have been a deciding factor in

this Court's decision to dismiss him as a Defendant. Meanwhile, his attorney, who never made an appearance in this case, threatened and badgered counsel for Plaintiffs, claiming that she was "shocked" at Plaintiffs' motion to amend complaint.[1] Margolin's and Veit's sanctionable conduct should not be rewarded, and this Court should reconsider its decision to dismiss Margolin.

**B.  The Deception of New York Plaintiffs Occurred in New York**

New evidence shows that the New York Plaintiffs were deceived while in New York, and therefore plead  sufficient facts under Section 349.

As this Court held in its July 10 Order, Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the state of New York. N.Y. Gen. Bus. Law § 349(a). The Court held that the New York Plaintiffs must either allege "that any plaintiff saw statements by Atkins or Margolin while in New York," or that Plaintiffs "purchased tickets or merchandise" while in New York. (Doc. 90 at 28.) The Court further clarified that "[c]laims under section 349 are not subject to the particularity requirements of Rule 9(b)." (Doc. 90 at 27.)

Here, newly discovered evidence shows that the New York Plaintiffs were in New York, either when they saw deceptive statements from Atkins and Margolin regarding the festival, and/or when they purchased their tickets for the festival. (*See* Meiselas Decl ¶ 5, Ex. 2). This new information shows that the New York Plaintiffs pass the "territorial test" from *Goshen*, where the "deception of a consumer must occur in New York." *Ward v. TheLadders.com, Inc.,* 3 F. Supp. 3d 151, 167 (S.D.N.Y. 2014). Likewise, the new information shows that Plaintiffs' "transaction [s] following the deceptive act occurred" in New York. *Cruz v. FXDirectDealer, LLC,* 720 F.3d 115, 122 (2d Cir. 2013).

---

[1] Plaintiffs' counsel did inform Ms. Veit that it intended to file this motion. However, based on these previous dealings, Plaintiffs' counsel is not comfortable making further efforts to meet and confer with Ms. Veit. (*See* Meiselas Decl. ¶¶3–4, Ex. 1.)

4

This new information, in light of the facts already alleged by Plaintiffs, sufficiently states a claim under the New York General Business Law against all Defendants, and the Court should allow Plaintiffs to amend.

**C.  *Fyre Fraud* Documentary Showed that Margolin Knew that Fyre Festival was a Fraud, and that he Purposely and Actively Deleted Information From Public View**

New evidence shows that Grant Margolin knew or reasonably should have known that Fyre Festival was a fraud and impossible to create, that he controlled and crafted the fraudulent Fyre marketing messages, and that he eventually deleted information from public view to deceive Fyre attendees.

In the Hulu documentary *Fyre Fraud* Billy McFarland and his staff, including Margolin, were told repeatedly that hosting a quality music festival was impossible in such short amount of time. FYRE FRAUD at 25:58; 27:38; 35:25; 51:35 remaining (Hulu 2019). In a separate lawsuit in which plaintiffs who attended Fyre festival were awarded a $5 million judgement against McFarland, Margolin was stated to be the chief Marketing officer of Fyre. *Robert Crossno et al. v. William McFarland, et al.,* 17CV005724 (N.C. 2017).  Margolin also introduced himself as the Chief Marketing office in the Netflix Documentary. FYRE: THE GREATEST PARTY THAT NEVER HAPPENED (Distributed by Netflix 2019).

In *Fyre Fraud*, as the Chief Marketing Officer, Margolin was revealed to be the "point-guy" for the promotional video which was shot after everyone knew that the festival would be impossible. FYRE FRAUD at 37:24. Margolin drafted a "1,000 word" email that detailed the directions and themes of the promotional video, which promoted the Festival as a luxury event featuring models and yachts. *Id.* at 37:40. According to the Netflix Documentary, Margolin was also directing the F*ck Jerry marketing team to delete any and all negative comments about Fyre on the Festival's social media platforms. FYRE: THE GREATEST PARTY THAT NEVER HAPPENED

at 53:08 remaining. Knowing the festival was fraudulent and impossible to put together,

Margolin was deliberately attempting to defraud attendees up until the day of the festival.

    **D.  Plaintiffs Relied Upon The Fyre Festival Website for Up-To-Date Information**

    New facts show that Plaintiffs saw and relied upon fraudulent statements that are

specifically attributable to Margolin in their decision to purchase tickets to the Festival, to load

money onto the prepaid "Fyrebands," and to attend the Festival.

    The *Fyre Fraud* documentary showed that Margolin specifically instructed the Festival's

marketing team at F*ck Jerry to continue marketing the Festival, via the website and social

media, as a luxury experience that would begin on April 28, 2017. Specifically, screenshots show

that, on February 1, 2017, Margolin gave F*ck Jerry various messages to post on social media

including "Bahamian Land. A beachfront villa. All prizes to be won at the Fyre Festival Treasure

Hunt. Buy tickets now for your chance to win the prize of a lifetime…..A Treasure Hunt

Blackbeard himself wouldn't miss out on. The keys to the villa await you, only at the Fyre Festival

Treasure Hunt." (Doc. 76-2, Ex. C. ) The screenshots further show that on March 1, 2017, after

acknowledging that there was confusion on whether the dates for the Festival would move,

Margolin directed the company to "KEEP THE DATES AS-IS. WE ARE NOT MOVING IT

BACK. We have aligned with our vendors who originally expressed concern, and put a bit of

grease, and we're all set!" (Doc. 76-2, Ex. C. ) The screenshots also show that on March 26,

2017, Margolin directed F*ck Jerry to remove from Fyre Festival's social media the following

words: "ARTISTS, DETAILS, DROP, FAKE, FESTIVAL, FLIGHT, FLIGHTS, FRAUD,

FUCK, INFO, INFORMATION, LINE UP, LINEUP, LINEUPS, PERFORMERS, PLAYING,

RELEASE, SCAM, STUPID, artists, details, drop, fake, festival, flight, flights, fraud, fuck, info,

information, line up, lineup, lineups, performers, playing, release, scam, stupid." (Doc. 76-2, Ex.

C, D. )

New information from Plaintiffs shows that Plaintiffs specifically saw and relied upon these statements and deletions to their detriment.  (*See* Meiselas Decl ¶ 5, Ex. 2.) Specifically, Plaintiffs remember seeing and relying upon Margolin's statements regarding a "Treasure Hunt" from January through April of 2017. (*See* Meiselas Decl ¶ 5, Ex. 2.) Plaintiffs also remember seeing—between January through April of 2017—the Festival's website and social media that advertised Fyre Festival as a luxury experience, which would feature performances by prominent musicians, safe lodgings, gourmet food, and other amenities, and which would begin on April 28 of 2017. (*See* Meiselas Decl ¶ 5, Ex. 2.)  Plaintiffs relied upon these statements in their decisions to purchase tickets, load money onto the prepaid wristbands, and in making their plans to travel to and attend the festival on April 28, 2017, and would not have so acted if they had not seen the statements. (*See* Meiselas Decl ¶ 5, Ex. 2.)

This new information, especially within the context of the facts already alleged by Plaintiffs, sufficiently states a claim for fraud against Margolin, and the Court should reconsider its decision to grant Margolin's motion to dismiss and Plaintiffs should be allowed to amend their pleading with these new facts.

## III.      STANDARD FOR RECONSIDERATION

Under Fed. R. Civ. P. 59(e) and Local Rule 6.3, motions for reconsideration may be granted where (1) the moving party can show an intervening change in the controlling law; (2) upon discovery of new evidence not previously available; or (3) on a showing of the need to correct a clear error of law or prevent manifest injustice. *In re Beacon Associates Litig.,* 818 F. Supp. 2d 697, 701–02 (S.D.N.Y. 2011) (granting motion for reconsideration); *see also Catskill Dev., L.L.C. v. Park Place Entm't Corp.,* 154 F.Supp.2d 696, 701 (S.D.N.Y.2001). Defendants seek reconsideration under the second and third categories. In particular, a motion for reconsideration on such grounds will be granted where "the moving party can point to

7

controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.,* 684 F.3d 36 (2d Cir. 2012). The key is whether the "controlling decisions or data" that the court overlooked "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 256–57 (2d Cir.1995). For the reasons set forth below, defendants meet the high standard for reconsideration. A full appreciation of the recently uncovered facts, in light of those already alleged as well as data that the court may have overlooked, could reasonably be expected to change the outcome of the Court's recent ruling.

## IV. <u>ARGUMENT</u>

New evidence has come to light to show that Grant Margolin should not have been dismissed as a Defendant in this matter. To permit Margolin to escape liability for his acts would constitute a manifest injustice, as he knew from early on that Fyre Festival was doomed to failure, yet persisted in directing the Festival's marketing team to make fraudulent statements that this would be a "luxury" experience, replete with eco domes and a "Treasure Hunt." He also continued to direct the team to delete comments on social media that Fyre was a fraud. Plaintiffs specifically saw and relied upon these statements on Fyre's website and social media, which were controlled and directed by Margolin, when they bought their tickets and attended the Festival. This new information shows that many of Fyre Festival's online statements were specifically attributable to Margolin, and that Plaintiffs relied upon these statements. These facts address what this Court identified as deficiencies in Plaintiffs' fraud pleadings.

In addition, Plaintiffs were in New York when they saw these fraudulent statements and when they bought their tickets. This information addresses the deficiencies in Plaintiffs' pleadings under the New York General Business Law.

Lastly, to the extent that it played any role in this Court's ruling, any allegations by Margolin that he was a "pro se" litigant were fraudulent, and warrant reconsideration.

**A.** **The Newly Discovered Evidence Shows that Plaintiffs Were Deceived While in New York.**

New evidence shows that the New York Plaintiffs were deceived while in New York, and therefore plead sufficient facts under Section 349.

As this Court has clarified, to state a claim under section 349 of the New York General Business Law, "a plaintiff must show: (1) that the defendant's conduct is consumer-oriented; (2) that the defendant is engaged in a deceptive act or practice; and (3) that the plaintiff was injured by this practice." *Wilson v. Nw. Mut. Ins. Co.,* 625 F.3d 54, 64 (2d Cir. 2010) (quotation marks and citation omitted). Allegations under section 349 are not subject to the particularity requirements of Rule 9(b). *Pelman ex rel. Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 (2d Cir. 2005). This Court held in its July 10 Order that, to sufficiently state a claim under Section 349, Plaintiffs must pass the "territorial test" from Goshen, where the "deception of a consumer must occur in New York." *Ward v. TheLadders.com, Inc.,* 3 F. Supp. 3d 151, 167 (S.D.N.Y. 2014). Alternatively, Plaintiffs may allege that the "transaction following the deceptive act occurred" in New York. *Cruz v. FXDirectDealer, LLC,* 720 F.3d 115, 122 (2d Cir. 2013).

In Plaintiffs' Second Amended Complaint, Plaintiffs alleged that "the deceptive practices with respect to the entire Class occurred in and emanated from New York," and that this was "where the individual defendants resided." (Doc. 56 ¶ 185.) In addition, newly discovered facts have emerged that Plaintiffs were in New York, where they also resided, both upon seeing and relying upon Defendants' fraudulent statements via online media, and when they purchased their tickets and paid for travel. (*See* Meiselas Decl ¶ 5, Ex. 2.) This satisfies the requirements under

9

both *Ward* and *Cruz* by showing that the deception and the "transaction following the deceptive act" occurred in New York. By this Court's reasoning, this was seemingly the only deficiency in Plaintiffs' pleadings as to stating a claim under section 349, and Plaintiffs' new evidence, as alleged in their declarations, have cured this.

**B. The Newly Discovered Evidence Shows that Margolin Knew the Festival Was a Fraud from the Beginning, and Still Made Fraudulent Statements.**

New information shows that many fraudulent online statements regarding Fyre Festival are attributable to Margolin, and were relied on by Plaintiffs to their detriment. This new information is evidenced in declarations by Plaintiffs, and in two documentaries released in 2019.

In its July 10 Order, the Court reasoned that Margolin's fraudulent statements were not alleged with sufficient particularity to satisfy the requirements of Rule 9(b) because "there [was] no assertion of when any of these statements were made," (Doc. 90 at 10) and therefore could not sufficiently allege "misrepresentation of 'present fact.'" (Doc. 90 at 11.) The Court's Order also stated that "Plaintiffs have not plausibly alleged that the statements were made with a fraudulent intent. The statements are promissory statements regarding future conduct that without more do not give rise to a claim in fraud." *Id.* Additionally, the Court held that "The SCAC does not allege statements made specifically by Margolin," and that the exhibits attached to Plaintiffs' Memo in Opposition of Margolin's Motion to Dismiss that "allege Margolin worked with a social media company called 'F*ck Jerry' to identify negative comments on Facebook, such as those using the terms "fake, "fraud," and "scam" and hide them from the public's view….These allegations are not plead in the SCAC and there is no basis to assume that any plaintiff was injured by them." (Doc. 90 at 12.)

10

In relation to Defendant Atkins' statements, the Court reasoned that with respect to the scienter element of a fraud claim, that element "may be plead upon information and belief, so long as it is accompanied by a statement of facts upon which the belief is founded," citing to *Luce v. Edelstein,* 802 F.2d 49, 54 n.1 (2d Cir. 1986). (Doc. 90 at 14.)

Here, new facts have come to light since Plaintiffs filed their Second Amended Complaint and their Opposition to Margolin's Motion to Dismiss. The 2019 documentaries, detailed above, revealed that from its early stages, Fyre Festival was quite simply a scam, where the key players, including Margolin, were informed early on that the festival was not feasible and could not go forward as planned. Despite this information, Margolin continued to direct the marketing team to post videos representing the Festival as a luxury experience that was going forward on April 28, 2017, and which would feature models and yachts.

In addition, Plaintiffs allege that they specifically saw and relied upon Fyre Festival's website and social media channels in their decisions to buy their tickets and attend the festival. (*See* Meiselas Decl ¶ 5, Ex. 2.)

These new facts augment those already alleged in the Second Amended Complaint, and add up to a sufficient claim for fraud by this Court's own reasoning because they show further scienter, fraudulent statements specifically attributable to Margolin, and reliance by Plaintiffs. For example, Plaintiffs alleged that Defendant Grant Margolin was Chief Marketing Officer for Fyre Festival, he oversaw the Festival's marketing and brand strategy, and organized, marketed, promoted, and advertised the Fyre Festival. (SAC ¶¶ 8, 34, 46). The SAC further stated that Margolin "was a marketing mastermind behind the event" and that despite being informed that "the Festival could not proceed as represented," he continued to "heavily promote the event." (SAC ¶ 8.) Margolin "actively worked with [McFarland and Atkins] to promote the Fyre Festival

11

through a social media blitz, using, among other things, Instagram, Twitter and Facebook, which created a façade that the Fyre Festival would be filled with exclusive culinary experiences and famous models on yachts." (SAC ¶ 46.)

Further, the SAC also showed particular statements that were made on the Fyre Festival website, including that "Fyre Festival is a 2 weekend festival taking place on private islands in the Exumas on Fyre Cay….with an all star cast of performers, models, influencers, and thought leaders attending," that "there will be performances going on throughout the day and night," and that attendees should "[l]ook forward to art installations, culinary experiences, special performances, and more—the best of everything." (SAC, Ex. B.) The SAC alsoalleged that the Fyre Festival website contained a picture of the luxurious lodgings that would be provided to attendees. (SAC, Ex. B.) Because Margolin called the shots on the Festival's online media, these particular statements are specifically attributable to him.

Showing further statements attributable to Margolin, in Plaintiffs' Memo in Opposition to Margolin's Motion to Dismiss, Plaintiffs attached an Exhibit which showed screenshots from Margolin's online communications with the social media company, F*ck Jerry." These screenshots showed that from February 1, 2017 through March 16, 2017, Margolin communicated with F*ck Jerry to direct the Festival's website and social media efforts. Specifically, the screenshots show that, on February 1, 2017, Margolin gave F*ck Jerry various messages to post on social media regarding a "Treasure Hunt,"  including the statements "Bahamian Land. A beachfront villa. All prizes to be won at the Fyre Festival Treasure Hunt. Buy tickets now for your chance to win the prize of a lifetime…..A Treasure Hunt Blackbeard himself wouldn't miss out on. The keys to the villa await you, only at the Fyre Festival Treasure Hunt." (Doc. 76-2, Ex. C. ) The screenshots further show that on March 1, 2017, after acknowledging that there was confusion on whether the

dates for the Festival would move, Margolin directed the company to "KEEP THE DATES AS-IS. WE ARE NOT MOVING IT BACK. We have aligned with our vendors who originally expressed concern, and put a bit of grease, and we're all set!" (Doc. 76-2, Ex. C. ) The screenshots also show that on March 26, 2017, Margolin directed F*ck Jerry to remove from Fyre Festival's social media the following words: "ARTISTS, DETAILS, DROP, FAKE, FESTIVAL, FLIGHT, FLIGHTS, FRAUD, FUCK, INFO, INFORMATION, LINE UP, LINEUP, LINEUPS, PERFORMERS, PLAYING, RELEASE, SCAM, STUPID, artists, details, drop, fake, festival, flight, flights, fraud, fuck, info, information, line up, lineup, lineups, performers, playing, release, scam, stupid." (Doc. 76-2, Ex. C, D. )

Together, the new facts, along with those already alleged, show just how much Margolin controlled the statements made through Fyre Festival's online media, when he made fraudulent statements, and how Plaintiffs indeed saw and relied upon these statements. For example, Margolin's instructions to F*ck Jerryon March 1, 2017 that the Festival was going ahead as-planned, and his instructions to delete comments on March 26, 2017 (Doc. 76-2, Ex. C), show how much Margolin controlled the statements made through Fyre Festival's online media, are sufficiently particular to show when the fraudulent statements were made. Similarly, the new information from the documentary *Fyre Fraud* shows that Margolin was instructing F*ck Jerry to make unrealistic representations about the festival, despite his knowledge that the event could not happen.

The new facts also show that Plaintiffs saw and relied upon the statements on the Fyre Festival website and social media during January–April of 2017, which represented the Festival as a luxury experience. (*See* Meiselas Decl ¶ 5, Ex. 2.) Specifically, Plaintiffs saw and relied upon Margolin's statements that there would be a "Treasure Hunt" with valuable prizes, which Margolin

had directed F*ck Jerry to make public online. Plaintiffs would not have attended the festival or purchased tickets if they had not seen these statements through online media. (*See* Meiselas Decl ¶ 5, Ex. 2.)  In addition, Margolin's instructions on February 1, 2017 to post information about the "Treasure Hunt," his instructions to F*ck Jerry on March 1, 2017 that the Festival was going ahead as-planned, and his instructions to them to delete comments on March 26, 2017, (Doc. 76-2, Ex. C) are sufficiently particular to show when the fraudulent statements were made, and to show Margolin instructed the company not to make any announcements to correct previous statements.

This information shows that Margolin purposely made fraudulent statements, which were relied on by Plaintiffs, to their detriment. The Court should reconsider its July 10 ruling and allow Plaintiffs to amend the Complaint with this information.

**C.** **The Newly Discovered Evidence in Light of Plaintiffs' Past Pleadings Shows that Margolin Has Fraudulently Represented Himself as "Pro Se" to this Court.**

In its July 10 Order, this Court seems to consider Margolin's alleged "pro se" status as a material factor in denying Plaintiffs' request to amend the pleading to add new allegations against him. However, recent developments show that Margolin's "pro se" status was yet another scam.

A party's pleadings that are "seemingly filed pro se but drafted by an attorney" give that party the unwarranted advantage of "having a liberal pleading standard applied whilst holding the plaintiffs to a more demanding scrutiny." *Johnson v. Board of County Com'rs for County of Fremont,* 868 F.Supp. 1226, 1231 (D. Col. 1994) (disapproved on other grounds). The purportedly "pro se" litigant would be "granted greater latitude as a matter of judicial discretion in hearings and trials. The entire process would be skewed to the distinct disadvantage of the nonoffending party." *Id*. In addition, " ghost-writing has been condemned as a deliberate evasion

14

of the responsibilities imposed on counsel by Rule 11, F.R.Civ.P.," because attorneys should not

be allowed to "escape the obligation imposed on members of the bar." *Ellis v. Maine,* 448 F.2d

1325, 1328 (1st Cir.1971); *see also Klein v. H.N. Whitney, Goadby & Co.,* 341 F.Supp. 699,

702–03 (S.D.N.Y.1971).

This Court's July 10, 2019 Order stated that because Margolin was proceeding pro se, he

"would be prejudiced by further delay in this action and additional briefing," and this seemed to

be a factor in the Court's decision to grant Margolin's motion. However, recent correspondence

from  Jacqueline Veit, counsel for Margolin, has revealed that Margolin has been represented all

along by an attorney who never signed her name to pleadings, and never filed an appearance in this

matter, yet states that she is "shocked" at Plaintiffs' recent filings and intends to move for

sanctions. (*See* Meiselas Decl ¶ 3–4, Ex. 1.)This shows that Margolin's alleged "pro se" status, to

the extent that it played a role in this Court's adjudication of Plaintiffs' requests to amend their

pleadings, misled this Court in its ruling.

Accordingly, Plaintiffs ask that this Court reconsider its denial of Plaintiffs' request to

amend their pleading to add allegations against Margolin, as he has been represented by counsel all

along.

**D.** **The Court Should Allow Plaintiffs to Amend Their Pleading with This New**
   **Information to Prevent Manifest Injustice.**

In light of this new information and to prevent injustice, Plaintiffs request that this Court

reconsider its ruling on Margolin's motion to dismiss, and allow Plaintiffs to amend the

Complaint  with this new information.

The amendments will not be futile because they will specifically request the factors

identified by this Court as previously deficient in the Complaint. In its July 10 Order, this Court

held that as to Margolin, the Court would grant his Motion to Dismiss, primarily because Plaintiffs

had not pled statements that were attributed specifically to Margolin, and that there was "no basis to assume that any plaintiff was injured by" Margolin's efforts to "identify negative comments on Facebook, such as those using the terms 'fake,' 'fraud,' and 'scam,' and hide them from the public's view." This new information, above, together with previous allegations, have cured these deficiencies, and Plaintiffs' fraud claim against Margolin would now survive a motion to dismiss. *See Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir. 2002); *see also Sumitomo Elec. Research Triangle, Inc. v. Corning Glass Works,* 109 F.R.D. 627, 628 (S.D.N.Y. 1986).

Plaintiffs did not purposely withhold this information in bad faith, but rather offer these new details to augment those already alleged, and should therefore be given leave to amend. *Haddock v. Nationwide Fin. Servs. Inc.,* 514 F. Supp. 2d 267, 271 (D. Conn. 2007).

Defendants will not be prejudiced by this new information because it arises from the same facts alleged in Plaintiffs' Second Amended Complaint, and therefore will not significantly delay the proceedings. *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993); *Ruotolo v. City of New York,* 514 F.3d 184, 192 (2d Cir. 2008).

Accordingly, the Court should reconsider its ruling and allow Plaintiffs to amend their Complaint with these new allegations.

///

///

///

///

///

///

///

16

///

///

## V.    <u>CONCLUSION</u>

For the foregoing reasons, the Court should reconsider its ruling from the July 10, 2019

Order and should not grant Margolin's motion to dismiss, and should allow Plaintiffs leave to

amend to allege these new facts.

Dated: August 7, 2019                                       Respectfully submitted,

By: *s/ Tina Glandian*
                                                                            Tina Glandian

**GERAGOS & GERAGOS, APC**
TINA GLANDIAN (TG-3014)
256 5th Avenue
New York, NY 10001
Telephone: (213) 625-3900
Facsimile: (213) 232-3255
tina@geragos.com
MARK J. GERAGOS (*pro hac vice*)
BEN J. MEISELAS (*pro hac vice*)
**GERAGOS & GERAGOS, APC**
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255
geragos@geragos.com

*Lead Class Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2019, I Filed a true and correct copy of the foregoing on the case styled  In re FYRE FESTIVAL LITIGATION with the Clerk of the Court using CM/ECF, which sent notification of the filing to all parties registered to receive such notice in the case.


/s/ Tina Glandian