**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re FYRE FESTIVAL LITIGATION                    1:17-CV-03296 (PKC)

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED**
**COMPLAINT**

---

**GERAGOS & GERAGOS, APC**
TINA GLANDIAN (TG-3014)

256 5th Avenue
New York, NY 10001
Telephone: (213) 625-3900
Facsimile: (213) 232-3255
tina@geragos.com

*Lead counsel for Plaintiffs*

**TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................................1

II.     FACTUAL BACKGROUND..................................................................................3

III.    PROCEDURAL BACKGROUND..........................................................................5

        A.      Plaintiffs Seek Leave To Amend Their Complaint With
             the Following Facts.............................................................................7

             1.      Plaintiffs and Class Members Saw and Relied Upon
                   Atkins' April 27 Tweet........................................................7

IV.     JUSTICE REQUIRES GRANTING PLAINTIFFS LEAVE TO AMEND.................9

        A.      Plaintiffs' Motion to Amend Is Not Futile......................................................10

        B.      Plaintiff's Motion to Amend is Not Unduly Delayed or Made
             in Bad Faith....................................................................................11

        C.      Defendants Will Not Suffer Prejudice as a Result of
             Plaintiffs' Amendment.....................................................................13

V.      CONCLUSION…………….................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Blaskiewicz v. County of Suffolk,*
    29 F. Supp. 2d 134 (E.D.N.Y. 1998)................................................................7

*Block v. First Blood Assocs.,*
    988 F.2d 344 (2d Cir. 1993)........................................................................6

*Brown v. Kelly,*
    244 F.R.D. 222 (S.D.N.Y. 2007)..................................................................6

*Conley v. Gibson,*
    355 U.S. 41 (1957)....................................................................................6

*Cummings-Fowler v. Suffolk Community Coll.,*
    282 F.R.D. 296 (E.D.N.Y. 2012)..................................................................7

*Da Cruz v. Towmasters of New Jersey, Inc.,*
    217 F.R.D. 126 (E.D. N.Y. 2003)..................................................................7

*Fariello v. Campbell,*
    860 F. Supp. 54 (E.D.N.Y. 1994)................................................................11

*Fastiggi v. Waterview Hills Nursing Ctr., Inc.,*
    6 F. Supp. 2d 242 (S.D.N.Y. 1998)..............................................................8

*Foman v. Davis,*
    371 U.S. 178 (1962)..................................................................................6

*Friedl v. City of New York,*
    210 F.3d 79 (2d Cir. 2000)........................................................................17

*Garcia v. Pancho Villa's of Huntington Village, Inc.,*
    268 F.R.D. 160 (E.D. N.Y. 2010)................................................................11

*Haddock v. Nationwide Fin. Servs. Inc.,*
    514 F. Supp. 2d 267 (D. Conn. 2007)..........................................................9

*Hanlin v. Mitchelson,*
    794 F.2d 834 (2d Cir.1986)........................................................................9

*Howey v. United States,*
    481 F.2d 1187 (9th Cir.1973)......................................................................9

*Kleeberg v. Eber,*
    16-CV-9517, 2019 WL 2223272 (S.D.N.Y. 2019).......................................................6

*Lucente v. Int'l Bus. Machs. Corp.,*
    310 F.3d 243 (2d Cir. 2002)..........................................................................................7

*Miller v. Selsky,*
    234 F.3d 1262 (2d Cir.2000)..........................................................................................9

*Monahan v. New York City Dept. of Corr.,*
    214 F.3d 275 (2d Cir. 2000)..........................................................................................6

*Pasternack v. Lab. Corp. of Am.,*
    892 F. Supp. 2d 540 (S.D.N.Y. 2012)...........................................................................6

*Rachman Bag Co. v. Liberty Mut. Ins. Co.,*
    46 F.3d 230 (2d Cir.1995).............................................................................................9

*Richardson Greenshields Securities, Inc. v. Lau,*
    825 F.2d 647 (2d Cir.1987)...........................................................................................9

*Ruotolo v. City of New York,*
    514 F.3d 184 (2d Cir. 2008).........................................................................................11

*S.E. C. v. DCI Telecomm., Inc.,*
    207 F.R.D. 32 (S.D.N.Y. 2002).....................................................................................8

*S.S. Silberblatt, Inc. v. East Harlem Pilot Block—Building 1 Housing Development
Fund Co., Inc.,*
    608 F.2d 28 (2d Cir. 1979)..........................................................................................11

*State Teachers Ret. Bd. v. Fluor Corp.,*
    654 F.2d 843 (2d Cir. 1981)........................................................................................11

*Sumitomo Elec. Research Triangle, Inc. v. Corning Glass Works,*
    109 F.R.D. 627 (S.D.N.Y. 1986)...................................................................................7

*Uni-World Capital, L.P. v. Preferred Fragrance, Inc.,*
    No. 13 Civ. 7204, 2014 WL 3610906 (S.D.N.Y. July 21, 2014)....................................9

## RULES

Fed. R. Civ. P. 15.........................................................................................................................6

Fed. R. Civ. P. 12.......................................................................................................................12

## I.    <u>INTRODUCTION</u>

Fyre Festival was founded by, developed by, implemented by, and promoted by Jeffrey

Atkins p/k/a Ja Rule ("Atkins"), who is a widely-known, highly influential musical performer with

hundreds of thousands of social media followers.  He was the Festival's **co-founder**, its most

prominent promoter, and was so strongly associated with the event that it was billed as "Ja Rule's

Festival." He was also partner, co-conspirator, and criminal co-defendant with Billie McFarland

who, since the original Complaint was filed in this matter, is now serving out a six-year sentence

for his criminal role in the Festival. While Atkins had publicly stated that the Festival would

feature top-billed musical performers and amenities that ranged from "morning yoga" to a

"parade," he had already been informed that the festival would not take place as advertised—or at

all—and that it would place attendees' health and safety in serious peril.

Atkins made public statements through social media and other channels that reasonably led

prospective attendees to believe that the Festival was going ahead as-advertised, and duplicitously

encouraged them to load funds onto the "cashless wristbands" that would be provided, despite his

knowledge that the event was not happening. Upon reading Atkins' statements, attendees finalized

their travel plans, purchased tickets, and otherwise made further expenditures in reliance on

Atkins' promise, only to be stranded on an island with no festival and their money stolen by Fyre

Festival, McFarland, and Atkins.

Plaintiffs move to amend their Complaint with additional details regarding how Plaintiffs

and class members saw and relied upon Atkins' statements. A copy of Plaintiffs' proposed Third

Consolidated Amended Class Action Complaint  is attached to the Declaration of Ben J. Meiselas,

filed concurrently herewith, as **Exhibit A,** and a redline depicting the differences between the

Third Consolidated Amended Class Action Complaint and the document it amends, the Second

Consolidated Amended Class Action Complaint (Doc. 56) , is attached to the Declaration of Ben

Meiselas as **Exhibit 1**. By the proposed amendments, Plaintiffs seek to add factual details relevant to the case.

Additionally, since the initial filing of the Consolidated Class Action Complaint, Atkins' cofounder, co-conspirator, and codefendant Billy McFarland, has been sentenced to 6 years in federal prison for his role in the Fyre Festival fraud after pleading guilty to two counts of wire fraud.[1] Two Fyre festival attendees were awarded five million dollars in damages against Atkins' partner McFarland in a civil suit after reaching a separate agreement with Atkins who was a defendant in the same civil suit.[2] The SEC charged Billy McFarland with violating the antifraud provisions of the federal securities laws and he eventually settled with the SEC for $27.4 million.[3]

Two national documentaries have since exposed the criminal enterprise that was Fyre Festival and have highlighted the extreme levels of fraud and deception that fueled its notoriety. Along with those documentaries, details of Atkins' influence as a cofounder and co-conspirator have also come to light. Investigative journalism has found that Atkins is a cofounder who is documented as continuously lying to the public despite his knowledge that Fyre would be a scam for all attendees. Atkins has shown that he and Billy McFarland together, fraudulently misrepresented the existence of the Festival, to the detriment of attendees. Through Atkins' continued endorsement of his festival through social media and various other venues, Plaintiffs were led to believe that Fyre was a legitimate festival and not the criminal enterprise that it was eventually exposed to be.

The new facts arise from the same nucleus of operative facts as those alleged previously in the Second Consolidated Amended Class Action Complaint and merely add more detail regarding how Plaintiffs saw and relied upon Defendant Atkins' April 27, 2017 Tweet, making it both more

---

[1] *USA v. McFarland,* 17-cr-00600 (S.D.NY. 2017) (NRB).
[2] *Robert Crossno et al. v. William McFarland, et al.,* 17CV005724 (N.C. 2017).
[3] S.E.C. v. William McFarland, et al., 18-cv-06634 (S.D.N.Y. 2018).

logical and more efficient for them to be heard and considered in the same action. For the same

reason, Plaintiffs' proposed Third Consolidated Amended Class Action Complaint will not

prejudice Defendants. For the reasons set forth below, Plaintiffs request that the Court enter an

order granting it leave to file the Third Consolidated Amended Class Action Complaint.

## II.      FACTUAL BACKGROUND

Atkins is a widely-known, popular rap music performer who has been in the music scene

for decades. (Doc. 56 ¶¶32–33.)  His performances draw in thousands, and  he is hugely influential

on social media, with over 200,000 followers on Twitter, and 575,000 followers on Instagram.

(Doc. 56 ¶33.)  At the time of Fyre Festival, Atkins was a founder, owner, director, significant

shareholder and officer of Fyre Media and its subsidiary Fyre Festival LLC. (Doc. 56 ¶33.)  He

conceived, organized, marketed, promoted, advertised and funded the Fyre Festival and was

responsible for overall business strategy, guiding creative and facilitating artist relations.  (Doc. 56

¶33.)   As the most prominent officer, shareholder and promoter of the festival, Atkins was widely

and reasonably viewed as the face and voice of Fyre Festival, and described himself as such. (Doc.

56 ¶¶61–62.)

Atkins publicly bragged about, and otherwise held himself out as being the Festival's co-

founder. In  early 2019, two widely-acclaimed documentaries on Fyre Festival were released on

Netflix and Hulu [4], one of which was nominated for an Emmy. In *Fyre Fraud,*[5] this documentary

revealed extensive footage from behind the scenes during the build-up to Fyre Festival, and

exposed the deeply-entrenched role that Atkins played as the Festival's co-founder. In one scene in

*Fyre Fraud*, Atkins, while standing on the Exuma island beach were Fyre Festival was to take

place, exclaimed to the video camera, "I am cofounder of Fyre. Me and my brother Billy

---

[4] FYRE FRAUD (Hulu 2019).
[5] *Id.* at 27:15.

[McFarland]."  Atkins clearly held himself out as co-founder of the Festival, and the public reasonably interpreted his public statements regarding the Festival as a reliable source of information.

Accordingly, of all the celebrity promotion surrounding "Ja Rule's Festival," Atkins' public statements regarding the festival's performers, amenities and "luxury" atmosphere spoke the loudest to prospective attendees. (*See* Doc. 56 ¶¶61–62.) Atkins' followers who were considering attending the Festival were gleaning up-to-date information and promotion regarding the event from Atkins' Tweets, emails and Instagram posts, and reasonably relying on those statements in their decisions to buy tickets, book their travel, finalize travel plans, and were otherwise spending additional money or changing plans in reliance upon Atkins' statements. *See* Section III(A)(1), below.

In the months leading up to the festival, Atkins' public statements sensationalized and promoted Fyre Festival as a two-weekend A-list experience with alcohol, fine dining and party-goers. (Doc. 56 ¶¶51, 61–62.)  Attendees were promised activities such as boats and jet skis, musical performances by top-billed artists,  morning yoga and guided meditation on the beach, massages, gourmet food, henna tattooing, sound healing, chill-out sessions and a parade. (Doc. 56 ¶51.)

As this Court has identified, perhaps Atkins' most material public statement was a Tweet he made on April 27, 2017: "The stage is set!!! In less than 24 hours, the first annual Fyre Festival begins. #festivallife." (Doc. 56 ¶64.)   This statement was made after Atkins had obtained knowledge that was no infrastructure for the site and that it was unsuitable and unsafe for the event. (Doc. 56 ¶66.)

Prospective festival attendees, including Plaintiffs and class members, saw and relied upon

this tweet in their decision to attend the festival. (Doc. 56  ¶¶102, 144, 154; *see also* Section

III(A)(1), below)  They further relied upon Atkins' statements by purchasing Festival tickets,

incurring travel and lodging expenses, depositing money onto the Festival's cashless wristbands,

and other expenses. (Doc. 56 ¶104.) Plaintiffs and the class members would not have purchased

tickets, deposited money onto the Festival's wristbands, and/or expended any other money in

connection with the Fyre Festival had Atkins not led them to believe that the Festival would offer

accommodations, amenities, security and access to activities.  (*See* Doc. 56 ¶¶102, 144, 154, 202,

213, 228, 241.)

These further details regarding Plaintiffs' knowledge of, and reliance upon Atkins' April 27

Tweet show that Plaintiffs reasonably relied upon the statements of **Atkins, who had openly and**

**publicly bragged that he was the Festival's co-founder, and who made these statements with**

**knowledge that the Festival would not happen, but that his Tweet would be widely read and**

**relied upon by prospective attendees.** These further details as to Plaintiffs' allegations

sufficiently address this Court's July 10 Order, and adequately state a claim for fraud.

III.    **PROCEDURAL BACKGROUND**

This action was consolidated in this Court on March 13, 2018. (Doc. 35.)  Plaintiffs filed

the Consolidated  Amended Class Action Complaint on May 29, 2018 (Doc. 44), and filed the

Second Consolidated Amended Class Action Complaint on June 25, 2018. (Doc. 56.)  On

September 7, 2018, Defendant Atkins filed his Motion to Dismiss Plaintiffs' Second Amended

Consolidated Class Action Complaint (Doc. 72), and on September 11, 2018, Defendant Margolin

filed his Motion to Dismiss the Second Amended Complaint. (Doc. 73.)

On July 10, 2019, this Court issued its Opinion and Order on Defendants' motions. (Doc.

90). In its order, this Court granted Plaintiffs leave to move to "amend their fraud claim and

remaining state law clams against Atkins" with "allegations of reasonable reliance and causation as

5

to each plaintiff." The Court's Order specified that Plaintiffs' Motion to Amend should address "Atkins'April 27 Tweet," and how "a particular plaintiff knew of the Tweet and took some concrete action in reliance thereon." (Doc. 90 at 32.) The Court noted that the Tweet, "reasonably construed, was a specific representation that all was well and that the Festival, including amenities, performances, and accommodations, would start in less than twenty-four hours," and as such, went beyond "non-actionable puffery," as it qualified as "a tangible promise on which they could rely in making final preparations to arrive at the Festival."   (Doc. 90 at 13.) The Court further reasoned that the allegation specifically pled scienter, because Plaintiffs alleged that "Atkins was motivated in making the false statement by a need and desire to pay down the April 10, 2017 loan with EHL Funding that he had personally guaranteed." (Doc. 90 at 14.) Further, even without the allegations regarding this loan, Atkins' "reassurance to guests encouraging them to travel to a remote island for the Festival without knowledge of the truth or falsity of his statement was reckless." (Doc. 90 at 14.)

The Court further concluded that Plaintiffs had not sufficiently pled that they saw this post, when they saw it, that seeing it induced their reliance, or that they actually relied on it. (Doc. 90 at 14–15.) This was because Plaintiffs' broad allegations that Plaintiffs "relied on Defendants' misrepresentations and omissions" were insufficient to "provide Atkins notice of when and how an individual plaintiff relied upon the statement of April 27." (Doc. 90 at 15–16.)

Accordingly, Plaintiffs move to amend their pleading in order to assert newly discovered information regarding how Plaintiffs and class members saw and relied upon Atkins' April 27 tweet. Plaintiffs' counsel became aware of this new information by meeting and conferring with Plaintiffs and class members.

//

A. **Plaintiffs Seek Leave To Amend Their Complaint With the Following Facts**

To address the deficiencies identified by this Court, Plaintiffs' counsel met and conferred with Plaintiffs and class members to provide more details regarding how the Plaintiffs saw and relied upon Atkins' public statements regarding the Festival. To meet the level of particularity required to adequately allege fraud and their related state claims, Plaintiffs and class members allege the following details in the Third Amended Complaint.[6]

1. **Plaintiffs and Class Members Saw and Relied Upon Atkins' April 27 Tweet.**

Plaintiffs and class members saw, or otherwise became aware of, Atkins April 27, 2017 Tweet and relied upon that Tweet. The following is a small sampling of Plaintiffs' experiences on the issue of reliance:

- Class member 1 alleges that on or around April 27, 2017, before he had finalized any plans to attend the Festival, Class member 1 first became aware of Atkins April 27 Tweet through Twitter. Class member 1 alleges that he interpreted the Tweet to mean that Fyre Festival would be a safe and enjoyable festival that would go forward in the manner previously advertised because he knew that Atkins was associated with Fyre Festival and assumed that spoke about the Festival with authority. In reliance on this Tweet Class member 1 booked his travel from Miami to Fyre Festival, and arrived to find a dangerously underequipped site full of panicked guests. He incurred extra travel expenses and emotional harm from this frightening event. If Class member 1 had not seen the

---

[6] Plaintiffs' counsel spoke with each of these class members and gleaned the following information. While Plaintiffs' counsel has not yet managed to obtain signed declarations from the following class members, counsel anticipates that these class members are willing to provide signed declarations before the parties bring a Motion for Summary Judgment. (Decl. Meiselas ¶3–4.) In addition, these allegations are being made in the pleading, and should therefore be construed in the light most favorable to the Plaintiffs. *Sung Cho v. City of New York,* 910 F.3d 639, 642 n.1 (2d Cir. 2018).

April 27 Tweet, he would not have attended the Festival and would not have
incurred these damages.

- Class member 2  alleges that on or around April 27, 2017, before Class member 2
  had finalized her travel to get to the Festival, Class member 2 first became aware
  of Atkins' April 27 Tweet because her friend showed Class member 2 the Tweet
  on the friend's phone. Class member 2, due to circulating rumors regarding
  possible cancellation of the Festival, had not yet finalized her travel plans to
  attend the Festival. However, after seeing Atkins' April 27 Tweet, Class member
  2 finalized her decision to attend the Festival. This was because Class member 2
  understood Atkins to be associated with the Festival as one of its founders, and
  reasonably assumed that Atkins had firsthand knowledge of the Festival. Class
  member 2 therefore made further expenditures, including travel expenses, to
  attend the Festival, and suffered emotional harm due to stress from the extremely
  chaotic nature of event. Class member 2 would not have made these expenditures
  or experienced this stress if she had not relied upon Atkins' April 27 Tweet.

- Abbas Ali alleges that on or around April 27, 2019, before Mr. Ali had finalized
  his decision to attend the festival, he became aware of Atkins' April 27 Tweet
  because the Tweet was republished on an online blog that he regularly read for
  updates regarding Fyre Festival. Mr. Ali reasonably relied upon the Tweet, which
  was the principal deciding factor in his decision to attend Fyre Festival. After
  seeing the Tweet, and in reliance upon it, Mr. Ali finalized his decision to travel.
  As a result of relying on the tweet, Mr. Ali had to spend "a frightening evening on
  the island, where the Fyre Festival campsite was full of frantic attendees who

were fighting over tents, where there was a basic lack of provisions, and where

attendees were exposed to the elements. Because this felt like a dangerous

situation, my friends and I wanted to leave as quickly as possible, so we had to

pay premium prices for taxi rides and other travel expenses back to the airport. I

experienced monetary loss from round trip travel expenses between Miami and

the Bahamas, emergency lodging, two extra days of lodging and living expenses

in Miami, as well as extreme emotional distress."

The Court should grant Plaintiffs leave to amend their Complaint with these material

statements and allegations, as they specifically address the Court's order and because they

merely add additional facts to the allegations that Plaintiffs have pled all along.

## IV.    <u>JUSTICE REQUIRES GRANTING PLAINTIFFS LEAVE TO AMEND</u>

As Plaintiffs' new allegations are responsive to the Court's order, the amendment will not

be futile, and there is no prejudice or undue delay because Plaintiffs are promptly amending and

because these new details arise from the same nucleus of facts as those originally pled. Leave to

amend should therefore be granted.

Rule 15(a) of the Federal Rules of Civil Procedure provides that the "court should freely

give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The "liberality in

granting leave to amend applies to requests to amend a complaint to add new parties." *Brown v.

Kelly,* 244 F.R.D. 222, 227 (S.D.N.Y. 2007) (aff'd in part, vacated in part on other grounds). In

interpreting Rule 15(a), the Second Circuit has explained that district courts should not deny

leave unless there is a substantial reason to do so, such as excessive delay or prejudice to the

opposing party. *Kleeberg v. Eber,* 16-CV-9517, 2019 WL 2223272 (S.D.N.Y. 2019) (citing

*Friedl v. City of New York,* 210 F.3d 79, 87 (2d Cir. 2000))*; see also Block v. First Blood*

*Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."). Rule 15 reflects two "important principles" of the Federal Rules: (1) pleadings "serve the limited role of providing the opposing party with notice of the claim or defense to be litigated"; and (2) "mere technicalities should not prevent cases from being decided on the merits." *Monahan v. New York City Dept. of Corr.,* 214 F.3d 275, 283 (2d Cir. 2000) (citing *Conley v. Gibson,* 355 U.S. 41, 47-48 (1957); *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

For purposes of a motion to amend, allegations in the proposed complaint are taken as true and all inferences drawn in plaintiffs' favor. *Da Cruz v. Towmasters of New Jersey, Inc.,* 217 F.R.D. 126 (E.D.N.Y. 2003).

No good reason to deny leave to amend exists in this case. To the contrary, as discussed below, the proposed amendment is not futile, is not proposed in bad faith, has not been unduly delayed, and does not prejudice Defendants. The proposed amendment will maximize judicial efficiency and permit all related matters to be fully determined on the merits. Therefore, the Court should grant Plaintiffs' Motion to Amend.

### A. **Plaintiffs' Motion to Amend Is Not Futile.**

Plaintiffs' proposed Third Amended Consolidated Class Action Complaint will not be futile, as Plaintiffs allege new facts which specifically address the Court's July 10 Order.  A proposed amendment "is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *See Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir. 2002); *see also Sumitomo Elec. Research Triangle, Inc. v. Corning Glass Works,* 109 F.R.D. 627, 628 (S.D.N.Y. 1986) (court need only be satisfied that amendment "is colorable and not frivolous" to grant leave to amend). The party opposing the motion for leave to amend bears

the burden of establishing that an amendment would be futile. *See Cummings-Fowler v. Suffolk Community Coll.,* 282 F.R.D. 296 (E.D.N.Y. 2012) (citing *Blaskiewicz v. County of Suffolk,* 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998)).

Here, Plaintiffs propose to add new allegations to their pleading to specifically address the guidance from this Court on how the prior pleading was deficient. In its July 10 Opinion and Order on Defendants' motions, this Court granted Plaintiffs leave to move to "amend their fraud claim and remaining state law clams against Atkins" with "allegations of reasonable reliance and causation as to each plaintiff." The Court specified that Plaintiffs' Motion to Amend the Complaint should address "Atkins'April 27 Tweet," and how "a particular plaintiff knew of the Tweet and took some concrete action in reliance thereon." (Doc. 90 at 32.) The Order offered further guidance that Plaintiffs had not sufficiently pled that they saw this post, when they saw it, that seeing it induced their reliance, or that they actually relied on it. (Doc. 90 at 14–15.) Plaintiffs now specifically allege further details regarding how and when Plaintiffs and class members saw Atkins' April 27 tweet, and how they acted in reliance upon the tweet. See Section III(A)(1).

Plaintiffs' proposed amendments specifically address the Court's identified deficiencies in Plaintiffs' fraud claim and related state claims, and are therefore a far cry from futile.

**B.   Plaintiff's Motion to Amend is Not Unduly Delayed or Made in Bad Faith.**

Plaintiffs' amended allegations rely on the same basic facts as the previous Complaint, merely add more detail to the original allegations.

Undue delay, standing alone, does not constitute bad faith. *See S.E. C. v. DCI Telecomm., Inc.,* 207 F.R.D. 32, 34 (S.D.N.Y. 2002) (bad faith requires a "showing of malice"). A proposed amendment is not in bad faith when it "comes early in the litigation" while discovery is ongoing, "and relies on the same facts" set forth in the original complaint. *See Fastiggi v. Waterview Hills*

*Nursing Ctr., Inc.,* 6 F. Supp. 2d 242, 243 (S.D.N.Y. 1998). In addition, an amendment that is "prompted by evidence first obtained during expedited discovery" is not suggestive of bad faith. *See Uni-World Capital, L.P. v. Preferred Fragrance, Inc.,* No. 13 Civ. 7204, 2014 WL 3610906, at *13 n.9 (S.D.N.Y. July 21, 2014); *see also Block v. First Blood Assocs.,* 988 F.2d 344, 351 (2d Cir. 1993) (bad faith not evident where amendment was sought after party first became aware of unknown facts). Even if there was delay, that alone is insufficient to deny leave to amend. *Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (citing *Howey v. United States,* 481 F.2d 1187, 1188–89, 1191 (9th Cir.1973) (allowing amendment after five-year interval and on second day of trial). When there is "no evidence that the [movant] ha[s] intentionally delayed amending their complaint as a strategic matter," courts typically grant leave to amend a pleading. *Haddock v. Nationwide Fin. Servs. Inc.,* 514 F. Supp. 2d 267, 271 (D. Conn. 2007).

A party may still "amend a complaint after discovery has been completed and defendants have filed summary judgment motions, even when the basis for the amendment existed at the time of the original complaint." *Miller v. Selsky,* 234 F.3d 1262 (2d Cir.2000) (summary order) (citing *Hanlin v. Mitchelson,* 794 F.2d 834 (2d Cir.1986)). In Miller, a plaintiff was allowed to amend his complaint to add new facts because the facts were "merely variations on the original theme." *Id.* In *Rachman Bag Co*., the Second Circuit allowed a defendant to amend a pleading to add a fraudulent concealment defense four years after the defendant filed its original answer because the tardiness "may well have been due to its uncertainty as to what issue to focus on rather than bad faith." *Rachman Bag Co. v. Liberty Mut. Ins. Co.,* 46 F.3d 230, 234–235 (2d Cir.1995).

Plaintiffs' proposed amendments are in good faith as they are based on new, additional investigation and analysis of the facts, which were precipitated on the Court's July 10, 2019 Order. Plaintiffs merely add more details surrounding their knowledge of, and reliance upon, Atkins' statements. (See Decl. of Meiselas ¶3–4 .) In addition, the amended facts rely upon the same nucleus of facts set forth in the Second Amended Complaint—that Plaintiffs generally "acted in reliance on the false, material representations and omissions made by Defendants, by buying tickets and merchandise associated with the Fyre Festival, which caused them injury"— but supplements these facts with new details disclosed to counsel. These amendments merely propose new facts that are "variations on the original theme" already stated in the Second Amended Complaint as to Plaintiffs' fraud and state law claims. Plaintiff's counsel did not "delay amending their complaint as a strategic matter," but rather expand upon their original claims to meet the level of particularity required for fraud.

Accordingly, Defendants cannot show bad faith by Plaintiffs in seeking leave to amend.

**C.   Defendants Will Not Suffer Prejudice as a Result of Plaintiffs' Amendment.**

Plaintiffs' proposed amendment does not fall "on the eve of trial," and will not require extensive additional discovery. In addition, the new allegations are based upon the same facts as in the previous Complaint, and do not assert new theories. Defendants cannot show that they will be prejudiced by the amendment.

To find whether an amended pleading would cause undue prejudice, courts consider whether the amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir. 1993). Undue prejudice may arise when an

amendment is "made on the eve of trial" and "result[s] in new problems of proof." *Ruotolo v. City of New York,* 514 F.3d 184, 192 (2d Cir. 2008) (citing *State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981)).

The mere fact that the opposing party will be required to undertake additional discovery, or it will require a party to invest additional resources in litigation, is not sufficient to warrant denial of an amendment. *S.S. Silberblatt, Inc. v. East Harlem Pilot Block—Building 1 Housing Development Fund Co., Inc.*, 608 F.2d 28, 28 (2d Cir. 1979); *Garcia v. Pancho Villa's of Huntington Village, Inc.,* 268 F.R.D. 160 (E.D.N.Y. 2010).

The party opposing the motion for leave to amend has the burden of "'establishing that an amendment would be prejudicial.'" *Pasternack v. Lab. Corp. of Am.,* 892 F. Supp. 2d 540, 529 (S.D.N.Y. 2012) (quoting *Fariello v. Campbell,* 860 F. Supp. 54, 70 (E.D.N.Y. 1994)).

The facts that Plaintiffs seek to amend are based on the same nucleus of facts, and essentially the same conduct as in the original Complaint, but merely add detail as to how individual plaintiffs and class members saw and relied upon Ja Rule's tweet. Because the Second Amended Complaint already asserted that Plaintiffs saw and relied upon Defendants' statements, the relevant facts are already known.

Given these circumstances, there should be no delay in the resolution of the case and Defendants will not suffer undue prejudice should the Court grant Plaintiffs leave to amend. *See State Teachers Ret. Bd.*, 654 F.2d at 856 (reversing denial of leave to amend sought promptly after the discovery of new facts, where "no motion for summary judgment had yet been filed by the defendants" and where "the amendment will not involve a great deal of additional discovery"). Accordingly, Defendants cannot show that they will suffer prejudice as a result of Plainitffs' Third Amended Complaint.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Leave to Amend the Complaint.


Dated: July 31, 2019                        Respectfully submitted,

By: *s/ Tina Glandian*
Tina Glandian

**GERAGOS & GERAGOS, APC**
TINA GLANDIAN (TG-3014)
256 5th Avenue
New York, NY 10001
Telephone: (213) 625-3900
Facsimile: (213) 232-3255
tina@geragos.com
MARK J. GERAGOS (*pro hac vice*)
BEN J. MEISELAS (*pro hac vice*)
**GERAGOS & GERAGOS, APC**
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255
geragos@geragos.com

*Lead Class Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2019, I Filed a true and correct copy of the foregoing on the case styled  In re FYRE FESTIVAL LITIGATION with the Clerk of the Court using CM/ECF, which sent notification of the filing to all parties registered to receive such notice in the case.

/s/ Tina Glandian