**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------

IN RE: FYRE FESTIVAL LITIGATION          Civil Action No. 1:17-cv-03296 (PKC)


..............................................................................


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF DANIEL JUNG'S MOTION**
**FOR CLASS CERTIFICATION AND DEFAULT JUDGMENT AS TO DEFENDANT**
**WILLIAM McFARLAND**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................iii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT ............................................................................................................................. 9

   I.     THE DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST
         DEFENDANT McFARLAND ................................................................................ 9

   II.    THE CLASS SHOULD BE CERTIFIED PURSUANT TO RULE 23
         OF THE FEDERAL RULES OF CIVIL PROCEDURE ............................................ 11

      A.  The Judgment Class Satisfies the Rule 23(a) Requirements ...................................... 12

          1.   The Proposed Judgment Class is so Numerous that Joinder of
              all Members is Impracticable ......................................................................... 12

          2.   Questions of Law or Fact Are Common to the Class ........................................... 12

          3.   Plaintiff Jung's Claims are Typical of the Class .................................................. 14

          4.   Lead Plaintiff Will Fairly and Adequately Protect the Interests
              of the Class ................................................................................................... 15

      B.  The Proposed Class is Certifiable Under Rule 23(b)(3) Because
         Common Questions of Law and Fact Predominate and a Class Action
         is the Most Efficient Method to Resolve Plaintiffs' Claims ...................................... 16

          1.   Common Questions of Fact and Law Predominate. ............................................ 16

          2.   A Class Action is Superior to Other Available Methods for the
              Fair and Efficient Adjudication of the Controversy. ............................................ 19

   III.  GERAGOS & GERAGOS, A PROFESSIONAL CORPORATION
         SATISFIES THE RULE 23(g) PREREQUISITES FOR APPOINTMENT
         AS CLASS COUNSEL ....................................................................................... 21

CONCLUSION ....................................................................................................................... 22

# TABLE OF AUTHORITIES

**CASES**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................ 11, 16

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) .................................................................................................... 16

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
   222 F.3d 52 (2d Cir. 200) ............................................................................................ 15

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
   504 F.3d 229(2d Cir. 2007) ......................................................................................... 12

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007) .......................................................................................... 19

*Double Green Produce, Inc. v. Forum Supermarket Inc.*,
   387 F. Supp. 3d 260 (E.D.N.Y. 2019) ...................................................................... 9–10

*General Tel. Co. of the Southwest v. Falcon*,
   457 U.S. 147 (1982) .................................................................................................... 14

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,
   973 F.2d 155 (2d Cir. 1992) ........................................................................................ 10

*In re NASDAQ Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ................................................................................ 12

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) ............................................................................ 13–14

*In re Sumitomo Copper Litig.*,
   182 F.R.D. 85 (S.D.N.Y. 1998) ................................................................................... 14

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ........................................................................................ 15

*Marisol v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997) .................................................................................. 12, 14

*Mazzei v. Money Store*,
   288 F.R.D. 45 (S.D.N.Y. 2012) ..................................................................................... 2

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010) ................................................................................... 11

*Phillips Petroleum v. Shutts*,
    472 U.S. 797 (1985) ................................................................................ 11

*Rodriguez v. It's Just Lunch, Int'l*,
    300 F.R.D. 125 (S.D.N.Y. 2014) ........................................................Passim

*Schwab v. Philip Morris USA, Inc.*,
    449 F. Supp. 2d 992 (E.D.N.Y. 2006)................................................ 2, 12

*Seijas v. Republic of Argentina*,
    606 F.3d 53 (2d Cir. 2010)...................................................................... 20

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
    546 F.3d 196 (2d Cir. 2008)...................................................................... 11

*Telford v. Ideal Mortg. Bankers, LTD.*,
    2010 WL 3924790 (E.D.N.Y. Aug. 17, 2010) ...................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ...................................................................... 11–12

**RULES**

Fed. R. Civ. P. 23(a) ........................................................................ 2, 12–16

Fed. R. Civ. P. 23(b) ....................................................................... 3, 16, 19, 21

Fed. R. Civ. P. 23(g) ...................................................................................... 21

Fed. R. Civ. P. 55 ............................................................................................ 1

Local Civil Rule 55.2........................................................................................ 1

Plaintiff and Proposed Class Representative Daniel Jung respectfully submits this Memorandum of Law in support of his Motion for Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure and for Default Judgment against Defendant William McFarland pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2.

## PRELIMINARY STATEMENT

Plaintiff Daniel Jung commenced his action against Defendant William McFarland with a Class Action Complaint filed in the United States District Court for the Central District of California on April 30, 2017. (C.D. Cal. Case No. 2:17-cv-03245, ECF No. 1.) Plaintiff Jung's case was subsequently transferred to this Court and was ultimately consolidated with a number of other related actions under S.D.N.Y. Case No. 1:17-cv-03296 (PKC) by Order of this Court dated March 13, 2018. (*See* S.D.N.Y. Case No. 1:17-cv-03296, ECF No. 35.[1]) Plaintiff Jung filed the operative Second Consolidated Amended Class Action Complaint ("Operative Complaint") on June 25, 2018. (ECF No. 56.) On March 26, 2020, Plaintiff Jung obtained a Certificate of Default against Defendant William McFarland as a result of Defendant McFarland's failure to plead or defend in this action within the time period required for him to do so. (ECF No. 109.) On May 18, 2020, this Court ordered Plaintiff to file and serve his Motion for Default Judgment by June 19, 2020. (ECF No. 110.)

By this Motion, Plaintiff Jung seeks entry of a default judgment against Defendant McFarland for seven million five hundred thousand dollars ($7,500,000). As detailed herein, an entry of default judgment under Rule 55 of the Federal Rules of Civil Procedure is warranted against Defendant McFarland because he has willfully failed to respond to the Operative Complaint in any way despite being properly served with it.

Plaintiff Jung also seeks certification of the following class (the "Judgment Class") for the purpose of entering default judgment against Defendant McFarland:

---

[1] All further ECF document numbers will refer to documents filed in S.D.N.Y. Case No. 1:17-cv-03296 unless otherwise specified.

1

> All persons who purchased tickets to and/or made travel
> arrangements in connection with Fyre Festival.[2]

Plaintiff Jung also seeks his appointment as the Class Representative and the appointment of Lead Counsel, GERAGOS & GERAGOS, A PROFESSIONAL CORPORATION, as Class Counsel for the Judgment Class.

The Operative Complaint alleges fraud-based common law tort and contract claims, as well as statutory claims arising under the consumer protection laws of various states.

Courts have held that class actions are appropriate to adjudicate fraud-based claims premised on a common course of conduct that affects multiple plaintiffs. *See, e.g.*, *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1123 (E.D.N.Y. 2006), *rev'd sub nom. McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) ("Fraud-based claims premised on a common course of conduct or scheme satisfy the predominance inquiry.").

In this class action, Plaintiff Jung seeks to prove that he, like other Judgment Class members, was injured by a common course of misconduct—Defendants' fraudulent advertisement of Fyre Festival as a luxurious event with premium accommodations. The individual members of the proposed Judgment Class have relatively small damages that are not feasible to pursue individually; accordingly, unless this action proceeds on a class basis, numerous Plaintiffs will be left without any redress for the damages they have suffered as a result of Defendants' fraudulent conduct. *See, e.g.*, *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 141 (S.D.N.Y. 2014) ("[G]iven the relatively modest amount of monetary damages for each individual plaintiff at issue, the Court finds that the 'class members have little interest in controlling the litigation individually' because it would be prohibitively expensive relative to the expected recovery." (quoting *Mazzei v. Money Store*, 288 F.R.D. 45, 65 (S.D.N.Y. 2012)).

As detailed below, this action satisfies all the requirements for class certification. The four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure—numerosity;

---

[2] Excluded from the Judgment Class are Defendants, their officers and directors, members of their immediate families, and the heirs, successors, or assigns of any of the foregoing.

commonality; typicality; and adequacy of representation—are all easily met. In fact, this Court previously chose to consolidate a number of formerly separate actions related to Fyre Festival into the instant case due to the high degree of relatedness between them. (*See* ECF No. 35.) This action also satisfies the two core requirements for certification under Rule 23(b)(3): predominance of common questions of law or fact and superiority of a class action over other available methods for adjudication. Thus, class certification is warranted.

## STATEMENT OF FACTS

Jeffrey Atkins (p/k/a Ja Rule) and Defendant William McFarland founded and organized Fyre Festival, an event that they advertised as a luxurious, celebrity-endorsed music festival. (Operative Compl. ¶ 46, ECF No. 56.) McFarland and Atkins retained Grant Margolin to assist them in promoting Fyre Festival. (Operative Compl. ¶ 46, ECF No. 56.) Defendants began promoting Fyre Festival in December 2016 through a social media blitz, using Facebook, Twitter, Instagram, and other online platforms to advertise Fyre Festival as an event that would be defined by exclusive culinary experiences, celebrity performers, luxurious accommodations, and copious activity options. (Operative Compl. ¶¶ 48–51, ECF No. 56.)

Defendants partnered with or hired celebrity Kendall Jenner to announce Fyre Festival's first headliners, paying her $250,000 for her services. (Operative Compl. ¶ 52, ECF No. 56.) Jenner reached an audience of millions, causing a dramatic increase in Fyre Festival ticket sales. (Operative Compl. ¶ 52, ECF No. 56.) Defendants' influencer-driven marketing campaign for Fyre Festival was directed to all fifty American states, as well as the world at large. (Operative Compl. ¶ 53, ECF No. 56.) In defiance of Federal Trade Commission requirements, almost all influencers who helped to promote Fyre Festival failed to note that their posts were actually advertisements or otherwise to disclose their relationship to the Fyre Festival brand. (Operative Compl. ¶ 54, ECF No. 56.)

Defendants' website promised that Fyre Festival would include a culinary experience catered by celebrity chefs; luxury eco-friendly domes and villas that would "feel just like a hotel" with the "comforts of home;" constant musical performances by live bands; and "an all-

star cast of performers, models, influencers and thought leaders attending." (Operative Compl. ¶ 56, ECF No. 56.) Defendants further created a video advertisement that underscored their representations and promised that Fyre Festival would feature "[t]he best in food, art, music, and adventure." (Operative Compl. ¶ 57, ECF No. 56.) Defendants Atkins, Margolin, and McFarland wrote, reviewed, and approved the video advertisement, and other promotional materials that made similar representations, including images posted on the Fyre Festival Facebook page. (Operative Compl. ¶ 57, ECF No. 56.)

In addition to being responsible for the marketing efforts made through Defendant Fyre Media, Inc. and Fyre Festival LLC and for other official Fyre Festival marketing, Jeffrey Atkins, a celebrity musician, also promoted Fyre Festival in his personal capacity through social media, including via an Instagram post stating: "Fyre Festival looks to be the biggest FOMO[3]-inducing event of 2017." (Operative Compl. ¶¶ 59–64, ECF No. 56.) In fact, on April 26, 2017, just one day before Fyre Festival was scheduled to begin, Mr. Atkins posted a tweet stating, "The stage is set!!! In less than 24 hours the first annual fyrefestival begins #festivallife . . . ." (Operative Compl. ¶ 64, ECF No. 56.) In reality, Atkins well knew by April 26, 2017 that the stage was not set for Fyre Festival, as the performers had either been told by Defendants and Atkins not to attend, or had cancelled. (Operative Compl. ¶ 64, ECF No. 56.)

Mr. Atkins was directly involved in working with the Bahamian government to obtain a site for Fyre Festival, and knew months before the planned start date for the event that there was no infrastructure for the site and it was unsuitable and unsafe for the planned event. (Operative Compl. ¶¶ 66, ECF No. 56.)

Mr. Atkins, Mr. Margolin, and Defendant McFarland made, inter alia, the following representations regarding Fyre Festival through websites, social media, promotional videos, and other advertising:

-   That Fyre Festival would be the cultural experience of the decade;

---

[3] FOMO is an acronym for "fear of missing out."

- That celebrities and/or celebrity bands Pusha T, Tyga, Desiigner, Major Lazer, Disclosure, Blink-182, G.O.O.D. Music, Migos, Lil Yachty, Kendall Jenner, Alessandra Ambrosio, Bella Hadid, Hailey Baldwin, Emily Ratajkowski, Elsa Hosk, Lais Ribeiro, and Hannah Ferguson would be in attendance at the festival;

- That the site of the festival would feature some of the most incredible beaches and waters in the world;

- That the festival would take place on an exclusive private island once owned by Pablo Escobar;

- That the festival would feature a secluded stage providing a sunrise-to-sunset lineup of high-quality electronic and deep house music;

- That Fyre Festival would be an immersive music festival experience lasting for two weekends;

- That tickets for Fyre Festival were limited;

- That Fyre Festival attendees would be able to meet and pet domesticated sharks belonging to Compass Cay Marina as part of their Fyre Festival Experience;

- That a luxury hotel existed at the site of Fyre Festival offering:

  o Morning yoga sessions overlooking a private beach;

  o A spa;

  o Two restaurants serving distinctly Bahamian cuisine, including conch fritters and freshly caught fish; and

  o A private boat shuttle to pristine white sand beaches.

(Operative Compl. ¶¶ 67, ECF No. 56.)

Defendants utterly failed to deliver the experience they had promised. (Operative Compl. ¶¶ 68–77, ECF No. 56.) The Festival was cancelled, no concert took place, and only the barest of food and accommodations were provided such that the health and safety of Fyre Festival attendees were jeopardized. (Operative Compl. ¶¶ 68–77, ECF No. 56.) Worse still, patrons of Fyre Festival were unable to escape the nightmare in which they found themselves, as they had

relied on Defendants for transportation and had not brought cash with them due to the fact that Defendants had promoted Fyre Festival as a cashless event that would utilize a preloaded electronic payment system. (Operative Compl. ¶ 76, ECF No. 56.) Transportation away from the Fyre Festival site was unavailable, and festival attendees thus found themselves trapped. (Operative Compl. ¶ 76, ECF No. 56.)

Defendants, including Defendant McFarland, had been aware months before the scheduled Fyre Festival start date that Fyre Festival was dangerously underequipped and posed serious risks to anyone who might attend. (Operative Compl. ¶ 78, ECF No. 56.) Defendants had planned no medical services, few wash and toilet facilities, and no electricity, and they had utterly failed to deliver any of the entertainment, activities, or amenities they had promised. (Operative Compl. ¶ 79, ECF No. 56.)

Defendants, including Defendant McFarland, knew that the site for Fyre Festival did not have proper infrastructure and would need to be built from the ground up. (Operative Compl. ¶ 81, ECF No. 56.) Defendants, however, failed to provide such infrastructure and, as a result, the Fyre Festival site was lacking in basic amenities when guests arrived. (Operative Compl. ¶ 81, ECF No. 56.) To begin with, the Fyre Festival site was a defunct, semi-industrial, semi-manmade landholding on Great Exhuma, not a private island formerly belonging to Pablo Escobar as advertised. (Operative Compl. ¶ 81, ECF No. 56.) Moreover, the promised luxury "eco-domes" had never been built; instead the only lodging available was tents featuring wet blankets for guests to sleep in. (Operative Compl. ¶ 81, ECF No. 56.) The advertised bathroom and shower facilities were nowhere to be found, with only a small number of portable toilets available to guests, and just three showers for the hundreds of people arriving. (Operative Compl. ¶ 81, ECF No. 56.) Defendants had terminated their catering agreement with Starr Catering Group several weeks prior to the start of Fyre Festival, yet they never informed ticket buyers about this development, and instead continued to represent that the event would be catered by Starr. (Operative Compl. ¶ 83, ECF No. 56.) Only very basic meals were thus available at the Fyre Festival site, which were served out of makeshift tents. (Operative Compl. ¶ 82, ECF No. 56.)

Bands whose appearances Defendants had promised at Fyre Festival notified Defendants prior to the event that they would not be appearing due to lack of progress in setting up the event, but Defendants, including Defendant McFarland, did not report these developments to Fyre Festival ticket buyers. (Operative Compl. ¶ 84, ECF No. 56.) Defendants also fell through on their promises to provide security at Fyre Festival, and as a result, there were numerous incidents of festival attendees being mugged, robbed, and otherwise terrorized by locals without interference. (Operative Compl. ¶ 84, ECF No. 56.) Artists and models that Defendants had promised would attend Fyre Festival also were not present. (Operative Compl. ¶ 85, ECF No. 56.)

Defendants, including Defendant McFarland, were aware of Fyre Festival's problems before the start date of the event and were aware that the representations they had made about Fyre Festival were false. (Operative Compl. ¶ 86, ECF No. 56.) Troublingly, before Fyre Festival ticketholders had arrived, Defendants urged artists not to attend due to the dangerous and uninhabitable conditions at the site of the festival. (Operative Compl. ¶ 86, ECF No. 56.)

Marketers for Fyre Festival repeatedly warned Defendants, including Defendant McFarland, that Fyre Festival would not be up to the standard they had advertised (something that Defendants already knew or should have known, and certainly could have discovered long before marketing began). (Operative Compl. ¶ 89, ECF No. 56.) In or about March 2017, Defendants were advised by their marketing team to roll over ticket purchasers' tickets to 2018 and start planning immediately for the following year rather than attempt to hold Fyre Festival on the date for which it originally had been scheduled. (Operative Compl. ¶ 89, ECF No. 56.) Defendants chose to ignore the advice of their marketing team and to proceed with holding Fyre Festival on the dates originally scheduled despite knowing that they would not be able to deliver the experiences they had advertised. (Operative Compl. ¶ 89, ECF No. 56.)

On or about April 10, 2017 (a few weeks before Fyre Festival), an entity known as EHL Funding LLC extended a $3,000,000 loan for funding of Fyre Festival, which Mr. Atkins and Defendant McFarland signed as personal guarantors. (Operative Compl. ¶ 92, ECF No. 56.)

Payments on the loan were to commence on April 14, 2017, and 40% of the receipts from Fyre Festival were to be paid to EHL Funding. (Operative Compl. ¶ 92, ECF No. 56.) At or around the time that Defendant McFarland signed and guaranteed the EHL Funding loan, Mr. Atkins, Mr. Margolin, and Defendant McFarland pushed consumers to load up more and more money onto "FyreBand" wristband devices that were advertised as the means by which Fyre Festival would be able to operate as a cashless event. (Operative Compl. ¶ 92, ECF No. 56.) Defendants, including Defendant McFarland, clearly knew that Fyre Festival was under mountains of debt, that the festival was otherwise in trouble, and that it could not proceed as represented. (Operative Compl. ¶ 92, ECF No. 56.) The EHL Funding loan was not fully repaid, and EHL Funding commenced a lawsuit to enforce the loan and guarantees: *EHL Funding LLC v. William McFarland, etc.*, 652546/17 (Supreme Ct., N.Y. Co.).

Despite the problems with the EHL Funding loan and other issues, Defendants, including Defendant McFarland, not only failed to notify consumers that there were issues with Fyre Festival moving forward or to warn ticket buyers about the dangerous conditions awaiting them at the festival site, they marketed the event even more vigorously, raising prices and encouraging consumers to load funds onto their FyreBands. (Operative Compl. ¶ 93, ECF No. 56.) Defendants also advised performers not to attend Fyre Festival, but did not alert the public of this fact. (Operative Compl. ¶ 93, ECF No. 56.)

Defendants, including Defendant McFarland, did not cancel Fyre Festival until the morning of the first day of the event, after thousands of attendees had already arrived and become stranded at the site of the festival without basic life necessities. (Operative Compl. ¶ 94, ECF No. 56.)

Plaintiff Jung and the other named Plaintiffs in this action became aware of Fyre Festival through online social media marketing generated by the organizers of Fyre Festival and social media influencers with whom they had partnered. (Declaration of Daniel Jung "Jung Decl." ¶ 2; Declaration of Lauren Mainero "Mainero Decl." ¶ 2.; Declaration of Hallie Wilson "Wilson Decl." ¶ 2; Declaration of Zenovia Pittas "Pittas Decl." ¶ 2.) The advertising generated by

Defendants, including Defendant McFarland, and Defendants' media partners led Jung and the other named Plaintiffs to believe that Fyre Festival would be a luxurious event held on a private island and featuring luxury food and accommodations, as well as celebrity guests and musical performers. (Jung Decl. ¶ 2; Mainero Decl. ¶ 2; Wilson Decl. ¶ 2; Pittas Decl. ¶ 2.) Defendants, including Defendant McFarland, knew that the representations they made in their advertising for Fyre Festival were false or else failed to correct these representations or communicate to Plaintiffs that these representations had become false once this became apparent to Defendants. (*See* Jung Decl. ¶¶ 3–4; Mainero Decl. ¶¶ 3–4; Wilson Decl. ¶ 3–4; Pittas Decl. ¶¶ 3–4.) Due to Defendants' false representations and concealment of material facts regarding Fyre Festival, Plaintiffs were induced to purchase admission to the event and to make travel arrangements in connection with it. (*See* Jung Decl. ¶¶ 3–6; Mainero Decl. ¶¶ 3–6; Wilson Decl. ¶ 3–6; Pittas Decl. ¶¶ 3–6.) Had Plaintiffs known the true facts, they never would have purchased such admission or made such travel arrangements. (Jung Decl. ¶ 5; Mainero Decl. ¶ 5; Wilson Decl. ¶ 5; Pittas Decl. ¶ 5.) Defendants deceived and defrauded Plaintiffs by failing to deliver the experience they had advertised. (Jung Decl. ¶ 7; Mainero Decl. ¶ 7; Wilson Decl. ¶ 7; Pittas Decl. ¶ 7.) As a result, Plaintiffs were injured in that Fyre Festival was cancelled and Plaintiffs lost the money they had spent on admission to the event and travel arrangements they had made in anticipation of attending it. (Jung Decl. ¶ 8; Mainero Decl. ¶ 8; Wilson Decl. ¶ 8; Pittas Decl. ¶ 8.)

## ARGUMENT

### I.      THE DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANT McFARLAND.

The decision to grant a motion for default judgment is left to the sound discretion of the district court. In determining whether to grant a default judgment, the court looks to the same factors which apply to a motion to set aside a default judgment, namely: (1) whether the defendant's default was willful; (2) whether the

> defendant has a meritorious defense to the plaintiff's claims; and
> (3) the level of prejudice the non-defaulting party would suffer as a
> result of the denial of the motion for default judgment.

*Double Green Produce, Inc. v. Forum Supermarket Inc.*, 387 F. Supp. 3d 260, 265–66 (E.D.N.Y. 2019) (citation omitted).

Here, the Operative Complaint in this action was served upon Defendant McFarland on January 31, 2020, and a Proof of Service attesting to this fact was filed on February 25, 2020. (ECF No. 106.) Despite being personally served and having had nearly two months to respond to the Operative Complaint, Defendant McFarland failed to answer the Operative Complaint or otherwise plead or defend in this action, and his time in which to do so expired. Plaintiff thus obtained a signed and stamped Certificate of Default as to Defendant McFarland, which was issued on March 26, 2020. (ECF No. 109; Declaration of Ben Meiselas "Meiselas Decl." ¶ 6, Ex. A.)

A default judgment is warranted. Defendant McFarland has willfully failed to respond to the Operative Complaint in any way, despite being properly served with the Operative Complaint. Moreover, since Defendant McFarland has not filed an answer, there is no evidence of any defense. In addition, denying Plaintiff's instant Motion would be prejudicial to Plaintiff and the putative class as there are "no additional steps available to secure relief" in this Court against Defendant McFarland. *See Telford v. Ideal Mortg. Bankers, LTD.*, No. CV 09-5518, 2010 WL 3924790, at *3 (E.D.N.Y. Aug. 17, 2010), *report and recommendation adopted*, No. 09-CV-5518 JS AKT, 2010 WL 3909313 (E.D.N.Y. Sept. 27, 2010).

As a result of Defendant McFarland's default, Defendant McFarland is deemed to concede "all well pleaded allegations of liability" with the exception of allegations that pertain to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). As set forth in the Operative Complaint, and in detail above, Defendant McFarland perpetrated fraud and a number of other related wrongs by making false representations about Fyre Festival in online marketing for the event, and by otherwise concealing material facts about

the Festival from the consuming public.

Although Defendant McFarland's default does not constitute an admission of damages, Plaintiff has submitted evidence supporting his request for damages. The Operative Complaint alleges that purchasers of Fyre Festival tickets suffered damages in that they expended money on Fyre Festival tickets, travel expenses, and other associated purchases for an event that did not deliver as advertised and was ultimately cancelled. (Operative Compl. ¶¶ 10–11, 67–68, 101.)

Plaintiff's counsel discussed the issue of damages with each of the named Plaintiffs who submitted a Declaration in support of the instant Motion. Based on these discussions, Plaintiff's counsel determined that $1500 is a reasonable and conservative estimate of a typical Plaintiff's losses. (Meiselas Decl. ¶ 7.) Media reports indicate that approximately 5000 people purchased tickets to Fyre Festival. (Meiselas Decl. ¶ 8, Ex. C.) Plaintiff's counsel thus estimates that class-wide damages for the Judgment Class are approximately $7,500,000. (Meiselas Decl. ¶ 8.) The Meiselas Declaration sets forth the calculations utilized in arriving at this estimate. (Meiselas Decl. ¶ 8.)

## II.   THE CLASS SHOULD BE CERTIFIED PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

The requirements for the certification of a putative class under Rule 23 of the Federal Rules of Civil Procedure are (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). The Court must also determine whether the action is maintainable under Federal Rule 23(b)(1), (2), or (3). *Id.* at 614. Class actions promote judicial economy by permitting plaintiffs to bring together claims that would otherwise be "uneconomical to litigate individually. [M]ost of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 808–09 (1985). "The preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements." *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 89–90 (D. Conn. 2010) (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)). "A party seeking class certification must affirmatively

11

demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Here, the proposed class satisfies all requirements set forth above.

Courts have repeatedly held that class actions are appropriate to adjudicate fraud-based claims premised on a common course of conduct that affects multiple plaintiffs. *See, e.g.*, *Schwab*, 449 F. Supp. 2d at 1123 ("Fraud-based claims premised on a common course of conduct or scheme satisfy the predominance inquiry."). Here, the Operative Complaint alleges the type of fraud-based claims that have been routinely certified as class actions.

A.      **The Judgment Class Satisfies the Rule 23(a) Requirements.**

1.      **The Proposed Judgment Class is so Numerous that Joinder of all Members is Impracticable.**

Rule 23(a)(1) requires the class to be so numerous that joinder of all of the members of the class would be "impracticable."  Courts have been clear that impracticable does not mean impossible. *See Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244–45(2d Cir. 2007). A plaintiff's lack of knowledge of the exact number of persons" in the class is not a bar to certification." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (S.D.N.Y. 1996).  There is "no magic minimum number that breathes life into a class." *Id.*

Here, media reports indicate that approximately 5000 people purchased tickets to the event. (Meiselas Decl. ¶ 8, Ex. C.) Thus, the numerosity requirement of Rule 23(a)(1) is clearly fulfilled.

2.      **Questions of Law or Fact Are Common to the Class.**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The "commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). When plaintiffs allege a common course of conduct arising out of a common nucleus of operative facts, the commonality

12

requirement of Rule 23(a)(2) is generally satisfied. *See, e.g.*, *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000).

Common questions of law and fact exist as to all members of the proposed Judgment Class and predominate over any questions that affect only individual members of the class. As outlined in the Operative Complaint, the common questions of law or fact prevalent in this case include:

- Whether Defendants, including Defendant McFarland, made false representations about Fyre Festival, including misrepresenting the musical acts that would perform at Fyre Festival and concealed, suppressed and omitted material facts, such as the island's inadequate infrastructure and the lack of preparedness of accommodating persons at Fyre Festival, and whether Defendants created an unsafe environment for attendees;

- If so, whether Defendants, including Defendant McFarland, knew or should have known that their representations were false or were reckless as to their veracity at the time they were made and their omissions material;

- Whether Defendants, including Defendant McFarland, negligently misrepresented various facts regarding Fyre Festival or were otherwise negligent or grossly negligent;

- Whether Defendants, including Defendant McFarland, breached any implied or explicit contractual obligations to ticket buyers and to attendees of Fyre Festival;

- Whether Defendants, including Defendant McFarland, violated various consumer protection statutes;

- Whether Defendants, including Defendant McFarland, created an unsafe environment at Fyre Festival; and

- Whether as a result of Defendants' misconduct, including the misconduct of Defendant McFarland, Plaintiff and the proposed Judgment Class are entitled

> to damages, restitution and/or other remedies to which Class members are entitled as a result of Defendants' wrongful conduct, and, if so, the amount and nature of such relief.

The declarations submitted alongside this Motion make clear that there are significant common questions of law and fact. (Jung Decl. ¶¶ 2–10; Mainero Decl. ¶¶ 2–10; Wilson Decl. ¶ 2–10; Pittas Decl. ¶¶ 2–10.) Resolution of these key factual and legal issues will determine the outcome of this case for all members of the proposed Judgment Class and does not require any individual analysis.

### 3. Plaintiff Jung's Claims are Typical of the Class.

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that the lead plaintiff's claims be typical of the claims of the class. The Supreme Court has noted that the "commonality and typicality requirements of Rule 23(a) tend to merge." *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Typicality does not require that the situations of the named representatives and the class members be identical." *Oxford Health Plans*, 191 F.R.D. at 375 (citation omitted); *see also In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 94 (S.D.N.Y. 1998). The typicality prerequisite "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol*, 126 F.3d at 376.

Here, Plaintiff Jung's claims are clearly typical of the proposed Judgment Class. Plaintiff and the members of the Class sustained similar damages arising out of Defendants' wrongful and fraudulent conduct regarding the Fyre Festival. As demonstrated by the Declarations filed concurrently with this Motion, Plaintiff and the proposed Judgment Class members' claims all allege the same basic premises: that Plaintiffs were deceived by Defendants in this action, who failed to provide the experience they advertised, resulting in damages to Plaintiffs in the form of lost money spent on admission to Fyre Festival and arrangements made in anticipation of attending the event.  (Jung Decl. ¶¶ 2–10; Mainero Decl. ¶¶ 2–10; Wilson Decl. ¶ 2–10; Pittas Decl. ¶¶ 2–10.)

Because the proposed Judgment Class members' claims all arise from the same uniform conduct by Defendants and resulted in the same or similar injury, typicality is satisfied.

### 4. Lead Plaintiff Will Fairly and Adequately Protect the Interests of the Class.

The final prerequisite under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The court's inquiry is "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class; and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 200) (citation omitted). A conflict that would prevent a lead plaintiff from satisfying the Rule 23(a)(4) requirement "must be fundamental, and speculative conflict should be disregarded at the class certification stage." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (citations omitted).

Here, Plaintiff Jung has personal experience with the claims of the lawsuit and is familiar with the underlying facts. There is no conflict of interest between him and the absent class members. Indeed, Mr. Jung's interests are fully aligned with those of the proposed Judgment Class members, because the basis of Mr. Jung's claims and the nature of his injuries are the same as those of the absent class members. Additionally, Plaintiff Jung's Declaration establishes that he has been cooperating with his attorneys to prosecute this case vigorously and has agreed to fulfill the duties of a class representative. (Jung Decl. ¶¶ 11–12.)

The adequacy of Plaintiff's counsel is also fully satisfied. The class is represented by GERAGOS & GERAGOS, A PROFESSIONAL CORPORATION, a law firm with extensive experience in complex and class action litigation. (*See* Meiselas Decl. ¶ 10.) The firm representing Plaintiff and the Proposed Class is experienced in class action litigation, having successfully conducted numerous consumer class actions as set forth in the declaration of Ben Meiselas. (*See* Meiselas Decl. ¶ 10.) Counsel remains committed to devoting all necessary resources to prosecuting this matter and possesses the resources necessary to represent the Proposed Class.

**B.      The Proposed Class is Certifiable Under Rule 23(b)(3) Because Common Questions of Law and Fact Predominate and a Class Action is the Most Efficient Method to Resolve Plaintiffs' Claims.**

In addition to satisfying the requirements of Rule 23(a), the proposed class must satisfy at least one of the three requirements listed in Rule 23(b). Here, Plaintiffs point to Rule 23(b)(3), which applies when the Court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**1. Common Questions of Law and Fact Predominate.**

Rule 23(b)(3) requires that a plaintiff must satisfy Rule 23(a)'s above-mentioned prerequisites of numerosity, commonality, typicality, and adequacy of representation, and must also establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (quoting Fed. R. Civ. P. 23(b)(3)). The essential question is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

The Second Circuit has held that fraud claims based on uniform misrepresentations made to all members of a class, unlike those based on individualized misrepresentations, are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof. *Rodriguez*, 300 F.R.D. at 138–39. In assessing whether a defendant made materially uniform misrepresentations, no particular form of evidentiary proof is dispositive. *Id.*

In *Rodriguez*, the court analyzed whether common questions of law and fact predominated in what essentially amounted to claims of fraud by determining that, "(1) defendants made materially uniform representations to the entire prospective class; (2) the materiality of those representations can be demonstrated on a classwide basis; and (3) the class's

16

reliance on [a particular defendant]'s representations can similarly be demonstrated on a classwide basis through generalized proof." *Rodriguez*, 300 F.R.D. at 141.

Here, the essential facts and legal claims are nearly the same as those at issue in *Rodriguez*, so the same analysis applies. The gravamen of Plaintiffs' claims is that they were duped by Defendants' false promises into spending significant amounts of money, time, and resources on travel to the Bahamas and tickets for a music festival that did not deliver the experience advertised and was ultimately cancelled. As alleged in the Operative Complaint, Defendants, including Defendant McFarland, represented that Fyre Festival would provide: a culinary experience catered by celebrity chefs; luxury eco-friendly domes and villas that would "feel just like a hotel" with the "comforts of home"; musical bands that would be performing day and night; and an "all-star cast of performers, models, influencers, and thought leaders attending." (Operative Compl. ¶ 56, ECF No. 56.)

Defendants also created and provided a video advertisement that further underscored their representations. (Operative Compl. ¶ 57, ECF No. 56.) Specifically, the video advertisement represented that Fyre Festival would entail "[t]he best in food, art, music and adventure." (Operative Compl. ¶ 57, ECF No. 56 (alteration in original).) Defendants marketed and promoted Fyre Festival both nationally and internationally to raise ticket sales. (Operative Compl. ¶ 57, ECF No. 56.) Defendants, also made many other false representations about Fyre Festival through websites, social media, promotional videos, other advertising, and Instagram accounts, including that Fyre Festival would be "the cultural experience of the decade"; and that the event would be attended by celebrities/celebrity bands Pusha T, Tyga, Desiigner, Major Lazer, Disclosure, Blink-182, Migos, Lil Yachty, G.O.O.D. Music, Kendall Jenner, Alessandra Ambrosio, Bella Hadid, Hailey Baldwin, Emily Ratajkowski, Elsa Hosk, Lais Ribeiro, Hannah Ferguson, and others. (Operative Compl. ¶ 67.)

Defendants' misrepresentations were thus material and uniformly communicated to all members of the proposed Judgment Class. The misrepresentations listed above comprise just some of the blatant lies communicated through marketing materials that were created by or at the

direction of Defendants, including Defendant McFarland, and were available for the entire world to see. Fyre Festival organizers such as Defendant McFarland directed web and social media traffic to several key promotional items such as the Fyre Festival website, concert lineup poster, and promotional video, all of which were created specifically to induce customers to purchase tickets, travel, and lodging for the purported music, art, and food festival. As *Rodriguez* reasoned, certification is appropriate because the Defendants made "core representation[s] to all members of the class in a materially uniform fashion, making the issue appropriate for adjudication on a classwide basis. *Rodriguez*, 300 F.R.D. at 139.

Second, certification may be appropriate as long as Plaintiffs can prove reliance "through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue)." *Id.* In light of Second Circuit caselaw, many courts in this Circuit "have held that reliance may be proved through circumstantial evidence that plaintiffs would not have purchased a product but for a defendant's uniform misrepresentations . . . about that product." *Id.*

In *Rodriguez*, the court held that the misrepresentations at issue were so fundamental that it was not only reasonable to infer that the defendants had intended for their representations to induce the plaintiffs' reliance, but also reasonable to infer that the plaintiffs had in fact relied on those representations in becoming the defendants' customers. *Id.* Here, similarly, Defendants advertised and promoted Fyre Festival as a posh, cutting-edge music festival to millions around the world, knowing all the while that they were entirely unable to provide an experience that even remotely resembled the one they touted. As a result, Defendants deceived Plaintiffs into spending substantial sums of money on tickets and travel accommodations for a festival that delivered none of what was promised and that was ultimately cancelled. Plaintiffs expected to get something closely resembling what was advertised, a posh music festival with big-name artists like Blink-182, Major Lazer, and G.O.O.D. Music. None of the advertised headlining acts performed, or even showed up to the event. Indeed, Defendants actually warned the headlining artists not to show up, but failed to provide the same warning to Plaintiffs. Plaintiffs were

uniformly disappointed, as Fyre Festival completely failed to deliver what Defendants had promised and was ultimately cancelled. The common issues of law and fact surrounding Defendants' misrepresentations and Plaintiffs' reliance on these misrepresentations are equally applicable to all Plaintiffs and thus predominate.

## 2. A Class Action is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy.

Rule 23(b)(3) instructs that in considering whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," the court is to consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Along with the predominance requirement, the superiority requirement "ensures that [a] class will be certified only when it would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007). *Rodriguez*, 300 F.R.D. at 141.

Here, all Plaintiffs' claims can be adjudicated efficiently through the class action device. First, given the relatively modest amount of monetary damages for each individual Plaintiff involved, class members have little interest in controlling the litigation individually because it would be prohibitively expensive and time-consuming relative to the expected

recovery.  *See Rodriguez*, 300 F.R.D. at 141. It is simply unlikely that Plaintiffs would be able to pursue their claims individually because of the time, expense, and difficulty individual litigation would entail. Plaintiffs hail from all over the world, and their damages and associated harm largely result from the same set of facts. A class action is thus the most efficient way to ensure that justice is served.

Second, the instant action already represents a consolidation of multiple cases from around the United States based on Defendants' fraud in connection with Fyre Festival. (*See* ECF No. 35.) Thus, this Court has already aggregated many individual claims by members of the proposed Judgment Class, and should certify the proposed Judgment Class to enable these individuals to obtain relief.

The third consideration factor—the desirability or undesirability of concentrating the litigation of the claims in this forum—weighs in favor of certification. As noted above, this Court has already consolidated multiple Fyre Festival cases from around the United States in this action, and has thus recognized the significant advantages of concentrating the Fyre Festival litigation in this forum. Further, at least one Defendant maintains its principal place of business in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred here, as Defendants marketed and sold Fyre Festival tickets here. Additionally, many members of the proposed class are residents of this District. The fact that a significant number of class members are located in this District makes this forum somewhat more appropriate than others for the litigation of the parties' controversy. Significantly, Defendant does not argue that any other forum would be more appropriate. *Rodriguez*, 300 F.R.D. at 142.

The fourth factor—"the likely difficulties in managing a class action"—also weighs in Plaintiffs' favor. As the court pointed out in *Seijas v. Republic of Argentina*, "whether the court is likely to face difficulties managing a class action bears on whether the proposed class satisfies the predominance and superiority requirements." *Seijas v. Republic of Argentina,* 606 F.3d 53, 58 (2d Cir. 2010). Here, for the reasons explained above, common issues will predominate over

any individual issues, and can be disposed of uniformly. This case is thus manageable as a class action. *Rodriguez*, 300 F.R.D. at 142.

For all these reasons, the proposed Judgment Class is certifiable under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

### III.   GERAGOS & GERAGOS, A PROFESSIONAL CORPORATION SATISFIES THE RULE 23(g) PREREQUISITES FOR APPOINTMENT AS CLASS COUNSEL.

Rule 23(g)(1)(A) sets out the factors a court must consider in appointing class counsel, including:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class . . . .

Fed. R. Civ. P. 23(g). Under these criteria, GERAGOS & GERAGOS, A PROFESSIONAL CORPORATION is highly qualified to serve as class counsel in this action.

GERAGOS & GERAGOS is a prominent law firm that has successfully litigated numerous complex class action cases in federal court. (*See* Meiselas Decl. ¶¶ 10–11.) GERAGOS & GERAGOS remains committed to devoting all necessary resources to prosecuting this matter, and possesses the resources necessary to represent the proposed Judgment Class. (*See* Meiselas Decl. ¶¶ 10–12.) In this case, GERAGOS & GERAGOS has already demonstrated its adequacy by vigorously pursuing the interests of all members of the proposed Judgment Class, including by seeking a default judgment against Defendant McFarland.

## **CONCLUSION**

For the reasons stated herein and in the accompanying supporting Declarations and exhibits, Plaintiff Jung respectfully requests that the Court issue an Order: (1) entering a default judgment against Defendant McFarland for seven million five hundred thousand dollars ($7,500,000); (2) certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying the Judgment Class defined herein for the purpose of entering the default judgment; (3) appointing Plaintiff Daniel Jung as the class representative; (4) appointing GERAGOS & GERAGOS, A PROFESSIONAL CORPORATION as Class Counsel; and (5) granting such other and further relief as the Court may deem just and proper.

Dated: June 19, 2020                    Respectfully submitted,

GERAGOS & GERAGOS, APC

By: /S/ *Benjamin J. Meiselas*
Benjamin J. Meiselas (*admitted pro hac vice*)
Lead Class Counsel for Plaintiffs
644 South Figueroa Street
Los Angeles, CA 90017
United States of America
Tel: (213) 625-3900
Fax: (213) 232-3255
geragos@geragos.com