UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
IN RE: FYRE FESTIVAL LITIGATION

17-cv-3296 (PKC)

OPINION AND
<u>ORDER</u>

------------------------------------------------------------x

CASTEL, U.S.D.J.

Plaintiff Daniel Jung moves for the entry of default judgment against defendant William McFarland, and to certify a world-wide class of "[a]ll persons who purchased tickets to and/or made travel arrangements in connection with Fyre Festival" pursuant to Rule 23, Fed. R. Civ. P.  Jung asserts that he and the members of the putative class were injured by fraudulent statements of Fyre Media, Inc. ("Fyre Media") promoting the Fyre Festival as a luxurious event with premium accommodations, fine cuisine, amenities, and performing artists.  He further asserts that McFarland directed and caused these statements to be made.  For the reasons explained herein, the motion for the entry of default judgment will be denied but the Court will conduct an inquest into certain matters pertaining to the fraud claims.  The motion for class certification will be denied.

BACKGROUND

The allegations in this case are well described in this Court's Opinion and Order of July 10, 2019 (Doc 90 ("MTD Opinion"))[1] granting the motions of Grant Margolin and Jeffrey Atkins to dismiss the Second Consolidated Amended Complaint ("SCAC"), and in its Opinion and Order of November 7, 2019 (Doc 105) denying plaintiffs' motions for

---

[1] It is reported as <u>In re Fyre Festival Litig.</u>, 399 F. Supp. 3d 203 (S.D.N.Y. 2019).

reconsideration of the dismissal of Margolin and for leave to further amend their complaint.[2]  For

this reason, only a brief description of the facts follows.

       The SCAC purported to allege against McFarland, Atkins and Margolin claims of

fraud, negligent misrepresentation, negligence, gross negligence, inducement of breach of

contract, unjust enrichment, and state statutory claims under the laws of New York, N.Y. Gen.

Bus. Law § 349, California, Cal. Bus. & Prof. Code §§ 17200 et seq., 17500 et seq., Cal. Civil

Code § 1750 et seq., Colorado, Col. Rev. Stat. § 6-1-102(6) et seq., and Illinois, Ill. Comp. Stat.

§§ 505 et seq., 510/2 et seq.  The seven named plaintiffs are ticket buyers and/or attendees of the

Fyre Festival who allege that McFarland was the founder, owner, director, and CEO of Fyre

Media, Inc., the company planning and overseeing Fyre Festival since December 2016.  (SCAC

¶¶ 3–6.)  The crux of Plaintiffs' allegations is that McFarland directed the promotion and

marketing of Fyre Festival as a luxury music festival through social media accounts, promoters,

and websites, claiming that attendees would be provided with amenities such as "morning yoga

and guided meditation on the beach" or "local seafood, Bahamian-style sushi and even a pig

roast" when in reality he knew that the Festival would be a "colossal failure that would place the

lives of attendees in danger for weeks if not months in advance."  (Id. ¶¶ 6, 48–52.)  Plaintiffs

seek damages for their costs in purchasing tickets and arranging travel to the remote island where

the festival was to be held, as well as damages resulting from the chaos that took place once

arriving on the island.

---

[2] It is reported on Westlaw as In re Fyre Festival Litig., 2019 WL 5799762 (S.D.N.Y. Nov. 7, 2019).

DEFAULT JUDGMENT

Curiously, only Daniel Jung, but not the other six individuals represented by the same counsel, move for a default judgment.  (Doc 114 ("P. Mem.") at 5 ("Plaintiff and Proposed Class Representative Daniel Jung respectfully submits this Memorandum of Law in support of his Motion . . . for Default Judgment.")).  Mr. Jung, who does not claim to be an attorney, purports to move on behalf of his co-plaintiffs. The apparent hope was that the Court would certify a class with Mr. Jung as class representative before considering the default motion.  The Court will treat the motion for a default as if made by all seven named plaintiffs who are represented by common counsel.

McFarland was served with a summons and the first complaint on May 15, 2017. (Doc 6.)  He has not appeared in this action.  Plaintiffs amended their complaint on June 25, 2018.  (Doc 56.)  McFarland was served the SCAC on January 31, 2020.  (Doc 106.)  The Clerk issued a Certificate of Default as to McFarland with respect to the SCAC on March 26, 2020. (Doc 109.)  Thereafter, plaintiff Jung moved the Court for entry of a default judgment.  Rule 55(b)(2), Fed. R.Civ. P.[3]

The Court has discretion on a motion for entry of a default judgment to accept the allegations of the complaint as true and draw all reasonable inferences in favor of the party seeking the default judgment.  See, e.g., Vera v. Banco Bilbao Vizcaya Argentaria, S.A., 946 F.3d 120, 135 (2d Cir. 2019); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). Also "a district court has discretion under Rule 55(b)(2) once a default is determined to require

---

[3] Plaintiff seeks no relief on this motion against Fyre Media, who has not appeared in this action.

proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action."  Id.

The Court accepts as true that McFarland controlled Fyre Media, which created and posted promotional videos, created a website, and enlisted celebrities to promote the festival with claims of high-end food, music, and lodging.  (SCAC ¶¶ 30, 46–57, 67.)  These advertisements and promotions continued even though McFarland allegedly knew that the festival would not be anything like these high-end representations.  (Id. ¶¶ 78–94.)

Principally for reasons stated in the Court's July 10, 2019 Opinion and Order, the motion for a default judgment against McFarland will be denied on the claims for negligent misrepresentation, inducement of breach of contract, negligence and gross negligence and violation of New York General Business Law.  A default judgment on the negligent misrepresentation claim is denied because the SCAC does not allege "a special relationship of trust or confidence between the parties."  DynCorp v. GTE Corp., 215 F. Supp. 2d 308, 329 (S.D.N.Y. 2002); (MTD Opinion at 20.).  A default judgment on the inducement of breach of contract claim is denied because the SCAC allegations do not make the requisite showing of a cause-and-effect relationship between the actions taken by McFarland and Fyre Media's nonperformance of its contractual duties.  See RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 410 (S.D.N.Y. 2009), aff'd, 387 F. App'x 72 (2010); (MTD Opinion at 24.).  A default judgment on the claims for negligence and gross negligence is denied because the alleged duty is not distinct from the contractual duties that are alleged, which are the subject of the contract claims and negligent misrepresentation claim.  (MTD Opinion at 22–23.)  A default judgment on the unjust enrichment claim is denied because the claim is duplicative of plaintiffs' tort and contract claims.  See TheECheck.com, LLC v. NEMC Fin. Servs. Group Inc., 16-cv-8722, 2017

WL 2627912, at *4 (S.D.N.Y. June 16, 2017) (Castel, J); (MTD Opinion at 25.).  A default

judgment on the New York General Business Law claim is denied because the SCAC does not

allege sufficient New York ties to the alleged deception.  (MTD Opinion at 28.)  Lastly, although

not directly addressed in the July 10, 2019 Opinion and Order, a default judgment for a violation

of the Illinois Deceptive Trade Practices Act is denied because the SCAC does not allege a

likelihood of future damages, required for the injunctive relief the statute provides.  Aliano v.

Louisville Distilling Co., LLC., 115 F. Supp. 3d 921, 929 (N.D. Ill. 2015).

      The remaining claims against McFarland are the common law fraud claim and the

fraud-like state statutory claims (the third, tenth, eleventh, twelfth, thirteenth and fourteenth

claims for relief).  But the survival of even these claims is tenuous.  The SCAC does not assist in

distinguishing between statements that could support a claim of actionable fraud and those that

are on their face either puffery, e.g. SCAC ¶ 67(i) ("Fyre is an experience and a festival"); ¶

67(a) ("[t]he cultural experience of the decade") ¶ 67(c)("you'll [] find yourself among some of

the most incredible beaches and waters in the world"), or not plausibly alleged to be false, e.g. id.

¶ 67(l) ("[y]ou can plan an excursion with a local dive shop. . ."); ¶ 67(k) ("[p]lan a stopover . . .

to meet the pet sharks. . .").

      Plaintiff Jung does not allege that from its inception the defendants planned and

promoted the Fyre Festival as a fraudulent scheme.  Rather, the festival was initially planned as a

grand, luxury event, but it eventually became apparent that it would not live up to these plans.

See e.g., SCAC ¶ 7 ("In the weeks before the Fyre Festival was to begin, Defendants . . . were

aware that the Fyre Festival could not go forward.").  From inception through failure, the festival

was promoted by McFarland, Frye Media, internet influencers and others through a series of

evolving statements some of which were knowingly false, some of which were puffery and some

of which were either true, or true when made.  But to succeed on a fraud claim, a plaintiff must have reasonably relied on a false statement and demonstrate that damages resulted from the statement.

Plaintiff Jung claims that the proper award is $1,500 per plaintiff.  The support for this is an attorney's declaration that attaches no receipts and provides no dates.  In fact, the declaration reveals that Festival ticket prices ranged from $498.81 to $1,500 and hotel prices ranged from $74 to $400 per night.  (Doc 115 ("Meiselas Decl.") ¶ 7.)  Plaintiff urges that because four individuals had damages ranging from $1,400 to $2,200, a one-size-fits-all damage figure of $1,500 should be awarded to each plaintiff, including the three for whom no information whatsoever was supplied.  (Id.)  The SCAC also makes it clear that damages vary widely among plaintiffs.  For example, it alleges that plaintiffs Mainero and Herlihy actually traveled to the festival and spent a night on the island.  (SCAC ¶¶ 105–08.)  However, it alleges that plaintiffs Jutla and Pittas merely purchased festival tickets, transportation, and hotels.  It is not clear if they ever reached the actual festival.  (Id. ¶¶ 112, 114.)  A damages inquest is appropriate when damages are not liquidated or discernible through mathematical computation. See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).

Pursuant to Rule 55(b)(2), Fed. R. Civ. P., the Court will schedule a hearing to "(B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  The Court will conduct the hearing on the remaining claims against McFarland at which the individual plaintiffs may present evidence demonstrating each plaintiff's reasonable reliance upon a materially false statement causing him or her to incur quantifiable damages.

CLASS CERTIFICATION

Plaintiff Jung also seeks to certify a class of "[a]ll persons who purchased tickets to and/or made travel arrangements in connection with Fyre Festival." (P. Mem. at 6.) According to Jung, the class consists of approximately 5,000 individuals who purchased tickets to and/or traveled to the festival. They allege several common questions of law and fact, such as whether McFarland made false representations about the Festival and created an unsafe environment for attendees, and whether he breached any implied or explicit contractual obligations. (SCAC ¶ 119.) Jung argues that because of the number of potential class members and the typicality of their claims to that of the named plaintiffs, the global class is the superior method to resolve these claims.

CLASS CERTIFICATION STANDARD

A party seeking class certification must satisfy the requirements of Rule 23(a) and "at least one of the three requirements listed in Rule 23(b)." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011). Rule 23(a) requires a party to satisfy the four elements of "numerosity, commonality, typicality, and adequacy of representation." In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013); see Rule 23(a), Fed. R. Civ. P. These four requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." Dukes, 564 U.S. at 349 (quotation marks omitted). "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id. at 350 (emphasis in original).

Jung seeks to certify a class under Rule 23(b)(3). Thus, he must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "[T]he focus of Rule 23(b)(3) is on the predominance of common questions. . ." Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 568 U.S. 455, 466 (2013). It "does not require a plaintiff . . . to prove that each element of her claim is susceptible to classwide proof. . ." Id. at 469 (internal quotation marks and citation omitted).

"[A] plaintiff must satisfy all of the requirements of Rule 23, by a preponderance of the evidence, to obtain class certification. . ." Novella v. Westchester Cty., 661 F.3d 128, 148–49 (2d Cir. 2011) (citations omitted). In reviewing a motion for class certification, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen, 568 U.S. at 466.

DISCUSSION

A.  Rule 23(a)

i.  Numerosity

Rule 23(a)(1) requires plaintiff to show that "the class is so numerous that joinder of all members is impracticable." "Numerosity is presumed for classes larger than forty members." Pennsylvania Public School Employees' Retirement Sys. v. Morgan Stanley & Co., Inc., 772 F.3d 111, 120 (2d Cir. 2014) (citation omitted). Plaintiff estimates that 5,000 individuals purchased tickets to the festival. (Meiselas Decl. ¶ 8.) Such a number is well above

the forty-member threshold.  Of course, the numerosity requirement "depends on all the circumstances surrounding the case, not on mere numbers."  Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993).  Circumstances impacting numerosity are those such as judicial economy concerns and the geographic distribution of class members.  Id.  For a class as large as 5,000 members, many of whom are scattered around the country and potentially the world, the Court concludes that joinder of all members is impracticable, satisfying Rule 23(a)(1).

ii.   Commonality

Rule 23(a)(2) requires plaintiffs to show that "there are questions of law or fact common to the class."  It "requires the plaintiff to demonstrate that the class members have suffered the same injury," which turns upon "upon a common contention."  Dukes, 564 U.S. at 350; see id. at 359 (stating that to satisfy Rule 23(a)(2) "even a single common question will do" (internal quotation marks, citation, and alteration omitted).  "This requirement has been characterized as a low hurdle."  McIntire v. China MediaExpress Holdings, Inc., 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).  "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."  Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 137 (2d Cir. 2015) (internal quotation marks and citation omitted).

Plaintiff Jung identifies seven common questions that exist as to all members of the proposed class.  (P Mem. at 14.)  The questions largely track the SCAC claims for relief: did McFarland knowingly make false representations about Fyre Festival?  Did he breach implied or express contractual obligations?  Did he create an unsafe environment?  (Id.)  Several individual issues appear on the face of these claims.  For example, the claims for violations of various state statutory laws likely only apply to class members domiciled there.  Moreover, the fraud claim

will hinge on individual questions surrounding whether each potential class member in fact saw and relied on the statements attributable to McFarland.

Despite these concerns, the Court concludes that the allegations satisfy the "low hurdle" of Rule 23(a)(2).  Under the Rule, "[t]he claims for relief need not be identical for them to be common; rather [it] simply requires that there be issues whose resolution will affect all or a significant number of the putative class members."  Johnson, 780 F.3d at 137.  Clearly there are common issues raised by the fraud and state statutory claims.  Whether McFarland in fact knew of the sorry state of the Fyre Festival at the time of the statements is a pivotal question affecting all potential class members.  This issue constitutes a "common contention" that is "capable of classwide resolution."  Dukes, 564 U.S. at 350.  Accordingly, Rule 23(b)(2) is satisfied.

      iii.  Typicality

Rule 23(a)(3) requires plaintiffs to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "Typicality requires that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  Mazzei v. Money Store, 829 F.3d 260, 272 (2d Cir. 2016) (internal quotation marks and citation omitted).  The typicality requirement tends to overlap with the requirement of commonality. 1 McLaughlin on Class Actions § 4:16 (15th ed.) (Westlaw 2020).  But while the typicality and commonality prongs are interrelated, the typicality prong specifically "focuses on claims or defenses, rather than on questions of law or fact."  Westchester Indep. Living Ctr., Inc. v. State Univ. of New York, Purchase Coll., 331 F.R.D. 279, 293 (S.D.N.Y. 2019) (quotation marks and citation omitted).

The proposed class representative Daniel Jung has not revealed which statements he heard or saw, when he heard or saw them or when he acted in detrimental reliance by purchasing tickets to the Festival or expending money on travel.  With ticket purchasers relying on different statements made over an extended period of time, by several different actors, Jung has not shown that his claims are typical of those that would be made by absent members of the would-be class.  Jung has not demonstrated that it is likely that he heard or saw and relied upon statements that are typical of those relied upon by would-be members of the class.  While the threshold for typicality is low, Jung's thin presentation fails to meet the typicality requirement.

iv.   Adequacy

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  "[A]dequacy is satisfied unless 'plaintiff's interests are antagonistic to the interest of other members of the class.' " Sykes v. Mel S. Harris and Associates LLC, 780 F.3d 70, 90 (2d Cir. 2015) (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)); see Baffa, 222 F.3d at 59 (named plaintiff must not be "subject to unique defenses which threaten to become the focus of the litigation").  Plaintiffs' attorneys must also be "qualified, experienced and able to conduct the litigation" to satisfy the rule.  Id. at 60.  After considering plaintiff's arguments, the Court concludes that Jung's interests are fully aligned with the interests of the proposed class members.  The Court accepts that the law firm Geragos & Geragos has ample experience litigating class actions such as these and would be competent to conduct the litigation on behalf of the class.  (See Meiselas Decl. ¶ 10.)

However, the Court is unable to conclude on this record that Jung, who resides in the Netherlands, can adequately monitor and direct counsel in this case.  If it were not that other shortcomings counseled against class certification, the Court would require further briefing on

whether a foreign national residing 3,600 miles away can serve as an adequate class

representative on claims arising exclusively under the law of the various states of the United

States.

B.  Rule 23(b)(3)

In addition to satisfying the requirements of Rule 23(a), plaintiffs must satisfy the

requirements of at least one of the subparts of Rule 23(b).  Jung has moved to certify the class

under Rule 23(b)(3).  Rule 23(b)(3) requires plaintiffs to show that "questions of law or fact

common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."  The predominance requirement is "more demanding" than Rule

23(a)'s commonality requirement.  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997).

"Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify

each class member's case as a genuine controversy can be achieved through generalized proof,

and if these particular issues are more substantial than the issues subject only to individualized

proof.' " Roach v. T.L. Cannon Corp., 778 F.3d 401, 405 (2d Cir. 2015) (quoting U.S.

Foodservice, 729 F.3d at 118).  Because class certification under Rule 23(b)(3) binds "all class

members except those who affirmatively choose to be excluded," the predominance requirement

ensures fairness by "test[ing] whether proposed classes are sufficiently cohesive to warrant

adjudication by representation."  Langan v. Johnson & Johnson Consumer Cos., Inc., 897 F.3d

88, 96–97 (2d Cir. 2018) (quotation marks and citation omitted).

The Court concludes that questions of law or fact common to class members do

not predominate over questions affecting only individual members. The fraud claim requires

plaintiffs to identify knowingly false statements made by McFarland and demonstrate individual

reliance on such statements.  Different putative class members acted in reasonable reliance upon different statements at different times.  Some may have been influenced by puffery while others may have been deceived by factual misrepresentations.  Some bought tickets early but others purchased tickets much later in the evolving marketing process.  Some cancelled travel plans early and received refunds; others did not.

Plaintiff would have to prove that each individual plaintiff heard or saw the fraudulent statement and relied on it in purchasing tickets or making travel plans, as distinguished from individuals who purchased tickets merely because their friends or acquaintances had decided to attend.  Because the SCAC alleges fraudulent statements made across several years of planning the festival, through different mediums such as Instagram, Youtube, and the festival website, this inquiry would be different for each plaintiff.  Some statements, such as those contained in a "pitch deck," may have been seen by financial backers and promoters but not by many of the class members.  (See SCAC ¶ 49.)

Plaintiffs rely on Rodriguez v. It's Just Lunch, Intern., 300 F.R.D. 125 (S.D.N.Y. 2014) for the proposition that "fraud claims based on uniform misrepresentations made to all members of a class. . . are appropriate subjects for class certification[.]"  (P Mem. at 16.)  In Rodriguez, the misrepresentation was the reading of a misleading script to potential new customers of a dating service.  Rodriguez, 300 F.R.D. at 131.  There was one source of the misrepresentations: the uniform sales pitch.  It was made to every potential new customer.  The court held that under such circumstances, reliance could be proven by circumstantial evidence common to the class, such as the dating service's instruction to its employees that they not deviate from the sales script.  Id. at 139.  But here, the misrepresentations were decidedly not uniform.  They were made across several years, through various outlets, by different people, and

to different audiences.  Common evidence will not suffice to demonstrate reliance in this circumstance.

The claims for relief under various state statutes fare no better under the predominance inquiry.  Like common law fraud, California's False Advertising Law and Unfair Competition Law, and Illinois's Consumer Fraud Act all require plaintiff to demonstrate reliance (or defendant's intent to generate reliance) on the allegedly deceptive conduct, raising the same aforementioned individual issues.  Cocroft v. HSBC Bank USA, N.A., 796 F.3d 680, 687 (7th Cir. 2015); Hobbs v. Brother Intern. Corp., No. 15-cv-1866, 2016 WL 4734394, at *3 (C.D. Cal. Sept. 8, 2016); In re Tobacco II Cases, 46 Cal.4th 298, 306 (2009).  California's Consumer Legal Remedies Act and Colorado's Consumer Protection Act require a plaintiff to demonstrate that the suffered injury was caused by the deceptive conduct.  Spann v. J.C. Penney Corp., 307 F.R.D. 508, 522 (C.D. Cal. 2015); Loughridge v. Goodyear Tire and Rubber Co., 192 F. Supp. 2d 1175, 1185 (D. Colo. 2002).  With statements made over a long period of time and through so many different methods, causation and reliance require individual determinations for each potential class member, rendering the class action an inferior and inefficient litigation mechanism.

Each statute will require the Court to interpret different state law as well.  As the Second Circuit has held, "[v]ariations in state law. . . affect the feasibility and purported benefit of trying the [] claims on a classwide basis."  Johnson, 780 F.3d at 147.  Although "the specter of having to apply different substantive laws does not necessarily warrant refusing to certify a class", Rodriguez, 300 F.R.D. at 140, here, the laws are nowhere near identical to each other, raising "insuperable obstacles to determining liability based on common proof."  Johnson, 780 F.3d at 148.

For example, under the Illinois Consumer Fraud Act, a plaintiff must show that a defendant committed a deceptive act, intended for the plaintiff to rely on the act, that the deception happened in the course of trade or commerce, and that the deception caused injury. Cocroft, 796 F.3d at 687.  But under the Colorado Consumer Protection Act, a plaintiff must show that the deceptive act is one set forth in a specific Colorado statute, that the deceptive act "significantly impacts the public as actual or potential customers of defendant's goods" and that the plaintiff suffered injury "to a legally protected interest."  Loughridge, 192 F. Supp. 2d at 1175.  These are vastly different statutes—the Colorado statute will require evidence specific to Colorado's law.  The same can be said of the California statues that plaintiffs raise.  Segmenting the class into five subclasses, as the SCAC proposes (though the Motion to Certify omits), does not make classwide proof any more feasible.  (SCAC ¶ 117.)  It merely underscores why classwide adjudication is not superior to other means of adjudicating the putative class members' claims.

The Court declines to certify the class because Jung has not demonstrated typicality.  He has not satisfied the Court that as a foreign national residing 3,600 miles away, he would adequately represent the class on these state law claims.  He has not demonstrated that questions common to the class predominate over individual questions.  Nor has he demonstrated that classwide adjudication is superior to individual suits.

CONCLUSION

For these reasons, the Court denies plaintiff Jung's motion for a default judgment but will conduct an evidentiary hearing on the issues outlined herein.  Within 14 days, plaintiffs shall submit a proposed witness and exhibit list.  The Court denies Jung's motion to certify a class.  The Clerk is directed to terminate the relevant motions (Docs 111, 113.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       December 1, 2020