UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE: FYRE FESTIVAL LITIGATION

                17-cv-3296 (PKC)

                OPINION AND
                <u>ORDER</u>

-----------------------------------------------------------x

CASTEL, U.S.D.J.

        In an Opinion and Order of December 1, 2020 (Doc 124 (the "December 1 Order")), the Court ordered a hearing, pursuant to Rule 55(b)(2), Fed. R. Civ. P, to determine if a default judgment against defendant Billy McFarland was appropriate as to plaintiffs' claims of common law fraud and fraud-like state law claims. (<u>Id</u>. at 6.) It denied the balance of the motion for a default judgment. (<u>Id</u>. at 4.) The Court also denied certification of a proposed class of "[a]ll persons who purchased tickets to and/or made travel arrangements in connection with Fyre Festival." (<u>Id</u>. at 7.)

        Plaintiffs now move for reconsideration of the denial of both a default judgment and class certification. In the alternative, plaintiffs move to amend the Second Consolidated Amended Complaint ("SCAC"). For the reasons set forth below, the motions will be denied.

MOTION FOR RECONSIDERATION

        The standards for motion for reconsideration under Local Rule 6.3 and altering or amending a judgment under Rule 59(e), Fed. R. Civ. P, are "identical." <u>Burke v. Solomon Acosta & FASCore/Great W. & MTA/NYC Transit Auth.</u>, 07 cv 9933 (PKC), 2009 WL 10696111, at *1 (S.D.N.Y. Apr. 23, 2009), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Burke v. Acosta</u>, 377 F. App'x 52 (2d

Cir. 2010) (citation omitted).[1]  Motions for reconsideration are held to strict standards, "and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Motions for reconsideration are not vehicles for the moving party to relitigate an issue the Court already decided.  Cordero v. Astrue, 574 F. Supp. 2d 373, 380 (S.D.N.Y. 2008); see also Shrader, 70 F.3d at 257.

A motion for reconsideration may be granted based upon "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted); see also NEM Re Receivables, LLC v. Fortress Re, Inc., 187 F. Supp. 3d 390, 396-97 (S.D.N.Y. 2016) (analyzing a motion for reconsideration under Rule 59(e), Fed. R. Civ. P., and Local Rule 6.3 under these three grounds).  Plaintiffs argue that the default judgment and class certification decisions should be reconsidered based on the third of these rationales: the need to correct a clear error or prevent manifest injustice.

> A. Reconsideration is Not Warranted for the
>    Denial of a Default Judgment

Plaintiffs assert two "key misunderstanding[s]" by the Court when deciding the December 1 Order.  First, they assert that the motion for the entry of a default judgment brought by named plaintiff Daniel Jung was brought on behalf of the entire proposed class.  But, as the

---

[1] A motion to reconsider must be filed within 14 days of the order for which reconsideration is sought.  (Local Rule 6.3.)  The motion was filed three days after the deadline in the Local Rule.  Nevertheless, the Court will consider the merits of the motion.

- 2 -

Court noted in the December 1 Order, at the time of the motion for entry of a default judgment, no class had yet been certified and the motion was made by Jung alone. (See Doc 114 at 1 ("By this Motion, Plaintiff Jung seeks entry of a default judgment against Defendant McFarland. . . .")) He was an individual plaintiff who sought to be the representative of a putative class. The Court nevertheless deemed the motion as having been made by each and every one of the named class representatives. There was no error, and nothing was overlooked. Despite Jung's identification as sole movant, the Court deemed the motion as having been made on behalf of all party plaintiffs.

Plaintiffs next argue that it was improper for the Court to deny the entry of a default judgment based on identified deficiencies in the SCAC. According to plaintiffs, because McFarland willfully defaulted, he is deemed to concede the well-pleaded allegations of liability in the SCAC, so it was not proper for the Court to consider the elements of the underlying claims. The Court recognizes that "a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011). However, this does not mean the Court must accept claims that do not plead facts showing an actionable wrong or otherwise do not meet pleading standards.

"The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of the district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." Shah v. New York State Dept. of Civil Service, 168 F.3d 610, 615 (2d Cir. 1999) (quoting Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993)). Here, the Court looked to the SCAC and the substantive claims it asserts, and concluded that certain claims were not actionable, which was consistent with its prior rulings in this action. (See December 1 Order at

4.) "[T]he lack of merit of plaintiff's underlying claims" is a permissible consideration on a default motion. Palmieri v. Town of Babylon, 277 F. App'x 72, 75 (2d Cir. 2008) (summary order); see also Taizhou Zhongneng Import and Export Co., Ltd. v. Koutsobinas, 509 F. App'x 54, 58 (2d Cir. 2013) (summary order) ("Because the well-pleaded allegations in [the] complaint do not state a claim against [defendant], a default judgment should not have been entered against him in the first place."); Feeley v. Whitman Corp., 65 F. Supp. 2d 164, 171 (S.D.N.Y. 1999) (articulating the broad range of factors the court may look to when exercising its discretion on entering a default judgment).

The Court set a hearing to determine if plaintiffs are entitled to entry of a default judgment as to the common law fraud and fraud-like state law claims. This is permissible under Rule 55(b)(2), which permits a court to order a hearing to "(C) establish the truth of any allegation by evidence; or (D) investigate any other matter." See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("[A] district court retains discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action. . . .") (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

For these reasons, plaintiffs have not demonstrated either clear error or manifest injustice. The motion for reconsideration of the Court's December 1 Order denying the entry of a default judgment as to certain claims will be denied.

### B. Reconsideration is Not Warranted for the Denial of Class Certification

Plaintiffs also move for reconsideration of the denial of class certification based on three purported errors. Plaintiffs assert that named plaintiff Daniel Jung is a United States

- 4 -

citizen and an adequate class representative, and that they have satisfied the typicality and predominance inquiries of Rules 23(a)(3) and 23(b)(3), Fed. R. Civ. P.

In the December 1 Order, the Court was unable to conclude that Jung was an adequate class representative, but found that it was unnecessary to reach a determination on that question because class certification failed on typicality and predominance of common questions. In the submissions on the motion, Jung appeared to reside outside the United States based upon his execution of his declaration in the Netherlands. (See Doc 116 at 3.) In this motion for reconsideration, plaintiffs assert that Jung is in fact a U.S. citizen residing in Los Angeles, and that he has been closely involved with this litigation. (Doc 128 at 9.) Jung has resided in the Netherlands for the duration of the COVID-19 pandemic, but plans to return to the United States in 2021. An exact date has not been set.

In support of the motion, Jung has submitted a declaration. Local Rule 6.3 provides that on a motion for reconsideration, "[n]o affidavits shall be filed by any party unless directed by the Court." Where a "court did not direct any such filings, nor did [the party] request permission to submit a declaration with his motion for reconsideration," the court "does not consider the declaration or accompanying exhibit in deciding [the] motion." Ramasamy v. Essar Glob. Ltd., 11 cv 3912, 2012 WL 1681763, at *1 n.1 (S.D.N.Y. May 8, 2012) (Rakoff, J); see also Williams v. Citigroup, Inc., 659 F.3d 208, 214 n.3 (2d Cir. 2011). However, even consideration of the declaration and its facts do not alter the ultimate result. The denial of class certification did not rest solely on Jung's inadequacy; in fact, the Court did not conclude that he was inadequate. (See December 1 Order at 11 ("If it were not that other shortcomings counseled against class certification, the Court would require further briefing. . . .")) In light of these

remaining shortcomings, the Court again need not decide whether Jung is an adequate representative.

Plaintiffs next assert that the Court erred in concluding that the claims of Jung were not shown to have been typical of other members of the proposed class. They argue that the Court focused on minor fact variations that do not bar certification, rather than unique defenses that pose a difficulty in litigating on a classwide basis. However, the SCAC is bereft of specific allegations indicating which statements were heard, seen or relied upon by each plaintiff, how those statements are fraudulent, and if those statements can be attributed to McFarland. Without some degree of particularity, named plaintiff Jung has not shown that the manner in which he was allegedly defrauded is typical.[2]

According to the SCAC, the Fyre Festival was marketed across multiple platforms such as Fyre-affiliated social media accounts, celebrity social media accounts, YouTube videos, and websites. Class members bought their tickets at different points in time in reliance upon different statements made through different media influencers or different advertisements. Plaintiffs readily concede that "it would be impossible to pinpoint every plaintiffs' specific advertisement they saw that induced them into purchasing their ticket." (Doc 128 at 11.) For each class member, questions are presented as to which statements were heard, if each statement was fraudulent rather than mere puffery, and if the class member reasonably relied on the statement. These are far more than minor fact differences; they are individual defenses that apply to each plaintiff.

---

[2] Plaintiffs' belated attempt to cure this with a signed declaration from Jung does nothing. Even were the Court to consider the declaration on a motion to reconsider, there are no specific instances of fraud mentioned. It merely states that Jung "became aware of Fyre Festival through online social media marketing. . ." without identifying even one specific McFarland-made fraudulent statement. (Doc 128 – Ex. 1 at 1.)

For this same reason, plaintiffs have not shown that common questions of law or fact predominate over questions affecting individual class members. Plaintiffs argue that the Court disregarded common questions of liability in denying certification, focusing instead on individual questions that speak only to damages. This is not the case. Reasonable reliance upon a false statement is a liability issue, not a damage issue. In short, the proposed class is not "sufficiently cohesive to warrant adjudication by representation." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) (quoting Amchem Prods. Inc., et. al,, v. Windsor, 521 U.S. 591, 623 (1997)).

Plaintiffs cite Maddicks v. Big City Props., LLC, 34 N.Y.3d 116, 122–23 (2019) and City of New York v. Maul, 14 N.Y.3d 499 (2010). Putting aside the significant difference between Rule 23 and New York standards for class actions, they are otherwise distinguishable. In Maddicks, affiliated corporate owners of a group of apartment buildings engaged in a "common systematic plan" to inflate rents. Maddicks, 34 N.Y.3d at 125. Although each plaintiff was overcharged by a different amount of money, the court relied on common questions as to defendants' liability in allowing the litigation to go forward. Id. at 124–25. In Maul, two New York City agencies responsible for overseeing developmentally-disabled foster children failed to place the children in appropriate settings. Maul, 14 N.Y.3d at 505. Although each plaintiff was hurt in a different way, the underlying conduct for all injuries was the inability of the agencies. Id. at 512 (identifying "four common allegations that transcend and predominate over individual matters.").

The allegations in the SCAC are a far cry from this. It alleges fraudulent misrepresentations occurring over a course of years, through various outlets and entities, directed by various people. Statements are alleged to have come from a host of social media accounts

(many not controlled by McFarland or his partners), internet websites and videos, and a slide deck provided to investors.  Certain statements were made early in the planning process, and likely constitute mere puffery, rather than outright fraud.  Each named plaintiff will have to demonstrate reasonable reliance on a fraudulent statement that can be attributed to McFarland.  These are not inquiries going to amount of damages; they speak directly to liability for fraud.

"Without proof of a uniform representation, [plaintiffs] cannot use class-wide evidence to prove 'the central disputed issues in a fraud action.' " Garrido v. Money Store, 649 F. App'x 103, 105 (2d Cir. 2016) (summary order) (quoting Moore v. PaineWebber, Inc., 306 F.3d 1247, 1253 (2d Cir. 2002).  "Where there are material variations in the nature of the misrepresentations made to each member of the proposed class, [] class certification is improper because plaintiffs will need to submit proof of the statements made to each plaintiff, the nature of the varying material misrepresentations, and the reliance of each plaintiff upon those misrepresentations in order to sustain their claims." Moore, 306 F.3d at 1247; see also Rule 23(b)(3) advisory committee's note to 1966 amendment ("[A]lthough having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made. . . .).

For these reasons, plaintiffs have not demonstrated either clear error or manifest injustice.  The motion for reconsideration of the denial of class certification will be denied.

MOTION FOR LEAVE TO AMEND THE SCAC

In the alternative, plaintiffs seek leave to amend the SCAC to cure the various deficiencies identified.  Additionally, in a March 7, 2021 letter to the Court (Doc 130), plaintiffs explain that a recent televised interview with McFarland has revealed new facts that they wish to incorporate into an amended pleading.  No proposed pleading is attached to the motion.

This is not plaintiffs' first amendment request.  On November 7, 2019, the Court denied leave to amend the SCAC following the dismissal of two defendants.  (Doc 105; In re Fyre Festival Litig., 2019 WL 5799762, at *4–5 (S.D.N.Y. Nov. 7, 2019).)  As the Court set forth, plaintiffs filed a complaint (Doc 1), a Consolidated Amended Complaint (Doc 47) and the SCAC (Doc 56).  On July 13, 2018, the Court issued a scheduling order pursuant to Rule 16(b)(3)(A), Fed. R. Civ. P., limiting the time to further move to amend the complaint to 21 days from the filing of the motion to dismiss.  (Doc 59.)  By operation of that Order, plaintiffs' time to move to further amend the SCAC expired on August 8, 2018.

Although Rule 15(a), Fed. R. Civ. P., provides that leave to amend "shall be freely given when justice so requires," it must be read in conjunction with Rule 16.  Rule 16(b)(3) sets forth both permissive and required content of a court's scheduling order and provides that "[t]he scheduling order must limit the time to . . . amend the pleadings."  Rule 16(b)(3)(A).  A scheduling order "may be modified only for good cause and with the judge's consent."  Rule 16(b)(4).

In Parker v. Columbia Pictures Indus., the Second Circuit joined other circuits "in holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."  204 F.3d at 340.  The diligence of the moving party is an important factor in determining whether good cause has been shown, but it is not the only consideration.  Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).  Prejudice to the non-moving party is a relevant consideration, id., but the absence of prejudice is not alone sufficient to demonstrate good cause,  Gullo v. City of New York, 540 F. App'x 45, 47 (2d Cir. 2013) (summary order).

Plaintiffs have not demonstrated good cause to further amend the operative complaint in this case. This litigation commenced in 2017, and since then, plaintiffs have amended their complaint twice. Plaintiffs assert in a conclusory manner that the identified defects in the pleading can be cured, but have failed to submit the "forthcoming proposed amended complaint" for the Court to assess. (Doc 128 at 8.) Plaintiffs cite an article that purportedly reveals new evidence, but the entirety of the cited article surrounds McFarland's admissions about lies *to investors*. McFarland is quoted as saying "I knowingly lied to them to raise money for the festival" and "what I did was inflate our company's numbers . . . in order to raise overall money. . . ." (Doc 130 – Exhibit 1 at 3.) This may constitute fraud, but the fraud is directed at the Fyre Festival investors. McFarland may have made fraudulent statements directed towards ticket buyers, but the attached interview does not specifically identify one. Accordingly, plaintiffs' motion to amend the SCAC will be denied.

CONCLUSION

For the reasons stated above, plaintiffs' motion for reconsideration or to amend the SCAC is DENIED. Plaintiffs seek to file supplemental briefing on the Court's ongoing subject matter jurisdiction following denial of certification, suggesting that jurisdiction under the Class Action Fairness Act has evaporated with the denial of class certification. (Doc 128 at 15 n.23; see also 28 U.S.C. § 1332(d)(2).) The Second Circuit has held that "[b]ecause jurisdictional facts are assessed at the time of removal, and because at that time the complaint [] appeared to plead in good faith the class claim necessary for jurisdiction, the fact that the court subsequently determined that the case could not proceed as a class action under CAFA did not deprive it of subject matter jurisdiction." F5 Capital v. Pappas, 856 F.3d 61, 77 (2d Cir. 2017); see also Weiner v. Snapple Beverage Corp., 07 cv 8742, 2011 WL 196930, at *2 (S.D.N.Y. Jan.

21, 2011) (Cote, J) (collecting cases).  The SCAC appears to have pleaded class claims sufficient to invoke CAFA jurisdiction.

A revised proposed witness and exhibit list for the hearing on the default issue for the named plaintiffs shall be submitted within 21 days of this Order.  The Clerk is directed to terminate the motions (Docs 127, 130).

SO ORDERED.

*[signature]*
P. Kevin Castel
United States District Judge

Dated: New York, New York
 April 6, 2021

- 11 -